IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ZEPHYRINUS EGBUONU,　　　　*
#27041-265
　　　　Plaintiff,　　　　　　　*

　v.　　　　　　　　　　　　*　　　　　2:07-CV-685-ID

KITCHEN STEWARD WILLIAM,　　*
et al.,
　　　　Defendants.　　　　　*

## RESPONSE TO SPECIAL REPORT AND ANSWER

**COME NOW** Plaintiff Zephyrinus Egbuonu, Pro-Se, by and
through him in the above style in accordance with this Honorable
Court's December 10, 2007 and January 8, 2008 Orders (Doc. Nos.
33, 34), Plaintiff file his response to Defendants' Special Report
and Answer.　Plaintiff re-alleges and incorporates by references
his filed Civil Complaint and further states as follows:

Plaintiff's material allegation made in the complaint has
been strict proof thereof.

Plaintiff has state a claim upon which relief may be granted.

Plaintiff is not assumed the risk of injury, Defendant's
own actions caused and contributed to all of the harm, hot-water
torture, pains, emotional distress, permanent discoloration, and
injuries that Plaintiff suffered and continue to suffer and
Plaintiff is not barred from recovery.

Defendants violated all of the Plaintiff's constitutional
rights.

Defendants violated all of the Plaintiff's due process and equal protection rights.

Defendants caused and allowed all of the Plaintiff's uncon-stitutional condition of the Plaintiff's confinement.

Defendants' worked alone, and worked together agreed to violated all of the Plaintiff's constitutional rights.

Defendants conspired, retaliated and or discriminated again-st the Plaintiff in all the way.

Defendants are not entitled to qualified immunity.

Defendants are not entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution.

## DISCLOSURES

In accordance with the December 10, 2007 and January 8, 2008 Orders (Doc. Nos. 33, 34), Plaintiff submit the following initial disclosures prior to discovery:

A.   Attached affidavits of:

    1.   Howard Williams, Steward I

    2.   Kenneth Cash, Lieutenant

    3.   Bobby Barrett, Captain

    4.   Leon Varner, Steward II

    5.   Michael Warren, Chief Steward

    6.   W. G. Rowell, Deputy Warden

    31.   Terrence McDonnell (to be filed upon receipt of his affidavit)

B.   Clear and legible copies of the documents relevant to Plain-tiff's claims asserted in the action in part are as follows:

    7.   Inmate Summary Data

    8.   Administrative Regulation 403, **Disciplinary Hearing Pro-cedures For Major Rule Violations**

2

9.    Request for Job Assignment Kitchen dated 10-06-05

10.    Request for Time Conflict First Shift Crew request
       dated 10-09-05

11.    Request for Kitchen Job Time Conflict with Law Library
       and Religion dated 10-11-5

12.    Request for Job Time Conflict with Appeal and Religion
       dated 10-13-05

13.    Request for Medical/Work Boot dated 12-20-05

14.    Request for Work-Boot/Medical Problem dated 12-22-05

15.    Request for Washing Gloves dated 04-06-06

16.    Notification of Rejected Mail Memo dated 04-14-06

17.    Request for Law Library Access dated 04-15-06

18.    Request for Official Law Library Hours dated 4-21-06

19.    Request for Washing Gloves dated 05-02-06

20.    Request for Washing Gloves dated 05-02-06

21.    Request for Law Library Access dated 05-23-06

22.    Request for Law Library dated 05-24-06

23.    Request for Reading Material dated 05-28-06

24.    Request for Washing Gloves dated 06-01-06

25.    Occupational Safety and Health Administration Complaint
       Form letter dated 06-07-06

26.    Notice of Alleged Safety or Health Hazards Complaint
       Form dated 08-01-06

27.    United States Postal Service Rejected Mail Return to
       Sender stamped 08-07-06

28.    United States Postal Service Rejected Mail Return to
       Sender stamped 08-12-06

29.    Occupational Safety and Health Administration letter
       dated 08-25-06

30.    Plaintiff's Biography

## STATEMENT OF FACTS

Plaintiff is a former inmate of Alabama Department of Corrections from September 2005 to February 5, 2007 and currently a civil immigration immigration detainee at the Federal Detention Center in Oakdale, Louisiana State.

Plaintiff is a resident of Los Angeles, California and has never before corresponded, conversed, internet, telephone with nor had any ties or connection with anyone in Alabama State.  Plaintiff has never been to Alabama and has never fled from Alabama. Plaintiff was labelled fugitive from Justice from Jefferson County Alabama pursuant to the State of Alabama Statute section 13A-8-196 which provides that a criminal prosecution shall be held where Alabama States' resides irrespective where the crime or element of the crime was committed.

Plaintiff was extradited to the State of Alabama and was tried with the Alabama State resident accuser's hometown jury of peers.  No crime or element of crime occurred in Alabama.  All crime commenced, continued and consummated in the State of California.  No crime of overt act was committed with Alabama State.

Plaintiff was convicted of two counts of identity theft pursuant to Alabama Code 13A-8-192 and 13A-8-196 and was sentenced to 10 years' imprisonment for each conviction, to run consecutively. One of these convictions was later vacated by Alabama State Court of Criminal  Appelas as having been obtained in violation of double jeopardy principles, however the Alabama Court of Criminal Appeal has not made a final decision or ruling regarding the constitutionality of the conviction and sentence irrespective Plain-

4

tiff did filed his notice of direct appeal since August 2005.
Plaintiff has completed his sentences and parole as with respect
of his Alabama State conviction and now with immigration for a
removal proceeding using the conviction in Alabama to deny him
his claim for relief despite the State of Alabama statute 13A-8-
196 is inconsistent with the Federal laws and Constitution of the
United States as with respect of a genuine conventional criminal
proceeding and prosecution.

Prior to Plaintiff being brought to State of Alabama, Plain-
tiff was an engineer in California State for over ten years with
City of Los Angeles - Department of Public Works.  Plaintiff had
dealt with several engineering construction safety standards and
codes and never a time Plaintiff nor his supervisors were sued for
not meeting safety requirement codes in one of the world biggest
populated major cities.  See Exhibit 30.

Plaintiff incarceration at Kilby Correctional Facility
begins in September 2005.

On October 6, 2005 Defendant Captain Barrett assigned Plain-
tiff to the inmate general population kitchen after looking at
Plaintiffs' prison jacket file and told Plaintiff that "Your
victim is a law enforcement officer, I will assign you to the kit-
chen, deal with the heat, and pots and pans before you get deport
ed."  Plaintiff sent inmate request slip to Defendant Captain Bar-
rett; Ms Atchnison; Defendant Deputy Warden Rowell, Plaintiff rec-
eived no response from any of them.    Exhibit 9

On October 9, 2005 Plaintiff sent an inmate request slip to
Defendant Chief Steward Warren requesting shift time change from

5

2nd Shift to 1st Shift so that Plaintiff could have access to the law library on the basis that most of the time the Gate 3 Prison Officers close the law library from 8 AM to 10 AM for one reason or the other.  Plaintiff received no response from the Defendant Steward Warren.  Exhibit 10.

On October 13, 2005  Plintiff sent another inmate request slip to the kitchen Defendant Chief Steward Warren complaining and requesting the shift time change from 2nd Shift to 1st Shift.  Plaintiff received no response from the Defendant Chief Steward Warren.    Exhibit 12.

Plaintiffs' complaints and several request made to the Defendants Chief Steward Warren, Steward II Sandford in 2nd Shift, Steward II Varner was for a shift time change and was not for a job change as Defendants alleged in their respective affidavits.

On October 11, 2005  Plaintiff sent an inmate request slip to Defendant Captain Barron (Barrett) requesting shift time change from 2nd Shift  to 1st Shift so that Plaintiff could have access to the law library on the basis that Defendant Chief Steward Warren assigned 2nd Shift time task from 8:30 AM to 5:30 PM has deprived Plaintiff access to the law library.  Plaintiff received no response from Defendant Barrett.  Exhibit 11 and Defendant Ex-6 - Law Library Schedule.

Plaintiff's 2nd Shift line server task was change to 1st Shift line server then later to pots and pans hand washing, which prompted Plaintiff to request for protective safety gears to free from hot-water torture, pains, cruel and unusual punishment, injury.

On December 20, 2005  Plaintiff sent an inmate request slip to Defendant Chief Steward Warren to provide him with different work boot.  No response was received from the Defendant Chief Steward Warren.  Exhibit 13.

On December 22, 2005  Plaintiff sent an inmate request slip to the Defendant Captain Barrett to provide him with different work boot.  Plaintiff received no response from the Defendant Captain Barrett who had told him that  "Your victim is a law enforcement officer, I will assign you to the kitchen, deal with the heat, and pots and pans before you get deported."  Exhibit 14.

On January 17, 2006  Plaintiff complained to Defendant Steward II William about being exposed to hot water burns, and commercial industrial  yellow and white detergent chemical substances without being protected with safety gear.  Defendant Steward William about did nothing and told Plaintiff to complain to Defendants Steward II Vance and Chief Steward Warren.

Plaintiff followed up with Defendant Steward Williams advise and made complaints to Defendants Chief Steward Warren and Stewards Varner and Williams  about the pots and pans hand washing and substances in absence of hand washing gloves and safety gears which had cut his hand and fingers in several occassions.  Defendant Chief Steward Warren, Stewards Varner and Williams did nothing and gave Plaintiff hospital latex glove and demanded that Plaintiff should continue to perform pots and pans hand washing in absence of protective safety gears or face with disciplinary actions.    Plaintiff again repeatedly requested that the kitchen supervisors provide him with hand washing gloves to perform his assigned tasks  to be free from pain, suffering, hot-water, cruel and unusual punishment and others.    The Kitchen Defendants' St-

7

ewards provided Plaintiff with hospital latex glove.    No hand
washing Neoprene gloves were provided and Plaintiffs requests for
hand washing gloves were denied.    Plaintiff made other complaints
to Defendants Chief Steward Warren, Stewards Varner and Williams
to provide him with proper hand washing gloves and hot-water res-
istant shoes.    Plaintiff received no response from Defendants Ste-
wards Warren, Varner and Williams.    Moreso, Defendants Stewards
William , Varner and Warren have deviated from Alabama Department
of Corrections ("ALDOC") policy and form custom policy not to
respond to inmate workers' including Plaintiff complaints for
safety gears and precaution instructions, unsafe work environment,
sanitation and health hazard risks.

      On April 6, 2006  Plaintiff sent another inmate request to
the kitchen supervisor of PLaintiffs' assigned shift which com-
prises of Defendants Chief Steward Warren, Stewards Varner and
Williams requesting hand washing gloves and showed Defendants
Steward Williams and Varner his discoloration of his hands and
fingers caused by performing assigned pots and pans hand washing
without gloves.    Both Defendants Steward Varner and Williams did
nothing nor did Defendants send Plaintiff to the Medical Unit or
Gate 5 officer so as to escort Plaintiff to the medical Unit.
Exhibit 15.

      On April 14, 2006   Ms. Leak, the Kilby Correctional Facility
mail clerk refused and returned Plaintiff's mail containing int-
ernet material to the sender.   When Plaintiff appealed the made
decision, again Defendant Captain Barrett stated "internet mater-
ial is prohibited!."    Exhibit 16.

On April 15, 2006   Plaintiff sent an inmate request slip to Defendant Deputy Warden Rowell for law library access and to correct his Gate 3 Officers new custom policy.   Plaintiff received no response from the Defendant Deputy Warden Rowell.   Exhibit 17 and Defendants' Exhibit 6 - Law Library Schedule Hours.

On April 21, 2006   Plaintiff sent an inmate request slip to Defendant Deputy Warden Rowell requesting official institution law library hours on th basis that the Gate 3 Officers have denied and deprived inmates access ingress and egress of the law library and Defendant Deputy Warden Rowell failed to correct the same. Exhibit 18 .

On May 2, 2006  Plaintiff sent another inmate request slip to the Defendant Deputy Warden Rowell requesting for kitchen safety gears; hand washing gloves.   On May 16, 2006 Plaintiff received a response of his inmate request slip to Defendant Deputy Warden Rowell.   On the response reply only space  it was stated "Talk to the Steward" signed by Defendant Captain Barrett.   It took Defendants Deputy Warden Rowell and Captain Barrett over one (13) days to respond to inmate workers complaint request for safety gears and no protecetive safety gears were provided. Exhibit 19 and Defendants' Exhibit 3-attached inmate request slip.

On May 2, 2006   Plaintiff also sent another inmate request slip to the Defendant Kitchen supervisors; Stewards Williams, Varner,  in absence of Defendant Chief Steward Warren, to provide Plaintiff with a protective safety gears.   Plaintiff received no response from the kitchen supervisor.   Exhibit 20.

On May 11, 2006   Plaintiff experienced a cut on his finger from the effect of the issued hot-water mixed with commercial in-

9

dustrial concentrated yellow and white detergent chemical subs-
tances provided to Plaintiff in absence of protective safety gears
to perform his assigned unsafe tasks which no other inmate workers
wanted to perform.    Upon Plaintiffs' finger cut, Plaintiff show-
ed his cut finger to the Defendant Steward Williams and request
for a protective safety pots and pans hand washing gloves.    Def-
endants ordered Plaintiff to complete his assigned task to avoid
sanctions and provided him with two latex gloves to wear to cover
the wound up.    Defendant Steward William further told Plaintiff
to ˝stop complaining and go back to the country you came from and
remember you are in U.S.A. and in Alabama State Correctional
Facility.    See Defendants Exhibit 1.

On May 16, 2006 Upon receipt of  Defendant Captain Barretts'
response of Plaintiff's inmate request slip to Defendant Deputy
Warden Rowell dated May 2, 2006.    Plaintiff talked to Defendant
Steward Williams and showed him Defendant Captain Barrett response
slip which stated "Talk to the Steward."    Defendant Steward Wil-
liam told Plaintiff to  talk to his Supervisors which at the time
was Defendant Steward Varner and Chief Steward Warren and mean-
while ordered Plaintiff to continue to perform his kitchen work
assigned tasks in absence of safety gears and safe occupation
work areas.    Exhibit 19 and Defendant Exhibit 3 - attached in-
mate request slip.

Plaintiff later talked to the Defendant Steward Varner and
showed him Defendant Captain Barrett response slip to him which
stated "Talk to the Steward."    Defendant Steward Varner did
nothing to correct his deficit custom policy.    Defendant Steward
Varner told Plaintiff that "the kitchen has no funds to buy and

and provide kitchen inmate workers with safety gears; hot-water
resistant shoes nor hand washing gloves and ALDOC are on a budget
cut now."    Defendant Steward Varner advised Plaintiff  to "try
your best using hospital latex gloves and file your complain
as always to the Warden and Deputy Warden."    Defendant Steward
Varner further ordered Plaintiff to continue to perform his pots
and pans hand washing tasks in the absence of a safe occupation
area and protective safety gears to avoid being locked up in seg-
regation "isolated" caells and have limited access to law library
books.

    Plaintiff made  other numerous complaints to the Defendant
Stewards Deputy Warden Rowell, Captain Barrett and Warden Office
requesting for kitchen protective safety gears,  Plaintiff rece-
ived no response from Defendants Deputy Warden Rowell, Captain
Barrett and the Warden Office.

    On May 18, 2006  Plaintiff noticed the pots and pans area
ceiling fan was unplugged and no broken warning label nor safety
hazard label was attached to the ceiling fan.  Plaintiff climbed
up with the empty milk crate that the kitchen Defendants Stewards
put in place to use to unplug and plug th ceiling fan that help
pots and pans hand washing inmate workers to reduce the excessive
heat generated in the pots and pans area.    Defendant  Steward
Williams called Plaintiff a "Knucklehead" several times despite
Plaintiff plead and request that Defendant Steward Williams re-
trieved from labelling him a "Knucklehead" in front of all Kit-
chen inmate workers, Defendant Steward Williams ignored Plaintiff
request and continue to call him a knucklehead and called for
correctional officers backup.    Plaintiff was subject to unsafe

11

work environment when Defendant Steward Williams possessed the
knowledge that the ceiling fan was broken and failed to take
safety precaution to label the broken ceiling fan with warning
sign and or safety and health hazard sign, to protect inmate work-
ers nor       advise inmate workers including Plaintiff that the
ceiling fan was broken during 1st Shift morning roll call instead
Defendant  Steward  William cover up his own incompetence to fo-
llow rules and regulations as with respects to inmates' safety
and called Plaintiff a "knucklehead."

Defendants Steward Williams and backup officer; Lieutenant
Cash, worked together to deny and deprive Plaintiff his due pro-
cess and equal protection and ordered Plaintiff to perform his
assigned tasks under the excessive pots and pans washing areas
temperature in absence of working ceiling fan, hot-water resist-
ant shoes and elbow length washing gloves.   No safety and health
hazard as with respect to the ceiling fan was discussed by the
Defendants Steward Williams and Lieutenant Cash before ordering
Plaintiff to perform the unsafe tasks.

Defendants Lieutenant Cash coerced and threatened Plaintiff
that if he failed to perform his work assignment irrespective of
the protective safety gears, Plaintiff would be write-up for fail-
ure to obey an officers direct order and such write-up would be
placed in Plaintiff's record which will be used by parole officers
and a sanction and lock-up in segregation isolated cells will be         ,
imposed.

On May 23, 2006   Plaintiff sent another inmate request slip
to the Defendant Deputy Warden Rowell requesting for review of
his Gate 3 Officers denial of inmates ingress and egress of the

law library between the hours of 9:30 AM  to 11:30 AM.  Plaintiff
received no response back from Defendant Deputy Warden Rowell.
Exhibit 21.

On May 24, 2006  Plaintiff sent another inmate request slip
to Defendant Deputy Warden Rowell requesting his review on the
denial of inmates access ingress and egress to the law library
every wednesday early morning hours prior to launch hours.  Plain-
received no response from Defendant Deputy Warden Rowell.  Ex-
hibit 22.

On May 28, 2006  Plaintiff sent another inmate request slip
to Defendant Deputy Warden Rowell requesting for Newspaper subst-
itution to Magazine.  On June 12, 2006  Plaintiff received a
response of his inmate request slip to Defendant Deputy Warden
Rowell.  On the response reply only space it was denied without
any reason and was signed by the Captain.  It took Defendant Dep-
uty over 12 days to response to Plaintiff's request.  Exhibit 23.

On June 1, 2007  as Plaintiff was performing his assigned
pots and pans hand washing hot-water fell on Plaintiff's shoe and
penetrated into his shoes to his foot and toe, the shoe given to
him by the Kilby Correctional Facility laundry  department failed
to block the penetration of the hot-water into his shoe.  The
Kitchen Steward Ms. Arbor upon Plaintiff complaint, notified the
Lieutenant Office for assistance then advised and ordered Plain-
tiff to go to the Medical Unit and see a Nurse.  The Kitchen Ms.
Arbor is a new employee of the Kilby Correctional Facility.
Plaintiff was also questioned by Lieutenant Cash on his way to
see the Medical Unit Nurse for an explanation of what happened.
Defendants' Exhibit 6 - attached Emergency Medical Chart.

On June 1, 2006  Plaintiff sent another inmate request slip
to the kitchen requesting pots and pans hand washing gloves to
protect Plaintiff from the risk of being burned by hot-water,
hand and skin hardening, irritation and severe itching caused by
or highly concentrated industrial soap use.   Plaintiff received
no response back from the kitchen.   Exhibit 24.

On June 7, 2006  Plaintiff received his requested two copies
of Occupational Safety and Health Administration ("OSHA") comp-
laint form pursuant to Plaintiffs' letter to OSHA dated May 28,
2006.   Exhibit 25.

On July 30, 2006   Plaintiff sent another inmate request
slip to Defendants  Deputy Warden Rowell, Captain Barrett and
the Office of the Warden respectively, requesting hand washing
gloves, Plaintiff received no response from Defendants Deputy
Warden Rowell, Captain Barrett and Office of the Warden.

On Aug. 1, 2006 Plaintiff filed his United States Department
of Labor - Occupational Safety and Health Administration Notice
of Alleged Safety or Health hazards complaint form.   Exhibit 26.

On August 1, 2006 Plaintiff was transferred from Kilby Cor-
rectional Facility to Staton Correctional Facility.

On August 7, 2006  Plaintiff sent a certified mail contain-
ing complaint letter to Defendant Deputy Warden Rowell.   The
certified mail was stamped with "Returned to Sender  No Mail Rec-
eptacle".   Defendant Deputy Warden Rowell refused to accept
Plaintiffs' certified mail to him in his Kilby Correctional Fac-
ility that dealt with Kilby Correctional Facility issues.
Exhibit 27.

14

On August 12, 2007   Plaintiff sent another certified mail
containing another complaint letter to Defendant Deputy Warden
Rowell.   The certified mail was returned to sender and stamped
with "Returned to the Sender  No Mail Receptacle".   Defendant
Deputy Warden Rowell refused to accept Plaintiff's certified mail
to him  sent to his office at Kilby Correctional Facility that
dealt with Kilby Correctional Facility issues.   Exhibit 28.

On August 25, 2007  Plaintiff received a response from
OSHA advising Plaintiff to contact the State of Alabama Depart-
ment of Correction.    Exhibit 29.

The named Defendants have worked alone, and together to compel
Plaintiff to perform unsafe work tasks that endangered his health and
caused  severe   sharp undue pain, emotional distress, hand and
finger discoloration on Plaintiff.    Plaintiff refusing to work
in ALDOC under the imposed tasks was not a viable option based
on ALDOC Administrative Regulation ("AR") in which opposing part-
ies failed to mentioned in their filed affidavit.

The Alabama Department of Corrections and Kilby Correctional
Facility ("KCF")  Administrative Regulation establishes policies
and procedures governing the conduct and disposition of inmates
complaint and safety and health hazard precautions, however, it
was ignored by the named Defendants and or named Defendants
lacks  of training.

The ALDOC and KCF AR  establishes policies and procedures
governing the conduct and disposition of inmates' disciplinary
hearings for inmates in their custody which violated the ALDOC
AR major rules, however, it was ignored by the named Defendants
and or the named Defendants' lacks of training.   Exhibit 8.

15

The ALDOC Commissioner, his designee(s) Wardens and other
ALDOC employees whose duties involve in response of inmates'
complaint or disciplinary hearings proceedings are responsible
for following the provision of the ALDOC regulations and all pro-
cedures require final action by the Institutional Head or his/her
designee where inmate was a violator of a major rule of ALDOC
which punishments or sanctions may be imposed.    In instant matter,
the named Defendants' affidavits establishes that they ignored to
follow the ALDOC AR and policy and or lacks of training.

Sanctions or punishment may be imposed against inmates for
violation of ALDOC AR includes: Segregation; Forfeiture of earned
good time; Custody Review and Loss of Privileges.    Exhibit 8.
The inmates' major violation under ALDOC AR that required sanc-
tions includes: indecent exposure/exhibition; making false state-
ment or charge to a ALDOC employee with intent to deceive the em-
ployee or prejudice person; gathering around an employee in a
threating or intimidating manner; threats; absent without leave;
being in unauthorized area; refusing to work/failing to check out
for work/encouraging or causing others to stop work; failure to
obey a direct order of ALDOC official; insubordination; delaying,
hindering, or interfering with an employee in performance of his/
her duty; bribery or attempted bribery; intentionally creating a
security, safety or health hazard; disorderly conduct; theft,
damage, or destruction of another's personal property; destroying,
stealing, disposing, altering, damaging, or selling State property;
failure to comply with the agreement and conditions of leave and
pass; being fired from job; conspiracy to commit a violation of
Department or Institutional Rules; aiding and abetting another

to commit a violation of Departmental or Institutional Rules;
violation of State or Federal Law; soliciting sexual act; viola-
tion of Sir contract; Absconding from Supervision, absent without
permission.    Exhibit 8.

Plaintiff has never violated any of the ALDOC AR and poli-
cies through his incarceration under ALDOC and has never been
given any warning,write-up, citation, extra duty, disciplinary
hearing by any named Defendants and other Prison Officials under
ALDOC and KCF for violating any ALDOC and KCF AR and policies
such as filing false complaint; lying or providing a false state-
ment to Prison Officials; refusing to obey an order of any Prison
Officials; making  unexcused absence from work or any assignment;
insolence toward any Prison Officials; using any equipment or
machinery which is not specifically authorized; using any equip-
ment or machinery contrary to instructions or posted safety stand-
ards; interfering with Prison Officials; conducts which disrupts
or interferes with the security or orderly running of the insti-
tution; failure to follow direct staffs' order; failure to follow
safety or sanitation regulation; failure to follow State and Fed-
eral laws.    Exhibit 8.

The named Defendants worked alone, and together agreed to
compel  Plaintiff to perform pots and pans hand wash under over
heated hot water mixed with highly commercial industrial yellow
and white detergent chemical substances in absence of pots and
pans hand washing protective gloves and hot-water resistant shoe
in an unsafe working environment.    Plaintiff has made numerous
complaints about compelling him to perform assigned unsafe tasks
in the absence of protective safety gears and work environment,

17

the Defendants acknowledged Plaintiffs' complaints, recklessly disregard Plaintiffs' numerous complaints and did nothing to correct the deficiency in the Plaintiff's work area nor provide PLaintiff with protective safety gears to protect Plaintiff, instead the above named Defendants alone and agreed with each other to impose hot-water torture, emotional distress, torture, pains, cruel and unusual punishment against Plaintiff for no reason and without due process.

The named Defendants was aware, know about that their condcuts of compelling Plaintiff to perform the kitchen assigned tasks in absence of protective safety gears in an unsafe work environment violated constitutional rights but totally recklessly disregarded and facilitated it, approved it, condoned it or turned a blind eye for fear of what they might see. The above named Defendants working alone, and together have either knowingly or with deliberate reckless indifference.

Furthermore, the goal of the ALDOC AR relating to safety is to prevent the first accident from occurring, and it is not an option for the named Defendants to ignore nor failed in inform or failed to follow due process requirement of what is required of them by regulations and constitution and citizen of Alabama State to protect inmate and inmate workers.  The failure to require inmate workers performing pots and pans hand washing to wear protective safety gloves and hot-water resistant shoe to protect his or her hand from over heated hot water mixed with highly concentrated commerical industrial detergent chemical substances at a temperature of about 120 degree at wash, 140 degree at rinse, 170 degree at sanitizing is a violation of ALDOC Regulation and

Policies including AR Number 403 and others; Federal Laws and Re-
gulation such as 29 C.F.R. § 1904.12, § 1910.132(a), § 1200,
§ 1926.28(a), 29 U.S.C. 651 et. seq. 654; and constitution of
the United States.   Defendants' actions and inactions as with
respect of Plaintiff's complaints constitute hot-water torture,
severe sharp pains and suffering, cruel and unusual punishment
in the 21st Century, and moreso the named Defendants have formed
a pattern of custom practice with others to deny inmate workers
of a  protective safety gears in the 21st Century.

The named Defendants either lack training on responding to
inmate workers' complaints and requests for safety protection
or lack training in what safety and safety precautions meant,
safety due process procedure, what safety work environment meants,
what protective safety gears meants.

The named Defendants, the ALDOC and KCF have failed to train
their Prison Officials on how to conduct their duties and protect
inmates against: 1) unsafe and unhealthy work environment areas;
2) their constitutional rights.

The Defendants of ALDOC and KCF are not free to inflict such
hot-water torture pains without cause just so long as it is care-
ful to leave no marks.

As a result of Terrence McDonnell, Warden; W. G. Rowell, De-
puty Warden; Bobby Barrett, Captain; Michael Warren, Chief Ste-
ward; Leon Varner, Steward II; Howard Williams, Steward; Kenneth
Cash, Lieutenant actions and inaction and failure to intervene,
delay to intervene, failed to follow the ALDOC AR, failed to
train their Prison Officials and inmate workers on safety and

health hazard precaution and safety gears, Plaintiff suffered pains and injury.    Plaintiff was subjected to hot-water torture, cruel and unusual punishment, inhumane and degrading treatment, has suffered severe sharp pains, injury both physical, mental and non-mental, permanent finger discoloration, sleepless nights and shocks for over six (6) months.    Plaintiff continues to suffer from the exposure discoloration and shocks and psychological effects.    Furthermore the above named Defendants and others have worked alone, and together to cover up their failure to implement inmates' safety policies at Kilby Correctional Facility general population kitchen, and as a result of their actions and inactions Plaintiff was continuously exposed to unsafe occupation work areas in absence of safety gears despite Plaintiff's numerous complaints.

The named Defendants have knowingly worked alone, and together and have violated Plaintiff's constitutional rights in all manner respectively, violated Plaintiff's Eighth and Four- teenth constitutional Amendment rights, violated Plaintiff's constitutional rights not to be compelled to perform work that endangered his health and caused undue pain, defaming Plaintiff, violated Plaintiff's Federal "Rights to Know", United States De- partment of Labor - Occupation Safety and Health Administration, and Alabama Department of Corrections Administrative Rules.

## ARGUMENT

Defendants press the narrower specious argument that the
Defendants provided and made available protective safety gears to
inmate workers and Plaintiff failed to wear the protective safety
gears, such arguments is unpersuasive to the point that Defend-
ants' affidavits were incorrect and inaccurate with respect to
this claim.   Plaintiff's several filed complaints to Defendants,
unless frivolous concerning conditions in which they are confined
and compelled to prison labor are deemed complaints and petitions
for redress of complaints and thus are protected by the First
Amendment.   U. S. Constitution Amendment 1.   State Prison Offici-
als like Defendants punished State's inmates like Plaintiff not
in retaliation for filing complaints with prison authorities acc-
using Prison Official; Defendants, of not providing or making ava-
ilable protective safety gears to wear to perform unsafe work in
an unsafe work environment and inadequate ventilation system which
the Prison Officials (Defendants) compelled Plaintiff to hand wash
hot greasy pots and pans under over heated hot-water mixed with
highly concentrated commercial industrial detergent chemical
substances in absence of protective safety gears, failed to respo-
nd to his request for protective safety gears and failed to pro-
vide information on the detergent chemical substances which Def-
endants compelled Plaintiff to work with.   But, because Plain-
tiff's accusations were not false; thus Plaintiff was not punish-
ed by the Defendants for filing his honest truthful numerous com-
plaints requesting for protective safety gears, safety precaution
and protection of his fingers, hands, arms, foot, toes and legs

21

at the time the event took place.    **Johnson v. Avery,** 393 U.S.
483, 89 S. Ct. 747, 21 L Ed 2d 718 (1969).

Thus, Alabamas Department of Corrections ("ALDOC") Administ-
rative Regulation Number ("ARN") 403 mandates sanction citation
disciplinary hearing and action for major rule violations such as:
Rule 41, making false statement or charge to a ALDOC employee with
intent to deceive the employee or to prejudice another person;
Rule 54, refusing to work/failing to check out for work/encourag-
ing or causing others to stop work; Rule 56, failure to obey a
direct order of ALDOC Official; Rule 57, insubordination; Rule 62,
intentionally creating a security, safety, or Health hazard; and
other major rule violations.    Basically to say, the Defendants'
affidavits and argument stated that Plaintiff violated all of the
above described major rules and others and they were aware of it
and did nothing, and no evidence presented by Defendants showing
that Plaintiff violated of the ALDOC ARN 403 rules nor protective
safety gears provided nor made available to Plaintiff.    However,
the Plaintiff's evidence in this case and his ALDOC records clear-
ly established that Plaintiff has never violated any of ALDOC
Administrative Regulation rules therefore Defendants' affidavits
and arguments that protective safety gears were provided or made
available to inmate workers at the time the event took place is
specious affidavits and arguments and incorrect and inaccurate
statement of facts before the Court.    Defendants' affidavits off-
end and contrary to the ALDOC ARN 403 and if the Court allow
Defendants unaccounted statement claim to go untouched it will
further successfully chilled prisoner's rights on the basis defe-

endants work together to cover-up their unlawful unconstitutional conducts imposed on states' inmates in Alabama State.

Today evidences shows that Defendants in this matter have contrived, conspired with each other and worked together to cover-up the unlawful hot-water torture imposed on inmate workers in the 21st Century in absence of protective safety gears in an unsafe work environment which is unconstitutional.

Plaintiff claims that Defendants perpetuated subjected and compelled Plaintiff to hand wash prison kitchen hot greasy pots and pons under the over heated hot water mixed with highly concentrated detergent chemical substances in absence of protective safety gears for over six (6) months in an inadequate ventilation kitchen unsafe work environment. **Owen-Corning Fiberglass Corp. v. Donovan,** 659 F. 2d 1285 (1981). Plaintiff filed honest truthful numerous oral and in writing complaints requesting that the Defendants provide him with protective safety gears, Defendants perpetuated did not provide Plaintiff with protective safety gears; elbow length hand washing gloves and hot-water resistant shoes, nor respond to his numerous complaints explaining reasons for failure to provide protective safety gears as inmate Plaintiff requested and needed to protect himself from exposure to unreasonable risk. Defendants were aware, recklessly disregarded an Plaintiff's basic needs for safety protection, compelled Plaintiff to hot-water torture with chemical substances for six (6) months which caused him harm, sharp severe pains and suffering; skin irritation itching hardening tenure, inhumane condition, permanent discoloration, cruel and unusual punishment, and emotional

23

distress.  Moreso, despite the several honest and truthful com-
plaints Plaintiff made to the kitchen Defendants with a display
of his hands and fingers, the kitchen Defendants perpetuated and
never ordered nor instructed Plaintiff to see the Medical Unit
Nurse nor take any actions to correct and provide Plaintiff with
protective safety gears or protect him prior to and after his
injuries.

Defendants was totally aware of Plaintiffs numerous com-
plaints with respect to this civil complaint and recklessly dis-
regarded and acted with deliberate indifference and did nothing
to protect Plaintiff from unsafe work conditions.  No steps
Defendants took to respond to nor correct the condition Plaintiff
complained of or remove Plaintiff from the kitchen unsafe condi-
tion to a safe kitchen work environment or what could have been
done to protect the Plaintiff from unsafe work conditions in
absence of protective safety gears.

Defendants' actions and inactions and failure to act bro-
ght about and caused the violation of ALDOC Administrative
Regulation when no mandatory protective safety gears were not
required as safeguard protection against the risk Plaintiff
complained of as respect to his safety and Plaintiff rights under
State and Federal laws and regulations, Eighth and Fourteenth
Amendments of the constitution of the United States.  **Williams v.
Treen,** 671 F 2d 892 (5th Cir. 1982).  As a result Defendants
failure to act brought about caused Plaintiff to endured hot-water
and chemical substances torture, harm, sharp severe pains and
suffering, skin irritation itching hardening tenure, inhumane

condition, permanent finger discoloration, emotional distress, cruel and unusual punishment.

Defendants have failed to meet their burden of demonstrating that:  1) the Defendants have responded to the Plaintiffs' numerous complaints for his safety;  2) the Defendants have issued Plaintiffs protective safety gears but failed to impose sanction, citation and disciple Plaintiff according to ALDOC ARN 403 when Plaintiff failed to abide by prison officials' rules and regulation;  3) the Plaintiff's assumed risk of injury and Plaintiffs' own negligence caused and or contributed to his alleged injuries when in fact the Defendants' failed to respond to any of Plaintiffs numerous complaints requesting for hand washing gloves and hot-water resistant shoes by providing or made available the hand washing gloves and hot-water resistant shoes for Plaintiff to wear for plaintiffs' safety and health hazard risk protection; 5) the Defendants were not aware, did not possess knowledge, did not recklessly disregard their duties, did not act with deliberate indifference as respect to this claim.   Because Defendants have failed to meet their burden of demonstrating that there is no dispute as to any material fact, and because the facts set forth in Plaintiffs' Civil Complaint, State of Facts, Affidavits and attached evidences prior to discovery show that defendants violated Plaintiff clearly established constitutional rights, this Court should deny defendant's motion in all aspects.

In as much as Plaintiff has sued the Defendants in their official and individual capacities, Plaintiff is not barred from monetary relief claims.    Moreso, Defendants have failed to show

25

that they are entitled to any relief as with respect to Plain-
tiff claims against them.

A government official is not shielded from liability, how-
ever, when he "could be expected to know that certain conducts
violate statutory or constitutional rights and acted with actual
malice or intent to cause harm to Plaintiff.

Even at the worst scenario, Defendants have a duty to
protect inmates in their charge from caused by the inmates' own
self-destructive acts, which was not the issue in this case.

The injury need not, however, be severe as long as there
is some actual harm, pains, suffering, torture is sufficient to
result in liability. A permanent injury is not necessary, the
infliction of pain is sufficient to result in liability. Threats
combined with assault can be a basis for liability. Moreso, to
recover, inmates' must establish that either the prison officials'
authorities knew and should have known that the risk of self-harm
existed, and the authorities failed to take reasonable precaution
to guard against the harm, or or the manner in which the facility
was operated violated the standard of care and or standard of care
owed by all similar facilities.

In the instant case, Defendants have perpetuated. imposed
torture, harm, sharp severe pains and suffering, skin irritation
hardening itchy, inhumane conditions, intentional infliction of
emotional distress, cruel and unusual punishment against Plaintiff
caused his finger discoloration and failed to respond with provid-
ing or make available protective safety gears, abide and train
Defendants and subordinate as with respect to Plaintiff complains

26

of which brought about Plaintiff rights violation.    Defendants
as with respect to Plaintiff's claim for relief are not entitled
for any relief, and the Court shall allow the Plaintiff's claim to
goes to trial.

    Violation of prisoner's right under the United States Const-
itution and laws and under color of State law provide a basis for
liability under federal statutory provisions for the enforcement
of civil rights.  **42 U.S.C. § 1983.**    Such actions have been main-
tained in a wide variety of penal circumstances, including actions
for the right of access to information; the right to freedom of
speech; the right to freedom from cruel and unusual punishment,
**Farm er v. Brennan,** 114 S. Ct. 1970, 128 L Ed 2d 811 (1994);
**Whitley v. Albers,** 475 U.S. 312, 106 S. Ct. 1078, 89 L Ed 2d 251
(1986); **Rhodes v. Chapman,** 542 U.S. 337, 101 S. Ct. 2392, 69 L Ed
2d 59 (1981);  and the right to procedural due process for protect-
ed liberty interests, SSuperintendent, **Massachusetts Correctional
Institution, Walpole v. Hill,** 472 U.S. 445, 105 S. Ct. 2768, 86 L
Ed 2d 356 (1985); **Ponte v. Real,** 471 U.S. 491, 105 S. Ct. 2192, 85
L Ed 2d 553 (1985); **Olim v. Wakinekona,** 461 U.S. 238, 103 S. Ct.
1741, 75 L Ed 2d 813 (1983); **Meachum v. Fano,** 427 U.S. 215, 96 S.
Ct. 2532, 49 L Ed 2d 451 (1976).

    Plaintiff claims Defendants violated his Eighth and Fourtee-
nth Amendments constitutional rights when he suffered through the
Defendants' deprivation of protective safety gears for over six
(6) months and that this deprivation constituted failure to respond
and provide humane safety protection, humane conditions and humane
treatment and that Defendants were aware, but recklessly disregard-

## I.   EIGHTH AMENDMENT

Plaintiff claims Defendants violated his Eighth and Fourteenth Amendments constitutional rights when he suffered through the Defendants' deprivation of protective safety gears for over six (6) months and that this deprivation constituted failure to respond and provide humane safety protection, humane conditions and humane treatment and that Defendants were aware, but recklessly disregarded and acted with negligence and acted with deliberate indifference to his safety in allowing the deprivation to take place for over six (6) months. **Farmer v. Brennan,** 511 U.S. 825, 834 114 S. Ct. 1970, 128 L Ed 2d 811 (1994).   The Eighth Amendment prohibits cruel and unusual punishment and applies to the states through the Due Process Clause of the Fourteenth Amendment.   **Robinson v. California,** 370 U.S. 660, 82 S. Ct. 1417, 8 L Ed 2d 758 (1962).   The Eighth Amendment's prohibition against cruel and unusual punishment but also from inhumane conditions  confinement. **Farmer v. Brennan,** 511 U.S. 825, 832 (1994); **Rhodes v. Chapman,** 452 U.S. 337, 347 (1981). Incarceration itself renders prisoners dependent upon their keepers and "strip[s] them of virtually every means of self-protection." **Farmer,** 511 U.S. at 833.   Thus, while conditions  of confinement may be, and often are, restrictive and harsh they "must not involve the wanton and unneccessary infliction of pain." **Rhodes,** 452 U.S. at 347.   In other words, they must not be devoid of legitimate penological purpose, **Hudson v. Palmer,** 468 U.S. 517, 548 (1984), or contrary to "evolving decency that the progress of a mature society." **Trop v. Dulles,** 356 U.S. 86, 100 (1958).   See also **Wilson v. Seiter,** 501 U.S. 294, 111 S. Ct. 2321, 115 L Ed 2d 271 (1991).

A prisoner's labor can constitute a condition of confinement, where the prisoner has no choice but to work in some capacity within the prison of face sanctions, citations and disciplinary actions.    That is the case here, since Kilby Correctional Facility and Alabama Department of Corrections System provide that every prisoner in a State of Alabama Correctional Facility shall be required to work.    The Defendants and Supervisors' defendants supervising Plaintiff have a constitutional obligation to take reasonable measures to guarantee his safety which is very consistent with Alabama Department of Corrections Administrative Regulations and Rules.    However, in the instant matter defendants created implemented custom policy and failed to guarantee Plaintiffs' safety which Plaintiff repeatedly filed numerous complaints notified Defendants to provide him with protective safety gears but Defendants recklessly disregarded and compelled Plaintiff and exposed him to over heated hot-water mixed with detergent chemical subsatnces in an inadequate kitchen ventilation system for over six (6) months caused Plaintiff to endured hot-water torture, shocks and burns, sharp severe pains, suffering, skin irritation itching hardening tenure, suffering, emotional emotional distress, cruel and unusual punishment, inhumane condition, permanent finger discoloration in performing pots and pans hand wash in an unsafe work environment which he was compelled to.

The Eighth Amendment forbids confinement under conditions that can lead to painful and torturous disease without no peneological purpose.  **Estelle v. Gamble,** 429 U.S. 97, 102, 97 S. Ct. 285, 290, 50 L Ed 2d 251, 258 (1978).

The  Eighth Amendment analysis does not change merely because the conduct of some inmates may have caused or contributed to the conditions.    **Blake v. Hall,** 668 F 2d 52, 57-58 (1st Cir 1981), cert. denied, 456 U.S. 983, 102 S. Ct. 2257 72 L Ed 2d 862 (1982).

The Eighth Amendment is implicated in the prison work context when a prisoner worker alleges that a prison official compelled him to perform physical labor which [was] beyond his strength, en-dangered his life or health, or caused undue pain.  The Eighth Amendment is implicated when a prisoner's claim that his health was endangered when he was forced to remove asbestos with no pro-tective gear.    Other circuits including Ninth Circuit held that a prison official is not entitled to qualify immunity when he orders a prisoner to continue operating prison work equipment that the official has been warning and has reason to believe is unnec-essarily dangerous.    **Morgan v. Morgensen,** 465 F 3d 1041 (9th Cir. 2006).      Moreso, in **Chandler v. Baird,** 926 F 2d 1057, 1064 (11th Cir. 1991) the inmate was confined in a cell with no clothing except undershots and with a plastic-covered mattress without bed-ding.    The temperature in the cell was alleged to be as low as sixty (60) degrees.    The inmate contended that he sometimes slept huddled with a roommate, sleeping between two mattress.    The prison official disagreed, saying that the cell was controlled by the same thermostat that controlled areas of the prison occupied by  nurses and no one else complained about the temperature.    They acknowledged, however, that the other  people in these areas were fully clothed.    The inmate also received no toilet paper for three (3) days.    The Chandler Court vacated a grant of summary judgment

30

for the prison officials and sent the case back to the district
court for trial.    Plaintiff case as respect to temperature which
Plaintiff was compelled to hand wash hot grease pots and pots in
the over heated hot-water mixed with highly concentrated commercial
industrial yellow and white powder detergent chemical substances
in absence of protective safety gears in an inadequate kitchen
ventilation system for six (6) months, the Defendants acknowledged
Plaintiff numerous complaints but recklessly disregarded them and
acted with deliberate indifference.    Furthermore, health risk
allegedly posed by prison officials exposure of inmates to enviro-
nmental tobacco smoke ("ETS") held to form proper basis of claim
for relief under federal constitution's Eighth Amendment. **Helling
v. Mckinney,** 509 U.S. 25, 35 113 S. Ct. 2475, 125 L Ed 2d 22
(1993).

      Regardless of inmate workers choice of job tasks, once he/she
is assigned and or employed and not in a position to direct his
own labor, his prison official supervisors and head supervisors
(Defendants) are not free to visit cruel and unusual punishment
upon inmate worker.    Plaintiff did not apply to work in an unsafe
work environment with inadequate ventilation system in absence of
protective safety gears which were never provided nor made avail-
able to Plaintiff to wear to protect himself despite that Plaintiff
had made numerous complaints to Defendants and received no response
explaining  reason for not providing and or make available pro-
tective safety gears to him.  Plaintiff did not waive his Eighth
and Fourteenth Amendments rights by following Defendants' instruct-
ions, direct order by working in the unsafe kitchen environment in

31

the absence of safety gears for over six (6) months, moreso Plain-
tiff refusing to work and or delay in performing his assigned tasks
was not a viable option pursuant to Alabama Department of Correct-
ions.    Defendants' actions and inactions conduct as with respect
to Plaintiff claim for relief is one that society would considers
the risk complained of "so grave that it violated contemporary
standards of decency to expose anyone unwillingly to such a risk."
**Helling,** 509 U.S. at 36, 113 S. Ct. 2475.    Defendants have totally
violated Plaintiff's Eighth and Fourteenth Amendment right under
the federal constitution of the United States as Plaintiff charges
Defendants and the Court allow the case to go to trial.

## II. Deliberate Indifference

Prison Officials may be held to have acted with deliberate
indifference where they ignore unreasonable safety and health
risks, make no effort to address it, instead subject and compel
inmate worker to perform a task in an unreasonable unsafe and health
risk environment in absence of protective safety gears for an
extended period of time despite knowledge of the inmate workers
complaints requesting for protective safety gears.

Defendants were aware and failed to provide and enforce pro-
tective safety gears requirements, failed to act in response to
Plaintiffs numerous complaints requesting for protective safety
gears, failed to order nor instruct or send Plaintiff to medical
units despite Plaintiff has several times displayed his finger
discoloration to kitchen Defendants, failed to fashion a policy
addressing Plaintiffs' exposure to an unsafety work environment

32

in absence of safety gears and failed to make a good faith effort
to implement or enforce safety precautions and the Alabama Depart-
ment of Corrections ("ALDOC") policy.

Plaintiff further charges the Defendants with deliberate
indifference to his welfare in their perpetuated failure to respond
to his concerns about protective safety gears, failure to provide
Plaintiff with protective safety gears and compelled him to hot-
water torture, pains and suffering.  **Hope v. Pezer,** 536 U.S. 730,
737-30, 122 S. Ct. 2508, 153 L Ed 2d 666 (2002).

The Eighth Amendment forbids prison officials from 'unneces-
sary and wanton' inflicting of pain on an inmate by acting with
"deliberate indifference" to the inmate's serious medical needs.
**Estelle v. Gamble,** 429 U.S. 97, 104, 97 S. Ct. 285, 50 L Ed 2d 251
(1976).

The Eighth Amendment protects an inmate from a governmental
actors' deliberate indifference to his basic needs; under this
standard, conduct is deliberately indifferent" when the official
has acted in an intentional or criminally reckless manner, i.e.,
the defendant must have known that the Plaintiff was at serious
risk of being harmed and decided not to do anything to prevent
that from occuring even though he could have easily done so.  **U.S.**
**Const. Amend.** 8.

The Eighth protects an inmate not only from deliberate indi-
fference to his or her current serious health problems, but also
from deliberate indifference to conditions posing an unreasonable
risk of serious damage to future health.  **Helling,** 509 U.S. at 33-
35.

The test for determining deliberate indifference based on exposure of inmates to over heated hot-water mixed with highly concentrated commercial industrial yellow and white powder detergent chemical substances to perform pots and pans hand washing in absence of protective safety gears which posed an unreasonable risk of harm to his health has both objective and subjective components. **Helling,** 509 U.S. at 25, 35.   The Eighth Amendment requires a subjective standard to demonstrate an official's deliberate indifference, an inmate must prove that the official possessed knowledge both of the informed condition and of the means to cure that condition, so that a conscious, culpable refusal to prevent the harm can be inferred from the Defendants' failure to prevent it. **Duckworth v. Franzen,** 780 F 2d 645, 652-653 (7th Cir 1985), cert. denied, 479 U.S. 816, 107 S. Ct 71, 93 L Ed 2d 28 (1986); **Cagle v. Sutherland,** 334 F 3d 980, 987 (11th Cir 2003); **McElligott v. Foley,** 182 F 3d 1248, 1255 (11th Cir. 2003).

The objective component requires the existence of a "sufficiently serious" medical need. **Farmer,** 511 U.S. at 834, 114 S. Ct. 1970; **Estelle,** 429  U.S. at 104, 97 S. Ct. 285.  As the Supreme Court explained in Farmer, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." **Farmer,** 511 U.S. at 834, 114 S. Ct. 1970.

Plaintiffs' evidence records presented show that Plaintiff had a serious safety and hazard risk issues in an unsafe work environment that needed immediate attention and protective safety care that was obvious that even a layperson would easily recognize the necessity for protective safety gears for Plaintiff, but the

34

Defendants ignored Plaintiffs' complaints request.    Thus is a
distinct and cognizable constitutional claim under the Eighth.
**Hope v. Pelzer,** 536 U.S. 730, 741, 153 L Ed 2d 666, 122 S. Ct.
2508 (2002), see **Helling,** 509 U.S. at 34-35 113 S. Ct. 2475 (19930
(recognizing claims under the Eighth Amendment for conditions
which "pose a serious unreasonable risk of serious damage to [an
inmate's] future health).    Therefore, it would be inappropriate
to analyze this claim under the rubric of attention of present
medical needs without evidence of existing objective harm or
injury.    Instead it would be appropriate to analyze deprivation
of protective ~~safety gears claim in the context of~~ the constitut-
ional right of inmate workers to receive necessary and proper pro-
tective safety gears as prevention against torture, pains, harm,
injury, present and future medical harm.

    In this instant matter, Defendants perpetuated subjected
compelled inmate Plaintiff to hand wash prison kitchen hot greasy
pots and pans under the over-heated hot water mixed with highly
concentrated detergent chemical substances in absence of protect-
ive safety gears for over six (6) months in an inadequate ventila-
ion kitchen.    Plaintiff filed numerous oral and in writing com-
plaints requesting that the Defendants provide him with protective
safety gears, Defendants perpetuated did not provide him with pro-
tective safety gears; elbow length hand washing gloves and hot
water resistant shoes nor respond to his numerous complaints
explaining  the reasons for failure to provide protective safety
gears  inmate Plaintiff requested and needed to protect himself
from exposure to unreasonable risk which has caused him harm and

35

pains and injury.   As a result of Defendants knowingly and reck-
lessly disregarding an inmate's basic needs for safety protection,
Plaintiff was tortured with hot water which caused him harm, sharp
pains and suffering, Skin irritation hardening itchy tenure,
emotional distress, inhumane condition, permanent finger discolor-
ation and cruel and unusual punishment.

Moreso, despite the several complaints Plaintiff made to the
kitchen's Defendants, the kitchen Defendants perpetuated has never
ordered  nor instructed Plaintiff prior to his injuries to see the
Medical Unit nurse nor take actions to correct and provide inmate
Plaintiff with protective safety gears.

Defendants actions against Plaintiff caused more than mere
discomfort or inconvenience rather it is obvious torture in the
21st Century, and is one which society deems so grave that it
violates contemporary standards of decency to expose anyone unwill-
ingly to such risk in an unsafe work environment.   Defendants are
not entitled for immunity with respect to this claim.

The subjective component requires an inmate to show that
prison officials have "a sufficiently culpable state of mind in
denying medical care." **Farmer,** 511 U.S. at 834, 114 S. Ct. 1970.
To satisfy the subjective component, an inmate must show that
prison authorities knew of, and manifested deliberate indifference
to, his serious medical needs.   Deliberate  indifference "entails
something more than mere negligence," **Farmer,** 511 U.S. at 835, 114
S. Ct. 1970, but can be "satisfied by something less than acts or
omission for the very purpose of causing harm or with knowledge
that harm will result." id. Under **Farmer,** "the Official must both
be aware of facts from which the inference could be drawn that a

36

substantial risk of serious harm exists, and he must also draw
the inference." id at 837, 114 S. Ct. 1970.   Knowledge of the
asserted serious needs or circumstance clearly indicating the
existence of such needs, is essential to a finding of deliberate
indifference.      Thus, it would be appropriate to analyze depri-
vation of protective safety gears claims in the context of the
constitutional right of inmate workers to receive necessary and
proper protective safety gears as prevention from present and
future medical and physical harm.

As the Supreme Court has held, the test for deliberate in-
difference is whether there exists a "substantial risk of serious
harm," **Farmer** 511 U.S. at 837, 114 S. Ct. 1970 and does not suf-
fered.   See also **Smith v. Carpenter,** 316 F. 3d 178, 189 n.15 (2nd
Cir. 2003)(observing that "actual physical injury is not necessary
in order to demonstrate an Eighth Amendment violation" and declin-
ing to adopt a per se rule that such injury is required)(citing in
part **Helling v. Mckinney,** 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L
Ed 2d 22 (1993)).

Deliberate indifference can be established by inference from
circumstantial evidence **Farmer,** 511 U.S. at 842, 114 S. Ct. 1970
including evidence that the risk was obvious that a jury may rea-
sonably infer actual knowledge on the part of the Defendants.

Where the seriousness of a prisoner's needs for protective
safety gears is obvious even to a lay person, the constitutional
violation may arise.   This violation is not premised upon the
detrimental effect of the denial, but rather that the denied alone
in providing protective safety gears creates a substantial risk of
serious harm.   When Prison Officials are aware of inmate's obvious

37

and serious need for protective safety gears and deny protective
safety gears of that condition for non-safety reasons, their
conduct in causing the denial and failure to respond creates the
constitutional infirmity.    In such case, the effect of the denial
and failure to respond to numerous filed complaints goes to the
extent of the harm, pain, suffering, injury, not the existence of
a serious medical condition, Plaintiff suffer from his fingers
discoloration.

    Plaintiff presented numerous complaints to defendants re-
questing for protective safety gears, Defendants did not respond
nor provide or make available a protective safety gears to wear
to perform his kitchen tasks.    Defendants did nothing to correct
the deficiency in the kitchen prison conditions Plaintiff complain-
ed of.    Defendant made no efforts to provide him with protective
safety gears. **Estellee v.  Gamble,** 429 U.S. 97, 104, 50 L. Ed. 2d
251 (1976).    Even to the point that Defendant Rowell rejected
Plaintiff's United States Postal Service certified mails sent to
him which further addressed existing deficient prison condition
under his supervision.

    For over six (6) months, Defendants worked together, exposed
and compelled Plaintiff to perform kitchen pots and pans hand wash-
ing under over heated hot water mixed with highly concentrated
commercial industrial yellow and white detergent chemical substan-
ces in absence of protective safety gears which posed unreasonable
risk of serious damage to his health.    Defendants' failed to res-
pond to Plaintiffs' numerous complaints filed requesting for pro-
tective safety gears and concerns of his safety in unsafe work
environmental.    Plaintiff claims against Defendants' conducts

constituted deliberate indifference to the risk to his safety and health.

Plaintiff has sufficient show that he actually experienced the need for protective safety gears and that the need was not addressed by the Defendants when the Defendants compelled him to perform unsafe tasks and caused him harm, pains and suffering, finger discoloration, skin irritation itchy hardening tenure, and emotional distress. Becuase Plaintiff has repeatedly told Defendants in oral and writing of what he had experienced in the pots and pans hand wash in absence of protective safety gears and Defendants failed to provide or make available protective safety gears, failed to response to Plaintiffs' numerous complaints requesting for protective safety gears and safety protection, and failed to order an appointment nor instruct Plaintiff to go to Medical Unit upon Plaintiff's numerous complaints caused Plaintiff' to endure hot water torture, sharp sever pains and suffering, emotional distress (intentional infliction of emotional distress) that could have prevented his finger discoloration. **Mandel vv.Doe,** 888 F. 2d 783 (11th Cir. 1989). Plaintiff presents sufficient evidence from which a jury can infer that his obvious need for protective safety gears were sufficiently serious and the Defendants had a sufficiently culpable state of mind.

The allegations made by Plaintiff reflects not only knowledge but "obduracy and wantonness" on the part of Defendants. See **Whitley v. Albers,** 475 U.S. 312, 319 106 S. Ct. 1078, 89 L Ed. 2d 251 (1986)(defining the Eighth Amendment's "cruel and unusual" prohibition). Defendants are not not entitled to immunity with respect to this claim.

39

Defendants' supervisors may be liable for their subordinates' violation of other constitutional rights when they know about the conduct and  facilitate it, approve, condone it, turn a blind eye for fear of what they might see.    They must in other words act either knowingly or with deliberate reckless indifferences.    A supervisor's deliberate  indifference to an officer's pattern of using excessive force is a basis for liability.**Estate of Davis by Ostenfield v. Delo,** 115 F. 3d 1388 (8th Cir. 1997).    In **Anderson v. City of Atlanta,** 778 F. 2d 678, 686 (11th Cir. 1995)(finding supervisory liability on a claim of deliberate indifference to pre-trial detainee' s serious medical needs where supervisor had received repeated complaints of inadequate staffing and failed to take action).    Plaintiff claims Defendants' supervisors acted acted with deliberature indifference and are liable for their subordinates' violation of his constitutional rights.

Defendants are not entitled to immunity or any relief as with respect to this claim including deliberate indifference claim, the condition Plaintiff describes deprived him of the minimal cilivized measure of life's necessities  and unreasonable exposure to safety  and health hazard risk.    **Rhodes v. Chapman,** 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L Ed 2d 59 (1981).    Given the condition Plaintiff describes with his clean inmates's record of no sanction, citation, disciplinary hearing and no response of his various complaints for protective safety gears by Defendants on why safety gears were not provided to Plaintiff in an unsafe work environment.

A reasonable jury could infer that Defendants worked together in the vicinity necessarily would have known about subject and

compelled inmate worker like Plaintiff to perform unsafe work in
an unsafe work environment in absence of protective safety gears
that Plaintiff requested for in his numerous complaints, which
caused Plaintiff   harm, sharp severe pains and suffering, hot
water torture, emotional distress, inhumane condition, cruel and
unusual punishment, and permanent finger discoloration.

III.   Immunity

        Qualified immunity is an immunity from suit rather than a
mere defense to liability. **Mitchell v. Forsyth,** 472 U.S. 511,
526-27, 105 S. Ct. 2806, 86 L Ed 2d 411 (1985). In **Mitchell v.
Forsyth,** 472 U.S. 511, 523, 105 S. Ct. 2306(holding that a clearly
established right does not require judicial precedent to that
effect).    Instead, a clear established right exists in the
absence of precedent, where "the contours of the right [are] suff-
iciently clear that a reasonable official would understand that
what he is doing violates that right." **Anderson v, Creighton,**
483 U.S. 635, 640, 107 S. Ct. 3034, 97 L Ed 2d 523 (1987).    To
that extent, government officials are considered "on notice" that
conduct is violative of established law if the State of the law
..... gave them "fair warning" that their conduct would be uncon-
stitutional.    **Hope v. Pelzer,** 536 U.S. 730, 741, 122 S. Ct. 2508,
153 L Ed 2d 666 (2002).

        Plaintiff charges Defendants knowingly and unreasonably dis-
regarded an objective risk of harm by their failure to respond to
his repeated complaints nor provide or make available protective
safety gears for inmate workers including Plaintiff to wear to

perform assigned kitchen tasks in an unsafe work environment.
**Farmer v. Brennan,** 511 U.S. 825, 846, 114 S. Ct. 1970, 128 L Ed
2d 811 (1994).

The doctrine of qualified immunity protects government off-
icials who perform discretionary function from civil liability, as
long as "their conduct does not violate clearly established stat-
utory or constitutional rights of which a reasonable person would
have known."   **Harlow v. Fitzgerald,** 457 U.S. 800, 818 (1982).
However, the Defendants arguments has shifted the focus of the
qualified immunity inquiry from the time of the conducts to its
aftermath and effects the Defendants' specious affidavits and
cover-ups and therefore would make immunity hinge upon precisely
the kind of post hoc judgment that the doctrine is designed to
àvoid.

The relevant inquiry is not only whether, in hindsight,
Defendants acted unreasonably, but also whether Defendants' dec-
ision not to respond to Plaintiffs numerous honest and truthful
complaints requesting for protective safety gears and protection
from unreasonable risks which Defendants compelled Plaintiff to
perform in an unsafe kitchen environment in absence of protective
safety gears were reasonable in the light of the information that
the Defendants possessed at the time of their implementation.
Next inquiry is whether Defendants' decision not to implement an
and enforce safety and health hazard precautions to protect inmate
workers, is consistent with ALDOC, Federal rules and OSHA regulat-
ions and were reasonable in light of the information that the Def-
endants possessed at time event took place.

In analyzing whether a government official is entitled to

42

qualified immunity, two questions will be addressed in a specific
sequence. First, "taken in the light most favorable to the party
asserting the injury, do the facts alleged show the officer's
conduct violated a constitutional right?" **Saucier v. Katz,** 533
U.S. 194, 201 (2001).   Second, is the right clearly established
such that a reasonable government official knew that "his conduct
was unlawful in the situation he confronted[?]"  See id at 202.

The evidence in the record prior to full discovery supports
Plaintiff's allegation that the Defendants have, with knowingly
reckless disregard, with deliberate indifference exposed Plaintiff
to over heated hot water mixed with highly concentrated commercial
and industrial detergent chemical substances levels in absence of
protective gears that posed an unreasonable risk to his health
and future health and Defendants have violated Plaintiff's consti-
tutional rights under Eighth and Fourteenth Amendment of the
Constitution of United States.

A Prison Official is not entitled to qualified immunity if
the law governing his conduct was clearly established such that
a reasonable prison official would know that his conduct was un-
lawful.  See **Harlow v Fitzgerald,** 457 U.S. 800, 818, 102 S. Ct.
2727, 73 L Ed 2d 396 (1982).

Qualified immunity protects "all but the plainly incompet-
ent or those who knowingly violate the law. **Malley v. Briggs,** 475
U.S. 335, 341 (1986).

In determining whether a constitutional right has been
clearly established for qualified immunity purposes, it is not
necessary for the particular violation in question to have been
previously violation .......;  instead a clearly established

constitutional rights exists in the absence of precedent, where the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.  **Anderson,** 483 U.S. at 640, 170 S. Ct. 3034.

Defendants argument that the doctrine of qualified immunity shields them from liability for their knowingly reckless disregard with deliberate indifference subjected and compelled Plaintiff to hot water mixed detergent chemical substances that caused him harm, sharp severe pain, suffering, emotional distress, pain, permanent fingers discoloration, cruel and unusual punishment, inhumane condition and exposure to unsafe work environment for over six (6) months in absence of protective safety gears.  Defendants have failed to meet the burden of demonstrating that the protective safety gears were provided or made available; failed to meet the burden to overcome their refusal to respond to Plaintiffs' numerous complaints requesting for protective safety gears; and failed to enforce the ALDOC ARN 403 major rule violation as with respect to Plaintiffs' complaints.

Protective Safety Gears is a basic human need when compelled to perform unsafe tasks in an unsafe work environment, and the constitutional test requires us to look at "the evolving standards of decency that mark the progress of a maturing society," **Rhodes v. Chapman,** 422 U.S. 337, 346, 101 S. Ct. 2392, 69 L Ed 2d 59 (1981).  Safety hazards found through State prison occupational areas, seriously threatened safety and security of inmates, created unconstitutional infliction of pain.  Persons involuntarily confined by the State have constitutional rights to safe conditions of confinement.  **Youngberg v. Romeo,** 457 U.S. 307,

44

315-16, 102 S. Ct. 2452, 2458, 73 L Ed 2d 28 (1982). Prisoners have the right not to be subjected to unreasonable threat of injury or death by fire and need not wait until actual casualties occur inorder to obtain relief for such conditions. Defendants were or should have know "on notice" and had "fair warning" that it would be unconstitutional for Defendants to deny protective safety gears to Plaintiff under his watch for long periods of time in an unsafe inadequate ventilation work environment. **Hope,** 536 U.S. at 741, 122 S. Ct. 2508.

Eighth Amendment entitles inmates in a penal institution to an adequate level of personal safety. Thus is required because inmates, by reason of their confinement, cannot provide for their own safety. **Estelle v. Gamble,** 429 U.S. 97, 97 S. Ct. 285, 290-91, 50 L Ed 2d 251 (1976). As the Supreme Court has explained, "qualified immunity seeks to ensure that Defendants 'reasonably can anticipate when their conduct may give rise to liability, 'by attaching liability only if [t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates the right.'" **U.S. v. Lanier,** 520 U.S. 259, 270 (1997). This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. **Anderson,** 483 U.S. at 640 (1987).

At the time of the Plaintiff's alleged constitutional violations took place, torture against prisoner irrespective whether it is a State or Federal prison is not what the United States of America stands for nor does its constitution support, rather it anti-

45

thetical to everything this Country stands for in the 21st Century.
However, ALDOC and KCF Defendants compelled Plaintiff to hot-water
torture, burns, sharp severe pains, emotional distress and moreso
recklessly disregarded the rule of law, regulation and constitut-
ion, Eighth and Fourteenth Amendment and acted with deliberate in-
difference and the Defendants' conducts have made a mockery of the
Eighth Amendment, which was drafted to prevent "torture and bar-
barous punishment." **Estellee,** 429 U.S. at 102, 97 S. Ct. 285
(1976).   Defendants conducts have clearly exceeded constitutional
boundaries and converted the kitchen hot greasy pots and pans hand
wash with protective safety gears to hot greasy pots and pans hand
wash under over heated hot water mixed with highly concentrated
commercial industries yellow and write detergent chemical substan-
ces in absence of protective safety gears in the kitchen inadequate
ventilation system then to a viable Defendants' prisoner torture
and cruel and unusual punishment.   The Eleventh Circuit has acknow-
ledged that "preexisting case law tied to the precise facts, is
not in every situation essential to establish clearly the law app-
lying to the circumstances facing a public official so that a rea-
sonable official would be put on fair and clear notice that speci-
fic conduct would be unlawful in the faced, specified circumstan-
ce." **Marsh v. Butler County,** 268 F 3d 1014, 1032, n.9 (11th Cir.2001)

     Indeed, "some conduct is so obviously contrary to constitut-
ional norms that even a in the absence of case law, the defense
of qualified immunity does not apply." **Skrtich v. Thornton,**  280
F 3d 1295, 1305, n.9 (11th Cir. 2002).   It certainly should be
obvious to any reasonable Defendants position that it is unlawful
to order and compel Plaintiff to continue working with no protect-

ive safety gears and unenforce the safety precaution mandating that all inmate workers shall be equipped and wear protective safety gears in performing the kitchens unsafe tasks.  It certainly should be obvious to any reasonable prison official, Defendants position that it is unlawful to order and compel Plaintiff worker to continue working with no protective safety gears despite the numerous complaint requests Plaintiff made to Defendants requesting for protective safety gears and safety and health protection.

In **Helling v. Mckinney,** 509 U.S. 25, 125 L Ed 2d 22 (1999), the Supreme Court held that a prisoner sates a claim under the Eighth Amendment by alleging that prison official have, with deliberate indifference, exposed the prisoner to levels of environment tabacco smoke which pose an unreasonable risk of serious damage to prisoner's future health.  Plaintiff was compelled exposed to the kitchen hot greasy hot-water mixed highly concentrated detergent chemical substances that caused him harm, pains and suffering and permanent finger discoloration.  see also **Hutto v. Finney,** 437 U.S. 678, 682, 57 L Ed 2d 522, 98 S. Ct. 2565,  **Wilson v. Seiter,** 501 U.S. 294 , 115 L Ed 2d 271, 111 S. Ct. 2321 (1991),  **De Shaney v. Winnebago County Dept. of Social Services,** 489 U.S. 189, 199-200, 103 L Ed 2d 249, 109 S. Ct. 998 (1989),  **Youngberg v. Romeo,** 457 U.S. 307, 315-316, 73 L Ed 2d 28, 102 S. Ct. 2452 (1982), **Rhodes v. Chapman,** 452 U.S. 337, 352, n.17, 69 L Ed 2d 59, 101 S. Ct. 2392 (1981), **Chandler v. Baird,** 926 F 2d 1057, 1064 (11th Cir. 1991), **McCord v. Maggio,** 927 F 2d 844 (5th Cir. 1991) and in other circuits see also **Morgan v. Morgensen,** 465 F 3d 1041 (9th Cir. 2006), **Gill v. Mooney,** 824 F 2d 192 (2nd Cir. 1987).

47

The factual situation in Plaintiffs' case is that Plaintiff alerted  Defendants and Supervisors to a dangerous safety and health hazard defect in the kitchen work area.  Plaintiff was performing part of assigned prison labor Defendants and Supervisors ordered and compelled Plaintiff to continue working with no protective safety gears and did not respond and correct nor make the protective safety gears availabale to Plaintiff, as a result of Defendants and Supervisors' actions and inactions Plaintiff was subjected to hot-water torture, cruel and unusual punishment, inhumane condition, sharp severe pains, suffering,  emotional distress and which Plaintiff permanent finger discoloration.  Indeed, the Defendants' misconduct,aftermaths and effects, cover-ups so egregious that any reasonable official would have knowns that it violates the constitution, regardless of preexisting case law. As the Supreme Court has observed, "the easiest cases don't arise. There has never been ..... a § 1983 case accusing the welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability." **Lanier,** 520 U.S. at 271.  Defendants' motion should therefore be denied.

## IV.   Official Immunity and Supervisor Liability

When a governmental entity through its agents by virtue of its law enforcement powers, has arrested and imprisoned a person, it is bould to exercise ordinary and reasonable care; under the circumstances, for the preservation of the person's life and health.   For a breach of that duty, the custodial entity may be liable in damages.   **McCord v. Maggio,** 927 F 2d 844 (5th Cir.

1'991), **Weaver v. Clarke,** 45 F 3d 1253 (8th Cir. 1995), **Penrod v.**
**Zavaras,** 94 F 3d 1399 (10th Cir.      ).  The Official seeking
absolute immunity therefore bears the burden of demonstrating
that it is warranted, and the Supreme Court has been "quite spar-
ing in its recognition of claims to absolute official immunity."
**Forrester v. White,** 484 U.S. 219, 224, 108 S. Ct. 538, 98 L Ed 2d
555 (1988).

Government Officials sued in their official capacities are
not personally liable for damages.  **Kentucky v. Graham,** 473 U.S.
159, 165-66, 105 S. Ct. 3099, 87 L Ed 2d 114 (1985).  A suit
against an official in his official capacity is deemed to be a
suit against the Official represents.  **Brown v, Neumann,** 188 F 3d
1289, 1290 (11th Cir. 1999).  A   suit against the Defendants in
their official capacities thus is the functional equivalent of
suing against the official office.   As such, it is no different
from a suit against the State itself.   **Will v. Michigan Dept.  of**
**State Police,** 491 U.S. 58, 71, 109 S. Ct. 2304, 2311, 105 L Ed 2d
45, 58 (1989).  See also, **Papasan v. Allain,** 478 U.S. 265, 278,
106 S. Ct. 2932, 2940, 92 L Ed 2d 209, 227 (1986)("Relief that
in essence serves to compensate a party injured in the past by an
action a State official in his official capacity that was illegal
under federal law is barred even when the State official is the
named defendant").  On the other hand, damages are available again-
st a State official who is sued and held liable in his individual
capacity.  **Papasan,** 478 U.S. at 278 n.11, 106 S. Ct. at 2940 n.11,
92 L Ed 2d at 227 n.11.

However, Plaintiff seeking to impose liability on a govern-
mental entity or municipality under § 1983 must identify a govern-

49

mental or municipal policy or custom that Caused Plaintiff's injury.  In certain situation situations, a law enforcement agency's failure to train its officer may constitute a "policy upon which governmental liability may rest.  **City of Canton   v. Harris,** 489 U.S. 378, 103 L Ed 2d 412, 109 S. Ct. 1997 (1989). Such liability may be imposed for a single decision by policymakers under certains.  **Pembaur v. City of Cincinnati,** 475 U.S. 469, 480 89 L Ed 2d 452, 106 S. Ct. 1292 1986).

Liability may be imposed for existence of an improper or inadequate policy or from the absence of a policy.  In **City of Canton v. Harris,** 489 U.S. 378, 388 103 L Ed 2d 412, 109 S. Ct. 1197 (1989), the Supreme Court of the United States held that "the inadequacy of police training may serve as the basics for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.   The Court further held that the municipality may only be held liable where the policies were the "moving force behind the constitutional violation" id at 389 (**Polk County v. Dodson,** 454 U.S. 312, 326 70 L Ed 2d 509, 102 S. Ct. 445 (1981). Moreover, for liability for inadequate training to attach the "identified deficiency in a City's training program must be closely related to the ultimate injury." id at 391.

Thus, a municipality can be liable under **42 U.S.C. § 1983** only if the Plaintiff can demonstrate that his civil rights have been violated as a result of that municipality's policy or custom. **Monell v. Dept. of Soc. Servs. City of New York,** 436 U.S. 658, 694 98 S. Ct. 2018, 56 L Ed 2d 611 (1978).   Liability can arise and deliberate indifference can be shown by proof that the  Defendants

"knows that inmates face a substantial risk odf serious harm and disregards the risk by failing to take reasonable measure to abate it." **Farmer,** 511 U.S. at 847, 114 S. Ct. 1970.

In instant case, Defendants  did not have probable cause: 1) to  deny  Plaintiff his several made complaints request for protective safety gears; 2) not to enforce the ALDOC AR, State and Federal rules, regulation and laws;  3) not to response to Plaintiffs' numerous complaints requesting for safety precaution and health protection. Defendants to adequately train and supervise their subordinates, to fulfill their constitutional obligation of ensuring that inmate worker like Plaintiff are protected against safety and health hazard risks and that information regarding safety precautions was shared among prison officials in the ALDOC and KCF.    Defendants failed in their constitutional obligation to establish and enforce safety procedures and regulation to insure communication of all relevant information on this complaint on the issue of protective safety gears and content inmate workers are subject to.    Defendants violated Plaintiff's constitutional rights by purposefully or with deliberate indifference failing to create a system that would satisfy this obligation stated above. Defendants policies and customs were also a moving force behind the violation Plaintiff suffered.    Defendants were also a final policies and custom decision makers because neither Defendants has provide protective safety gears and training of official to protect Plaintiff's constitutional rights.    Defendants practices of not providing Plaintiff protective safety gears is a custom that is so longstanding and it well-settled by the Defendants to a point it amounts to unspoken rule for the Defendants.    Defendants

51

Defendants policy of training and supervising its official has also caused Plaintiff's violation and was so grossly inadequate that it amounted to deliberate indifference to Plaintiff rights. Defendants inadequate policies and customs reflected a deliberate and conscious choice made by them and now it's a pattern of unconstitution behavior by the Defendants not to provide Plaintiff with protective safety gears in unsafe occupation area.    Defendants' violation of Plaintiff's right was plainly obvious consequence of the Defendants actions and inactions.

If the Defendants policies and regulations are in place and enforced, the Defendants policies and regulations would not allow their staffs to subject Plaintiff to work on a unsafe occupational area in absence of a protective safety gears on the basis of the policy consideration. Notwithstanding, the Defendants knowingly that they did not comply with safety standard and precaution in the kitchen and did nothing.    Defendants are liable both in official and individual capacities.   Moreso, the Defendants have implemented a custom pattern denying pots and pans inmate workers protective safety gears as such Plaintiff's constitutional rights were violated when Plaintiff was denied a response to several filed complaints requesting for protective safety gears for over six (6) months.   Defendants refusal to respond his repeated request for the same and compelled Plaintiff to perform unsafe tasks in an unsafe work environment in the absence of protective safety gears which caused him harm, sharp severe pains and suffering and resulted in his fingers permanent discoloration.    Defendants were aware and well informed of lacks of protective safety gears but recklessly disregarded.

52

Defendants have performed their duties negligently and acted with actual malice and intent, caused harm to Plaintiff when Defendants denied him protective safety gears and failed to respond to his several filed complaints for same. Defendants have violated Plaintiff's constitutional rights under the Eighth and Fourteenth Amendment; Federal Laws and Regulations 29 C.F.R. § 651 et. seq. 654, 1910.132(a), 1200, 1926.28(a); and State law and ALDOC Administrative Regulations.

Defendants engaged in intentional and reckless conduct and Defendants' conduct was extreme and outrageous and caused the Plaintiff emotional distress and the emotional distress suffered by the Plaintiff was severe.   Defendants were negligent in performing a duty and have acted with actual malice or actual intent to cause injury while performing a duty. Even if DEfendants were performing a discretionary duty, a reasonable jury could infer that Defendants were negligent and acted with actual malice and intent to hot-water torture and caused harm when Defendants denied Plaintiff access to protective safety gears and failed to respond to his several filed complaints for the same.    Defendants are not entitled to Official immunity nor individual immunity with respect to this claim.   Defendants are not entitled to relief with respect to Plaintiff's claim for intentional infliction of emotional distress asserted against Defendants.

Under a supervisory official Defendants were Plaintiff's Supervisors in the Kilby Correctional Facility. Supervisors Defendants are liable when the supervisors Defendants involved in constitutional deprivation and failed to remedy the wrong Plaint-

53

tiff complained of, then created a custom pattern under which
unconstitutional practices occurred, allowed such custom pattern
policy to continue despite Plaintiff's numerous filed complaints.
Supervisor Defendants have acted grossly negligent in managing
subordinates who caused unlawful condition or event.  **Turpin v.
Mailet,** 619 F 2d 196, 201 (2nd Cir.      ),Cert. denied, 449 U.S.
1016, 101 S. Ct. 577, 66 L Ed 2d (1980);  **Sostre v. McGinnis,** 442
F 2d 178, 205 (2nd Cir. 1971)(en banc),**Cert denied,** 404 U.S. 1049,
92 S. Ct. 719, 30 L Ed 2d 740 (1972)(Prison Warden liable for
ordering that inmate be placed in solitary confinement).  **Owens v.
Haas,** 601 F 2d 1242, 1246 (2nd Cir.      ), **Cert. denied,** 444 U.S.
980, 100 S. Ct. 483, 62 L Ed 2d 407 (1979)(Municipality liable for
gross negligence in training it prison guards.)

Defendants are not entitled relief with respect to Plaintiff's
claims of violation of constitution, federal laws and regulations
and State laws and ALDOC regulation policies regulations asserted
against Defendants under their official and individual capacities
as described above.

Defendants are not entitled to supervisors liability as with
respect to Plaintiff's claim.


V.    FOURTEENTH AMENDMENT

**Sandin v. Conner,** 515 U.S. 472, 115 S. Ct. 2293, 132 L Ed 2d
418 (1995), established that in evaluating whether a liberty
interest exists, we must ask whether the conditions impose "atyp-
ical and significant hardship on the inmate in relation to the
ordinary incidents of prison life."   The Supreme Court determined

in **Wilkinson v. Austin,** 545 U.S. 209, 125 S. Ct. 2384, 162 L Ed 2d 174 (2005), that there can, in fact, be a liberty interest-short of an Eighth Amendment violation - triggering procedural require- ments. The Court required the State of Ohio to provide limited due process protection before inmate could be transferred to its most restrictive prison. The Court noted the difficulty in ident- ifying the proper baseline against which to measure conditions but said that assignment to the prison "impose an atypical and signif- cant hardship under any plausible baseline." Defendants have not shown that they are entitled to any immunity when they deprived Plaintiff of his liberty by subjected to the unsafe kitchen work environment, subjected and compelling him to work under unsafe work environment conditions full of over heated hot water mixed with highly concentrated commercial industrial yellow and white chemical substances in absence of protective safety gears and in absence of safety procedural due process and equal protection which led to Plaintiffs' harm, hot-water torture, burns, sharp severe pains, permanent finger discoloration, skin irritation hardening itchy tenure and emotional distress in violation of fourteenth Amendment of the constitution of United States.

There is also a genuine issue of material fact when the dep- rivation Plaintiff suffered under Defendants developed custom policy not to respond to Plaintiffs' complaints and not to res- pond to Plaintiff inmate worker complaints for safety in time were an atypical and significant hardship implicated Plaintiffs' due process rights despite Defendants were aware, possessed know- ledge but recklessly disregarded and acted with deliberate indiff- erence toward Plaintiffs' numerous complaints. Plaintiff has shown

55

his fingers after performing his assigned tasks to Defendants Stewards several times but the Defendants Stewards did not send him to the medical unit instead they perpetually asked Plaintiff how much time he had remaining to serve in prison before being deported and as such Defendants Stewards conduct were punitive unrelated to the conduct the Prison Official were trying to correct to protect Plaintiff nor provide or make available protective safety gears.

A prisoner has less freedom of speech than a free person but less is not zero, and he is a victim of retaliation for the exercise of what free speech he does have he should have the same right to remedy as his free counterpart. **Turner v. Safley,** 482 U.S. at 84, 107 S. Ct. 2254. Moreso Defendants Lieutenant and Steward I coerced, threatened, called Plaintiff a "knucklehead" and compelled Plaintiff to perform unsafe tasks in the absence of protective safety gears or face a disciplinary action with given Plaintiff opportunity to state his version of the incident, in doing, Defendants fail to to follow the ALDOC AR procedural due process and equal protection as with respect to safety and constitution. Defendants Lieutenant and Steward I violated Plaintiff's Fourteenth Amendment under the constitution of the United States of America, and as a result, Plaintiff suffered.

## VI.   DEFAMATION

Defendant Lieutenant and Steward I, made perpetually statements calling Plaintiff a "Knucklehead" and was made with actual malice, that is, with hatred, ill were false and has caused Plaintiff to suffer tangible injury. Plaintiff was not a "knucklehead" for following the Defendants Stewards and others direct orders; to use empty milk crates to climb up, plug-in the ceiling fan at

beginning of his pots and pans hand wash to cool down the heat from the pots and pans, and moreso no safety warning label or safety precaution sign or hazard warning label was attach to the broken ceiling fan to inform Plaintiff about the danger existed.

Plaintiff upon called Knucklehead, Plaintiff pleaded to Defendant Steward I, not to call him a knucklehead but Defendant Steward I backed up by Defendant Lieutenant and recklessly disregard of the truth perpetually calling Plaintiff a knucklehead, when in fact they knew that Plaintiff was not a knucklehead and created an unsafe hostile work environment for inmate Plaintiff also know as knucklehead.  Plaintiff was defame by Defendants Lieutenant and Steward I, as with respect to this claim and Defendants as mentioned are not entitle to relief or immunity.  **New York Time Co. v. Sullivan,** 376 U.S. 254, 11 L Ed 2d 686, 84 S Ct 710.

## VII. ACCESS TO THE COURT

The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaning legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  **Bounds v. Smith,** 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L Ed 2d 72 (1977). Under the First and Fourteenth Amendments of the constitution state prisoners have a right of access to the courts.  **Lewis v. Casey,** 518 U.S. 343, 346, 116 S. Ct. 2174, 135 L Ed 2d 606 (1996). Access to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents that are necessary or appropriate in order to commence or prosecute court proceedings

57

affecting one's personal liberty." id at 384, 116 S. Ct. 2174.

The evidence before the Court concludes that 2nd Shift Kitchen inmate workers are being denied their constitutionally protected right of access to the courts.  The 2nd Shift kitchen inmate workers are being denied access to the law library.  Defendants' filed affidavit stated that 2nd Shift work hour is 10 AM to 6 PM, and Defendants Chief Steward required 2nd Shift inmate workers to report to the kitchen an hour (1) or an hour and half (1.5) early to get ready to serve the inmate population as depicted on Plaint-iff's exhibits.   The inmate law library open Monday to Friday from 8 AM to 4 PM and on Saturday 3 PM to 6 PM as depicted on Defendants filed affidavit.  Prison Official at "Gate 3" denied inmates access to ingress and egress to the law library during the morning hours prior to launch in part.

The 2nd Shift Kitchen inmate workers have no ample access to the law library and the 2nd Shift kitchen inmate workers are being denied their constitutionally protected right of access to the court and the Defendants did nothing to correct, and 2nd Shift inmate worker suffered and suffering as a result of Defendants actions and inactions.

## VIII. INADEQUATE VENTILATION

There is no question that exposing prisoners to conditions of excessive heat in inadequate ventilation "is contrary to current standards of decency" **Helling,** 509 U.S. at 35, 113 S. Ct. 2475.   In **Helling,** the Supreme Court went as far as to hold that exposure to environmental tobacco smoke in certain circumstances, may very likely pose an objectively serious threat to future health sufficient to amount to cruel and unusual  punishment.  **Helling,**

509 U.S. at 32-36, 113 S. Ct. 2475.  The lack of adequate ventil-
tion and air flow which undermined health of prison inmates and
sanitation of the prison, violated the minimum required of the
Eighth Amendment.

Defendants failed to provide humane health conditions.  As
a result of allegedly unhealth condition of the kitchen's  inadeq-
uate ventilated system; air flow in the kitchen pots and pans hand
washing areas and un-ventilated toilets were inadequate to sustain
the heat generated from the hot-water, hot greasy pots and pans
which inmates were compelled to hand wash them in absence of pro-
tective safety gears.  **Ramos v. Lamm,** 639 F 2d 559, 567-69 (10th
Cir. 1980); **Gates v. Collier,** 501 F 2d 1291, 1300-03 (5th Cir.
1974).

The material issue of facts as to whether the protective or
administrative confinement subjects inmates like Plaintiff to
perform unsafe prisoner job assignment in the absence of safety
gears violated Plaintiffs constitutional right and constituted a
form of punitive response to inmate Plaintiff's complaints that
defendant had an affirmative duty to response and provide a pro-
tective safety gears and a safe work environment for kitchen inmate
workers like Plaintiff performing pots and pans hand washing in
absence of protective safety gears.

Defendants have not shown that they are entitled to any
relief in all manners.  Plaintiff's case is one in which Plaintiff
is entitled to have the trier of fact determine whether the condi-
tion of subjecting Plaintiff to perform tasks in an unsafe work
environment in the absence of protective safety gears that caused
him pains and suffering and injury violated the minimal standards

59

required by the Eighth Amendment and without procedural due process and equal protection violated the Fourteenth Amendment.

Thus, the Federal Rules do not permit a court to dismiss lawsuits on the basis of evidence presented by the Defendants, if Plaintiff have not yet had a chance to conduct discovery and present evidence himself. **Bradbury v. Wainwright,** 718 F. 2d 1538 (11th Cir. 1983).

Respectfully Submitted,

*Egbuonu Zephyr*

Zephyrinus Egbuonu
Pro-Se
FDC # 27041-265
Federal Detention Center
P. O. Box 5010
Oakdale, Louisiana 71463

60

## CERTIFICATE OF SERVICE

I hereby certify that I have this 28th day of January, 2008. served a copy of the forgoing: Response to Special Report and Answer and Clear and Legible Copies of the documents relevant to Plaintiff's claims asserted in the action in part, by first-class UNited States Mail, postage prepaid and addressed upon the following:

Benjamin H. Albritton
Assistant Attorney General
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130-152

*Egbuonu Zephyr*

Zephyrinus Egbuonu
Pro-Se

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ZEPHYRINUS EGBUONU,          *
#27041-265
     Plaintiff,               *

     v.                       *                2:07-CV-685-ID

KITCHEN STEWARD WILLIAM,     *
et al.,
     Defendants.              *


## AFFIDAVIT

I, Zephyrinus Egbuonu, hereby certify and affirm that I currently an immigration civil detainee at the Federal Detention Center in Oakdale, Louisiana; that I am one of the custodians of the attached documents; that the attached documents are true, exact, and verbatim copy of the documents presented to and or received from the Alabama Department of Corrections prison officials; and that I am over the age of nineteen (19) years and competent to testify to the aforesaid documents and matters stated therein.

I further certify and affirm that said documents are maintainted and kept in accordance with the provisions of records of regularly conducted activity and that said documents (and the entries therein) were made at, or reasonably near the time that such acts, events and transactions referred to therein are said to have occurred.

This, I do hereby certify and affirm to on the _28th_ day of January, 2008

_Egbuonu Zephyr_

**Zephyrinus Egbuonu**

Authorized by the Act of
July 7, 1955, as amended, to
administer oaths (18 USC 4004).

**State of Louisiana**

**Oakdale, Louisiana**

_____, Case Manager
(Name)

    Sworn to and subscribed before me and under my hand official

seal this the _____ day of January, 2008.


_____

**Notary Public**

My Commission expires: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ZEPHYRINUS EGBUONU,<br>#27041-265<br>    Plaintiff, | *<br><br>* | |
| v. | * | 2:07-CV-685-ID |
| KITCHEN STEWARD WILLIAM,<br>et al.,<br>    Defendants. | *<br><br>* | |

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said parish and State of Louisiana at large, personally Zephyrinus Egbuonu, who being know to me and being by me first duly sworn, deposes any says on oath as follows:

My name is Zephyrinus Egbuonu, I am presently an immigration civil detainee at the Federal Detention Center in Oakdale, Louisiana and a former inmate of the Kilby Correctional Facility, Mount Meigs, Alabama. I am over ninteen (19) years of age.

Kilby Correctional Facility is a Alabama Department of Corrections System, and prisoner in Kilby Correctional Facility and every prisoner in the Alabama Department of Corrections are required to work as well as Inmate Egbuonu.

The Prison Officials supervising Inmate Egbuonu have a constitutional obligation to take reasonable measures to guarantee inmates' safety as well as Inmate Egbuonus' safety and Inmate Egbuonus' concern of unreasonable risk damage to his health.

# EXHIBIT 1

In absence of Prison Officials Chief Steward Michael Warren
and Steward II Varner, Prison Official **Steward Howard Williams**
was Inmate Egbuonus' immediate supervisor.  Inmate Egbuonu has
repeatedly filed several complaints complaining about the danger-
ous' unsafe and health hazard problems that existed in kitchen
pots and pans hand wash areas which Prison Official Steward
Williams and others compelled Inmate Egbuonu to perform unsafe
tasks in absence of protective safety gears in an inadequate kit-
chen area.  Exhibits 13, 14, 15, 19, 20, 24.

Prison Official Steward Williams ordered and compelled
Inmate Egbuonu to hand wash hot greasy pots and pans under over
heated hot-water mixed with highly concentrated commercial   In-
dustrial yellow and white powder detergent chemical substances in
absence of protective safety gears; hand washing gloves and hot-
water resistant shoes, for over six (6) months.

Prison Official Steward Williams did not respond to Inmate
Egbuonu numerous complaints for the protective safety gloves and
protection from safety and health hazard risk nor provide Inmate
Egbuonu with the protective safety gears.

Prison Steward Williams did nothing to correct the unavail-
iability of protective safety gears situation Inmate Egbuonu com-
plained of, after receiving Inmate Egbuonu numerous complaints.
Prison Official Williams was aware and possessed knowledge that
Inmate Egbuonu was not provided with protective safety gears and
recklessly disregarded and acted with deliberate indifference
compelled Inmate Egbuonu to perform the kitchen pots and pans
hand wash in absence of protective safety gears.

2

Prison Official Williams failed to provide protective safety gears nor implement and enforce safety rules and precautions consistent with Alabama Department of Corrections Administrative REgulations as respect to safety related matters. Prison Official Steward Williams compelled Inmate Egbuonu to perform the pots and pans hand wash that exposed Inmate Egbuonu to unreasonable safety and health risk damage to Inmate Egbuonu's health. Exhibits 7, 8, 13, 14, 15, 19, 20, 24.

Prison Official Williams failed to fashion a policy addressing Inmate Egbuonu exposure to hot-water mixed chemical substances, failed to make a good faith effort to implement or enforce the policy to protect inmate workers from unsafe work environment.

Prison Official Steward Williams at no time provided nor made available hand wash elbow length Neoprene gloves to Inmate Egbuonu or other pots and pans inmate workers and has never instructed Inmate Egbuonu and other inmate workers to wear neoprene gloves which he did not provide nor make available. Moreso, Prison Official Steward Williams recklessly disregarded to respond to Inmate Egbuonu's numerous complaints requesting for hand wash gloves, protective safety gears and precaution requests and acted with deliberate indifference by compelling Inmate Egbuonu to perform the hot greasy pots and pans hand wash in absence of protective safety gears and exposing Inmate Egbuonu to unreasonable risk damage to his health. Exhibits 13, 14, 15, 19, 20, 24.

At no time did Prison Official Steward Williams provide Inmate Egbuonu with hot-water resistant shoes to wear to perform the kitchen pots and pans hand wash tasks in an unsafe kitchen

3

work environment.  Prison Officials Chief Steward Warren and
Steward Williams  did not:  1) train Inmate Egbuonu on the proper
kitchen sanitation and safety procedures in pots and pans hand
wash; 2) train Inmate Egbuonu on the amount of the highly concen-
trated commercial industrial yellow and white powder detergent
chemical subsatnces to use nor the appropriate way to use the
highly concentrated detergent chemical subsatnaces.

Inmate Egbuonu was taught how to perform the kitchen pots
and pans hand wash by some extra duty inmate workers who were
performing the kitchen pots and pans hand wash at the time events
took place.

Prison Official Steward Williams and others used the pots
and pans hand wash under the over heated hot water in absence of
protective safety gears to impose curel and unusual punishment,
harm, hot-water torture, and inflict severe sharp pains on inmate
workers and this their unconstitutional custom behaviour has been
going on for years.

Safety and Safety precaution is to prevent the first acci-
dent from occurring, Prison Official Steward Williams waited for
Inmate Egbuonu to sustain a cut on his hand and finger then all-
eged sending Inmate Egbuonu to the Medical Unit but failed to
provide the Court with the medical chart and or incident report
of Inmate Egbuonus' injury in May 2006 which Prison Official
Steward William admitted that he provided Inmate Egbuonu a pair
of latex gloves to keep the cut area dry.  See Prison Official
Defendants' Exhibit 1 page 3.

No report of Inmate Egbuonus' numerous complaints made to

4

Prison Steward William was attached to his filed affadavit nor presented before the Court.

Prison Official Steward Williams has never called the Shift Commander to come take Inmate Egbuonu to the Medical Unit or send Inmate Egbuonu to the Medical Unit by himself despite Inmate Egbuonu had made numerous complaints to Prison Official Steward Williams about his hands and fingers had began to wear off from the chemical substances he was using to wash the dishes and was concerned for his safety. No record was submitted by Prison Official Steward William indicating that he sent Inmate Egbuonu to the Medical Unit. See Prison Official Defendants' Exhibits 1, 2.

Prison Official Steward Williams was aware, possessed Knowledge that Inmate Egbuonu experienced a cut, recklessly disregarded and acted with deliberate indifference by providing Inmate Egbuonu with a hospital latex gloves to cover the cut area then ordered and compelled Inmate Egbuonu to complete his assigned unsafe tasks; hot greasy pots and pans hand wash in absence of elbow length gloves or face sanction and disciplinary actions. See Prison Official Defendants' Exhibit 1.

Prison Officials Chief Steward Warren and Steward Williams did not make routine checks on the amounts of detergent chemical substances being applied and used by the kitchen pots and pans hand wash inmate workers. Instead both have interest to provide inmate workers with extra brown bags which contains the highly concentrated commercial industrial detergent chemical substances, to get the task done irrespective that pots and pans hand wash inmate workers are being exposed to unreasonable safety and health

5

hazard risk and also damage to their future health.  The brown
has no label and Inmate Egbuonu had no way of knowing what type
of detergent chemical substances he was being exposed to or the
amount of the detergent chemical substance to be mixed with over
heated hot-water to perform the pots and pans hand wash in
absence of protective safety gears.   Inmate Egbuonu has made
request from Prison Official Steward Williams and others for the
content of the detergent chemical substances that caused harm to
him, however Inmate Egbuonu request was denied.   Prison Official
Steward Williams and other denied Inmate Egbuonu's rights to
know in violation of federal laws and regulations.   Moreso, no
policy was in place for inmate workers to know what types of
detergent chemical substances they were being exposed to and the
safety precautions to follow to protect their health.  In addition,
Prison Official Chief Steward Warren has declared that one of the
chemical substance given to pots and pans hand wash inmate workers
contained bleach; see Prison Official Defendants' Exhibit 5  page
2, however bleach will not be considered as "all purpose manual
detergent"; see Prison Official Defendants' Exhibit 6, so as may
other detergent chemical substance given to inmate workers inclu-
ding Inmate Egbuonu.  As such inmate workers including Inmate
Egbuonu have no way of knowing what chemical substances expose to
in the kitchen unsafe work environment.

        The Ceiling fan located at the kitchen pots and pans work
area does not stay plugged in/on for twenty-four(24) hours per
day.  The kitchen Prison Official Stewards including Steward
Williams told inmate workers including Inmate Egbuonu to use

6

empty milk crates to climb up, plug-in or unplug the ceiling
fan on a daily basis.  No ladder was provided or made availbale
to use to climb up, plug-in or unplug the ceiling fan on a daily
basis.    Prison Official Steward William told Inmate Egbuonu to
plug-in the ceiling fan at beginning of his pots and pans hand
wash to cool down the heat from the pots and pans.    For over
six (6) months Inmate Egbuonu was working in the kitchen, he has
not seen Maintenance Department crew plug-in and unplug the
ceiling fan kitchen inmate workers in the pots and pans 1st Shift.

       Prison Officials Steward Williams and other Stewards were
aware and possessed knowledge that: 1) no ladder was provided or
made available to use to climb up, plug-in or unplug the ceiling
fan;   2) the kitchen pots and pans area ceiling fan had mechanical
and electrical problems,  but recklessly disregarded and acted
with deliberate indifference and failed to attach safety warnings,
safety precaution signs, hazard warning labels or inform inmate
workers including Inmate Egbuonu that the ceiling fan had problems.
Prison Official Steward Williams saw Inmate Egbuonu upon Inmate
Egbuonus' arrival to work and check-in with Prison Official
Steward Egbuonu Williams.  Prison Official Steward Williams said
nothing to Inmate Egbuonu about the ceiling fan when he handed
Inmate Egbuonu the brown bags of detergent chemical substances.
Prison Officials Steward Williams failed to warn inmate workers
when he left the empty milk crates inmate workers uses to climb
up to plug-in or unplug the ceiling fan, in place.    It was
obvious that Prison Official Steward Williams recklessly disre-
garded and acted with deliberate indifference failed to informed

7

Inmate Egbuonu about the unsafe ceiling fan to protect Inmate
Egbuonu in the unsafe work environment and has not provided any
safe way to plug-in or unplug the ceiling fan rather than to
use the empty milk crate that was placed in place by the Prison
Official Stewards.

Prison Official Steward Williams anther Other Stewards were
aware, possessed knowledge, knew there was mechanical and elect-
rical danger in climbing and plugging the ceiling fan which has
problems but recklessly diregarded and acted with deliberate
indifference failed to take actions to correct the danger and make
it safe for inmates or informed inmate workers including Inmate
Egbuonu of the existing ceiling fan danger.

Prison Official Steward Williams recklessly disregarded the
safety precaution procedure to protect Inmate Egbuonu for climbing
up to plug-in the ceiling fan which he has told Inmate Egbuonu to
plug-in in the beginning of his pots and pans hand wash in absence
of protective safety gears. Moreso, Prison Official Steward
Williams has exposed Inmate Egbuonu to unsafe work environment
and recklessly disregarded and acted with deliberate indifference
failed to protect Inmate Egbuonu from danger and perpetually
called Inmate Egbuonu a "Knucklehead". The Webster College
dictionary defined knucklehead as " a stupid person". Inmate
Egbuonu was not a stupid person for follow Prison Official
Steward Williams direct order which lacks safety.

Prison Official Williams has never informed Inmate Egbuonu
that the ceiling fan was broken prior to his climbing up to plug-
in the ceiling fan at the beginning of his assigned tasks consist-

8

tent with Prison Official Steward William previously instruction
to him.

Prison Official Steward Williams has repeatedly called
Inmate Egbuonu a "knucklehead" in fornt of Kitchen inmate
workers despite that Inmate Egbuonu have asked pleaded to him
kindly not to further call him a "knucklehead", Prison Official
Steward Williams disregarded and continued to call Inmate Egbuonu
a "Knucklehead" and called a backup officer; Lieutenant Kenneth
Cash.

Prison Official Steward Williams and Lieutenant Kenneth Cash
perpetually called Inmate Egbuonu a knucklehead several times,
ordered and compelled Inmate Egbuonu to perform unsafe pots and
pans hand wash in absence of the elbow length gloves and hot-water
resistant under the over heated hot water mixed with detergent
chemical substances in inadequate ventilation in absence of pro-
tective safety gears without inquiry assessment of the existing
danger and harm, without due process of safety precaution and
without inquiry into Inmate Egbuonus' liberty interest to be free
from safety and health risks.

Prison Steward Williams perpetually made statements calling
Inmate Egbuonu a "Knucklehead" was made with actual malice, that
is, with hatred, ill will or enmity or a wanton desire to injure
and their statements were false and has caused Inmate Egbuonu to
suffer tangible injury.

At no time were sanctions, citations or disciplinary actions
issued to Inmate Egbuonu by Prison Official Steward Williams and
or others for:  1) failure to follow direct Prison Official order;

9

2) failure to follow safety or sanitation regulation orders;

3) filing any false allegation against Kitchen Prison Official;

4) failure to follow direct safety order procedure;  5) intention-
ally creating a security, safety, or health hazard;  6) violating
of any Alabama Department of Corrections Administrative Regulation.
Exhibit 7, 8.

Prison Official Steward Williams has habits of using abusive
conduct words or statements against inamte workers in the past
and continues to do so, made the kitchen a hostile work environ-
ment and has defamed Inmate Egbuonu and failed to correct the same.
Moreso, Prison Official Steward William has created a hostile
work environment for inmate workers with his abusive conduct words
by labelling Inmate Egbuonu a "knucklehead".

Prison Official Steward Williams has failed to abide by the
Alabama Department of Corrections Administrative Regulation as
respect to safety related matter, due process and equal protection
and protection of inmate workers in kilby Correctional Facility
from unreasonable risks which Inmate Egbuonu suffer.

Prison Official Steward Williams has failed to provide
Inmate Egbuonu with protective safety gears; elbow length gloves
and hot-water resistant shoes despite Inmate Egbuonu numerous
complaints to him that he has experienced hot-water torture,
severe pains and suffering, burns, skin irritation itchy tenure
hardening, cut injuries and permanent finger discoloration.
Priso Official Steward Williams recklessly disregarded and acted
with deliberate indifference and did nothing to protect Inmate
Egbuonu.

10

Prison Official Steward William has failed to provide inmate workers with proper safety and operating instructions on the amount of detergents to use in performing pots and pans hand wash. Prison Official Steward Williams has failed to warn and protect inmate workers against unreasonable safety and health hazard risks.

Prison Official Steward Williams and others have worked together for over six (6) months, ordered and compelled Inmate Egbuonu to perform pots and pans hand wash in absence of safety gears; the task that no other inmate workers wanted to do for more than one month in absence of safety gears and which other inmates were injured.

Inmate Egbuonu submits that his evidence before the Court prior to discovery is not only believable but compelling that Prison Official Steward Williams and others had actual knowledge of danger in the Kitchen pots and pans hand wash tasks but Prison Official Steward Williams totally recklessly disregarded to provide Inmate Egbuonu with protective safety gears or protect Inmate Egbuonu from unreasonable risk.   Prison Official Steward Williams and others acted with deliberate indifference to expose Inmate Egbuonu to unreasonable risk damage to his health and that, as a result of Prison Official Steward Williams actions and inactions Inmate Egbuonu has suffered hot-water torture, sharp severe pains, emotional distress, skin irritation hardening tenure itchy, permanent finger discoloration and continues to suffer.   Prison Official Steward Williams totally disregard for his duties under Alabama Department of Corrections, State and Federal laws and regulations and constitution of the United States as respect to

11

this claim.

Inmate Egbuonu now re-alleges and incorporates by references to the above-mentioned and its attached exhibits and his filed civil complaint and states that Prison Official Steward I Howard William has violated Eighth and Fourteenth Amendment Constitution rights respectively in all manner, has defamed Inmate Egbuonu in violation of 42 U.S.C. § 1983, and has worked together with others to further violate Egbuonus' Eighth and Fourteenth Amendment constitutional rights in all manner.

_Egbuonu Zephyr_

**Zephyrinus Egbuonu**

**State of Louisiana**

**Oakdale, Louisiana**

Sworn to and subscribed before me and under my hand official seal this the _____ day of January, 2008.

_____

**Notary Public**

My Commission expires: _____

Authorized by the Act of
July 7, 1955, as amended, to
administer oaths (18 USC 4004).

_____, **Case Manager**
(Name)

12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ZEPHYRINUS EGBUONU,            *
#27041-265
     Plaintiff,              *

     v.                          *              2:07-CV-685-ID

KITCHEN STEWARD WILLIAM,       *
et al.,
     Defendants.             *

### AFFIDAVIT

    Before me, the undersigned authority, a Notary Public in and for said parish  and State of Louisiana at large, personally Zephyrinus Egbuonu, who being know to me and being by me first duly sworn, deposes any says on oath as follows:

    My name is Zephyrinus Egbuonu, I am presently an immigration civil detainee at the Federal Detention Center in Oakdale, Louisiana and a former inmate of the Kilby Correctional Facility, Mount Meigs, Alabama.  I am over ninteen (19) years of age.

    Kilby Correctional Facility is a Alabama Department of Corrections System, and prisoner in Kilby Correctional Facility and every prisoner in the Alabama Department of Corrections are required to work as well as Inmate Egbuonu.

    The Prison Officials supervising Inmate Egbuonu have a constitutional obligation to take reasonable measures to guarantee inmates' safety as well as Inmate Egbuonus' safety and Inmate Egbuonus' concern of unreasonable risk damage to his health.

# EXHIBIT 2

Cash

        Inmate Egbuonu reference to Prison Official **Lieutenant**
**Kenneth Cashs'** filed affidavit and states that he was summoned
to inmate general population Kitchen Office in the presence of
other kitchen inmate workers by Prison Officials Lieutenant Cash
and Steward Williams; see Defendant Exhibit 1 page 3, which
states: " .... and I called for Lieutenant Cash to report the
incident."

        Prison Official Lieutenant ("Lt.") Cash allowed Prison Off-
icial Steward Williams to make his incident report to him but
denied Inmate Egbuonu the same and repeatedly called Inmate
Egbuonu a "Knucklehead" as he speaks and told Egbuonu not to
speak a word or otherwise face sanctions, citations, discipli-
nary actions.

        Prison Official Lt. Cash denied Inmate Egbuonu access to
Alabama Department of Corrections Administrative Regulation due
process and Constitutional rights to free speech and due process
and equal protection to present his own version of the incident
despite the fact that Lt. Cash was aware and possessed knowledge
of the Kitchen safety and hazard risks that existed then
compelled "knucklehead" as Lt. Cash called Inmate Egbuonu, to
perform the kitchen pots and pans hand washing under over heated
hot-water mixed with highly concentrated commercial industrial
detergent chemical substances and in an unsafe work area in
absence of protective safety gears ( elbow length hand washing
gloves and hot-water resistant shoes) and a working ceiling fan.

        Prison Officials Lt. Cash and Steward William worked togeth-
er, were aware, possessed knowledge of the kitchens' unsafe work

                                2

area environment in absence of protective safety gears including
a broken ceiling fan and more excessive heat generate in absence
of the ceiling fan and recklessly disregarded and acted with
deliberate indifference by compelling Inmate Egbuonu to perform
unsafe kitchen pots and pans hand wash with no protective safety
gears in inadequate kitchen ventilation that exposed Inmate
Egbuonu to unreasonable safety and health hazard risks.

Prison Official Lt. Cash coerced and threatened Inmate
Egbuonu and use the Alabama Department of Correction Administ-
rative Regulation Number 403 major rule violation; see Exhibit
8, to further his threats, but on the other hand failed to abide,
enforce and implement safety precaution rules consistent with
the Alabama Department of Corrections Administrative Regulation
to protect Inmate Egbuonu from unreasonable safety and health
hazard risks.

Prison Official Lt. Cash told Inmate Egbuonu that if he
failed to perform assigned tasks as directed by Prison Official
Steward Wlliams irrespective of Inmate Egbuonu request for pro-
tective safety gears and a working fan to cool down the hot
greasy pots and pans and areas he works, that Inmate Egbuonu
would be written up, sanctioned, disciplined and placed in an
isolated segregation cell and the write-up would be placed in
Inmate Egbuonus' file for the Board of Pardon and Parole.  How-
ever Prison Official Lt. Cash backed-up Prison Official Steward
William to deny Inmate Egbuonu  protective safety gears.
Exhibits 7, 8 and Defendant's Exhibit 2.

Prison Official Lt. Cash has never sanctioned, cited or

3

or disciplined Inmate Egbuonu for:  1) making false complaints
for safety gears nor lying or providing a false statement about
unavailable kitchen protective safety gears and unsafe work
environment;  2) failure to follow direct prison officials'
order;  3) failure to follow safety or sanitation regulations;
4) failure or refusing to work or to accept a program; and any
other Alabama Department of Corrections Administrative Regulat-
ion Number 403 major rule violations.  Exhibits 7, 8, 13, 14,
15, 19, 20, 24  then see Prison Official Defendants' Exhibits
1, 3, 4, 5, 6 which happens to disagree with the Prison Off-
icial Lt. Cash filed affidavit  on the basis that Inmate Egbuonu
failed to follow or obey direct Prison Officials' direct orders
or follow safety and sanitation regulations.

     Prison Official Lt. Cash has coerced and threatened Inmate
Egbuonu and compelled him to perform the kitchens unsafe pots
and pans hand washing in absence of protective safety gears a
safe work environment or face disciplinary action despite Inmate
Egbuonus several complaints made to the Prison Officials includ-
ing the one made to Prison Official Stewards.  Inmate Egbuonu
as a result of Prison Official Lt. Cah actions  and inactions,
experienced hot-water torture, pains and suffering, skin itchy
irritation  hardening tenure and finger discoloration.

     Prison Official Lt. Cash has used excessive force on inmates
in past and at no time did Prison Official Steward Williams call
Prison Official Lt. Cash and or obtained authorization from the
Prison Official Lieutenant's Office to escort Inmate Egbuonu to

4

Cash

to the Medical Unit    that Egbuonu recall despite the fact
that Inmate Egbuonu made numerous complaints requesting for pro-
tective safety gears and was concerned for his safety.  Exhibits
13, 14, 15, 19, 20, 24 then see Prison Official Defendants'
Exhibits 1 and 2.

Prison Official Lt. Cash has failed to abide by the Alabama
Department of Corrections Administrative Regulation when he work
together with Prison Official Steward Williams to compel Inmate
Egbuonu to perform unsafe task in an unsafe work environment
without inquiry assessment of the existing danger and harm, with-
out due process of safety precaution and without inquiry into
Inmate Egbuonus' liberty interest to be free from safety and
health risks.

Prison Official Lieutenant Kenneth Cash and Steward Williams
perpetu ally made  statements calling Inmate Egbuonu a "Knuckle-
head" was made with actual malice, that is, with hatred, ill
will or enmity or a wanton desire to injure and their statements
were false and has caused Inmate Egbuonu to suffer tangible
injury.   Inmate Egbuonu was not a "Knucklehead."

Inmate Egbuonu now re-alleges and incorporates by references
to the above-mentioned and its attached Exhibits and filed civil
complaint and states that Prison Official Lieutenant Kenneth Cash
violated Inmate Egbuonus' liberty interest to be free from
harms, pains and suffering, unreasonably risks, due process and
equal protection rights; First, Eighth and Fourteenth.  Prison
Official Lieutenant Kenneth Cash has worked together with Prison
Official Steward Williams to defame him by perpetutally calling

5

Cash

Inmate Egbuonu a "Knucklehead" and reckless disregard of the truth and further violated Inmate Egbuonus' First, Eighth and Fourteenth Amendment constitutional rights and 42 U.S.C. § 1983. Inamte Egbuonu further states that Lieutenant Kenneth Cash has violated the State and Federal laws and regulations as respect to the safety and Inmate Egbuonus' constitutional rights in all manner.

*Egbuonu Zephyr*

**Zephyrinus Egbuonu**

**State of Louisiana**

**Oakdale, Louisiana**

Sworn to and subscribed before me and under my hand official seal this the _____ day of January, 2008.

_____

**Notary Public**

My Commission expires: _____

Authorized by the Act of
July 7, 1955, as amended, to
administer oaths (18 USC 4004).

_____, Case Manager
(Name)

6

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ZEPHYRINUS EGBUONU,          *
#27041-265
     Plaintiff,            *

     v.                    *            2:07-CV-685-ID

KITCHEN STEWARD WILLIAM,     *
et al.,
     Defendants.           *

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said parish  and State of Louisiana at large, personally Zephyrinus Egbuonu, who being know to me and being by me first duly sworn, deposes any says on oath as follows:

My name is Zephyrinus Egbuonu, I am presently an immigration civil detainee at the Federal Detention Center in Oakdale, Louisiana and a former inmate of the Kilby Correctional Facility, Mount Meigs, Alabama.  I am over ninteen (19) years of age.

Kilby Correctional Facility is a Alabama Department of Corrections System, and prisoner in Kilby Correctional Facility and every prisoner in the Alabama Department of Corrections are required to work as well as Inmate Egbuonu.

The Prison Officials supervising Inmate Egbuonu have a constitutional obligation to take reasonable measures to guarantee inmates' safety as well as Inmate Egbuonus' safety and Inmate Egbuonus' concern of unreasonable risk damage to his health.

# EXHIBIT 3

Inmate Egbuonu was assigned to work at the Kilby Correctional Facility by the Prison Official Captain over the job placement who reviews Inmate Egbuonu record and him that "I have a job for you since your victim is a law enforcement officer, I will assign you to the inmate general population Kitchen, deal with the Kitchen heat and learn how to hand wash pots and pans before immigration deports you."    Exhibits 9 and 11.

Prison Official **Captain Bobby Barrett**, received numerous oral and written complaints from Inmate Egbuonu, however  Prison Official Captain Barrett failed to take actions and or inactions to protect Inmate Egbuonu and provide him with protective safety gears or fashion a policy addressing Inmate Egbuonu exposure to hot-water mixed with chemical substances in absence of protective safety gears.    Prison Official Captain Barrett failed to implement and enforce safety precaution in the kitchens unsafe work environment in which Inmate Egbuonu was  assigned to perform his prison labor.    Prison Official Captain Barrett also failed to make a good faith effort to implement or enforce safety policy and moreso he was the Prison Official Captain over the job placement.    Prison Official Captain Barrett failed to provide Inmate Egbuonu with protective safety gears nor respond to Inmate Egbuonus' complaint requests on time or state any prison policy that reasonably relates to legitimate interest not to grant Inmate Egbuonus' complaint requests.  Exhibits 11, 14, 16, 23 and Defendants' Exhibit 3 page 2.

At no time elbow length glove was provided nor made available to inmate workers to wear to perform pots and pans hand wash under

2

overheated  hot-water mixed with highly concentrated commerical
industrial yellow and white powder detergent chemical substances.

On several occasions Inmate Egbuonu had spoken to Prison
Official Captain Barrett on different issues ranging from various
safety hazards found through out the Kilby Correctional Facility
occupation areas, serious threats  to safety and security of
inmates; unconstitutional infliction of pain against inmates;
denying kitchen 2nd Shift inmate workers access to law library;
exposing inmates to tobacco that has improper risk effect label
and tobacco smoke that harm non-smoking inmates like Inmate
Egbuonu; denying kitchen inmate workers' protective safety gears
and compelling them to perform unsafe tasks in absence of the same
in an unsafe work environment; tampering desertion withholding
delays in the passage of inmates' United States Postal Services
return receipts; charging inmates fifty (50) cents for making one
page photocopy; excessive heats in the dormitories and denying
inmates access to receive information including internet print
out.

Prison Official Captain Barrett ignored Inmate Egbuonus'
Complaints and told Inmate Egbuonu that the Kilby Correctional
Facility is the best correctional facility in the Alabama Depart-
ment of Correction System and Inmate Egbuonu need to understand
this is a prison in Alabama State not in California State.   Inmate
Egbuonu responded back by saying " I do understand."

Prison Official Captain Barrett as the captain over the job
placement, was aware and possessed knowledge that Inmate Egbuonu
was not provided with protective safety gears, facilitated it,

3

worked together with others, condoned it, turned a blind eye for
fear of what he might see and allowed subordinate defendants and
others to harm, torture  Inmate Egbuonu with hot-water mixed with
highly concentrated detergent chemical substances for over six (6)
months.    Prison Official Captain Barrett recklessly disregarded
and acted with deliberate indifference failed to protect Inmate
Egbuonu from being subjected to harm, hot-water torture, burns,
sharp severe pains and suffering, irritation, itching, tenure,
hardening, injuries and permanent finger discoloration after he
was informed and notified by Inmate Egbuonu on several occasions
of what Inmate Egbuonu has being exposed to in the Kitchen pots
and pans hand wash in absence of protective gears.  Exhibits 19

    Prison Official Captain Barrett was aware and possessed
knowledge that the kitchen hot greasy pots and pans hand washing
inmate workers like Inmate Egbuonu were compelled to perform
unsafe tasks under the over heated hot-water mixed with highly
concentrated commercial industrial yellow and white powder deter-
gent chemical substances in absence of protective safety gears
inadequate kitchen ventilation system and did nothing to correct
the same and failed to enforce the safety rules and policy con-
sistent with Alabama Department of Corrections Administrative
Regulation, State and Federal laws and regulations and the Eighth
and Fourteenth Amendment of the Consitution of United States.

    Prison Official Captain Barrett did not take actions to curb
the Kilby Correction Facility perpetuated custom policy of expo-
ing inmate workers like Inmate Egbuonu to perform unsafe tasks of
labor which endanged his life, health and caused undue pains and

suffering which Inmate Egbuonu did not agree willingly to such a
risk but had no choice to follow direct orders by prison officials.

At no time did Prison Official Kitchen Steward Leon Varner
escort Inmate Egbuonu to the Lieutenant's office for unsatisfact-
ory work in which the Lieutenant resolved the issue.  See Defend-
ant Exhibit 3 page 2.   At no time did Inmate Egbuonu was aware
that Prison Official Steward Varner or others indicate to the
Lieutenant or Captain's office that Inmate Egbuonu had performed
unsatisfactory work in Kilby Correctional Facility, moreover
Prison Official Captain Barrett has presented no evidence before
the Court to support this allegation.   Exhibits 7, 8 and Defend-
ants Exhibit 1, 2, and 4.

At no time did Prison Official Captain Barrett allege that
Egbuonu had filed false complaints nor has provided a false
statement on his numerous filed complaints requesting for protect-
ive safety gears; hand washing gloves and hot-water resistant
shoes.   Never was there a write-up, citation, sanction, disci-
plinary action issued to Inmate Egbuonu by Prison Captain Barrett
and subordinates, for a violation of any Kitchen rules including
unsatisfactory work, failure to work or delaying work, Alabama
Department of Corrections Administrative Regulation Number 403
such as filing any false complaints against prison officials nor
failure to follow prison officers' direct order or intentionally
creating a security, safety and health hazard.   Exhibits 7 and 8.

Prison Official Captain Barrett has denied Inmate Egbuonu
due process and freedom from hot-water torture, inhumane condition,
pains, harm, burns, emotional distress, skin irritation  itching

hardening, hand tenure, cruel and unusual punishment.  Prison
Official Captain Barrett failed to enforce safety precautions and
protect Inmate Egbuonu despite Inmate Egbuonu numerous complain-
ts' to him and as a result Inmate Egbuonu has suffered under
Prison Official Barretts' actions and inactions as with respect
to this described claims.

Inmate Egbuonu re-alleges and incorporates by references to
the above mentioned and its attached exhibits, and his filed
civil complaint and states that Prison Officials Captain Barrett
has violated the Alabama Department of Corrections Administrative
Regulation Rules,  has violated Inmate Egbuonus' Eighth and
Fourteenth Amendents of Federal Constitutional rights, has vio-
lated State and Federal laws and regulations, respectively in
all manner.

Prison Official Captain Barrett has worked together with
others agreed and compelled Inmate Egbuonu to perform unsafe hot
greasy pots and pans hand washing under  over heated hot-water
mixed with highly concentrated commercial industrial yellow and
white powder chemical substances in absence of protective safety
gears for over six months (6) months despite Inmate Egbuonus'
numerous complaints and has violated Inmate Egbuonus' Eighth and
Fourteenth Amendment Constitutional rights in all manner.
Exhibits 13, 14, 15, 16, 17, 18, 19, 20, 23, 24.

Egbuonu Zephyr

Authorized by the Act of
July 7, 1955, as amended, to
administer oaths (18 USC 4004).

_____, Case Manager
(Name)

6

Barrett

**State of Louisiana**

**Oakdale, Louisiana**

Sworn to and subscribed before me and under my hand official seal this the _____ day of January, 2008.


_____

**Notary Public**

My Commission expires: _____

7

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ZEPHYRINUS EGBUONU,          *
#27041-265
     Plaintiff,                   *

     v.                            *          2:07-CV-685-ID

KITCHEN STEWARD WILLIAM,     *
et al.,
     Defendants.                   *

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said parish and State of Louisiana at large, personally Zephyrinus Egbuonu, who being know to me and being by me first duly sworn, deposes any says on oath as follows:

My name is Zephyrinus Egbuonu, I am presently an immigration civil detainee at the Federal Detention Center in Oakdale, Louisiana and a former inmate of the Kilby Correctional Facility, Mount Meigs, Alabama. I am over ninteen (19) years of age.

Kilby Correctional Facility is a Alabama Department of Corrections System, and prisoner in Kilby Correctional Facility and every prisoner in the Alabama Department of Corrections are required to work as well as Inmate Egbuonu.

The Prison Officials supervising Inmate Egbuonu have a constitutional obligation to take reasonable measures to guarantee inmates' safety as well as Inmate Egbuonus' safety and Inmate Egbuonus' concern of unreasonable risk damage to his health.

# EXHIBIT 4

In absence of Prison Official Kitchen Chief Steward Michael Warren from the inmate general population kitchen for several months, Prison Official **Steward II Leon Varner** assumes Prison Official Chief Steward Warrens' position and responsibility in the Kitchen 1st Shift.   Inmate Egbuonu was assigned to hand wash pots and pans in absence of safety gears; elbow lengthy gloves and hot-water resistant shoes  in a absence of a safe work environment.

Prison Official Steward II Willie Sanford was not Inmate Egbuonus' immediate supervisor in the kitchen pots and pans hand wash 1st  Shift.   Prison Official Steward II Varners allegations that Prison Official Steward II Sanford was Inmate Egbuonus' immediate supervisor in the 1st Shift is incorrect and as such conflicts with Prison Official Captain Barretts' filed affidavit statement which provides: "I recall one other time Steward Varner escorted Egbuonu to the Lieutenant's office for unsatisfactory work in which the on duty Lieutenant resolved the issue."  see Prison Official Defendants' Exhibit 3 page 2.

Prison Official Steward II Sanford could not have been Inmate Egbuonus' immediate supervisor while Prison Official Steward II Varner escorted Inmate Egbuonu to the Lieutenant's Office for unsatisfactory work.   As such the Kilby Correctional Facility 3rd Shift Commander Prison Lieutenant's Kenneth Cash on his filed affidavit provides:  "I have no recollection of Inmate Egbuonu or any problems the kitchen may have had with him"  see Prison Official Defendants' Exhibit 2.

Prison Official Steward II Varners' allegation was

2

incorrect and inaccurate as well as Prison Official Captain
Barretts' allegation on the basis that Inmate Egbuonu was never
escorted to the Lieutenant's office neither by Prison Official
Steward II Sanford nor Steward II Varner and also Inmate Egbuonu
has never been escorted to any office for any unsatisfactory
work.  Exhibit 7 and 8.

Prison Official Steward II Varner and Williams were Inmate
Egbuonus' immediate supervisors in absence of Prison Official
Chief Steward Warren in addition to newly hired Prison Official
Steward Arbor.  Prison Official Steward II Varner has admitted
that he was acting as Chief Steward in absence of Chief Steward
Warren and was responsible for ordering kitchen supplies, super-
vising other Prison Official kitchen Stewards and insure inmates
are trained in compliance with Public Health requirements.
Prison Official Steward II Varner and other Stewards have never
trained Inmate Egbuonu.

Prison Official Steward II Varner allegations that he was
not Inmate Egbuonus' supervisor in absence of Prison Official
Chief Steward Warren conflict with Chief Steward work schedule
time.  See Prison Official Defendants' Exhibit 5.

Inmate Egbuonu has repeatedly filed several complaints about
the existing kitchen safety and health hazard problem risk which
Prison Official Steward II Varner and others compelled inmate
workers  including Inmate Egbuonu, to perform unsafe tasks;
hand wash greasy pots and pans under over heated hot-water mixed
with highly concentrated commercial industrial yellow and white
powder detergent chemical substances in absence of protective

3

safety gears; hand washing gloves and hot-water resistant shoes.
Inmate Egbuonu did not receive a response to his several com-
plaints requesting protective safety gears from Prison Official
Steward II Varner nor protective safety gears provided or made
available for Inmate Egbuonu to wear and perform his assigned
unsafe tasks.   The Kitchen Prison Official Steward II Varner did
nothing to correct the availiability of the protective safety
gears situation Inmate Egbuonu complained of, after receiving
Inmate Egbuonus' numerous complaints.   Prison Official Steward
II Varner did not protect Inmate Egbuonu from safety and health
hazard risk Inmate Egbuonu complained of.   Prison Official fail-
ed to fashion a policy addressing inmate workers including Inmate
Egbuonu exposure to unsafe pots and pans hand washing tasks in
absence of protective safety gears, or failed to make a good
faith effort to implement or enforce the policy.   Exhibits 13,
14, 15, 19, 20, 24.

Prison Official Steward Williams was aware and possessed
knowledge that Inmate Egbuonu was not provided with protective
safety gears and recklessly disregarded and acted with deliberate
indifference, compelled Inmate Egbuonu perform the unsafe tasks
in absence of protective safety gears in an inadequately ventil-
ated work environment.

Prison Official Steward Varner has never:   1) trained Inmate
Egbuonu on the amount of the highly concentrated commercial ind-
ustrial yellow and white detergent chemical substances  and the
appropriate way to use the detergent chemical substances;
2) inform Inmate Egbuonu about the content of the highly concen-

4

trated commercial industrial yellow and white powder detergent chemical substances despite that Inmate Egbuonu repeatedly requested for the content label; 3) provide and made available to 1st and 2nd Shifts inmate workers including Inmate Egbuonu with pots and pans hand wash gloves or elbow lengthy neoprene gloves to wear to perform the kitchen pots and pans hand washing; 4) provide  Inmate Egbuonu hot-water resistant shoe.

Prison Official Steward II Varner did not interest of inmate workers' safety and or protecting inmate workers like Inmate Egbuonu from the kitchen safety and health hazard risks. Instead Prison Official Steward II Varners' interest is to hand inmate workers the brown bags with no content label which contains the yellow and white detergent chemical subsatnces.

Safety and Safety precaution is to prevent the first accident from occurring, Prison Official Steward II Varner: 1) perpetually failed to apply and enforce safety rules and precautions pursuant to Alabama Department of Corrections Administrative Regulations as respect to safety; 2) perpetually failed to respond to Inmate  Egbuonus' complaint for safety;  3)failed to train his subordinates and protect inmate workers like Inmate Egbuonu from performing unsafe kitchen pots and pans hand wash in the absence of protective safety gears; 4) failed to train his subordinates to refrain from using abusive words against inmates' which resulted in calling Inmate Egbuonu a "Knucklehead" by Prison Official Steward Williams and Lieutenant Cash; and 5) failed to supervise his subordinates  and as a result Inmate Egbuonu has suffered under Prison Official Steward Varners' supervision and

5

and immediate supervisors for several months despite Inmate
Egbuonus' repeated complaints concerning his safety and request
for protective safety gears to wear in performing unsafe hot
greasy pots and pans hand wash, which Prison Official Steward
Varner did nothing to protect Inmate Egbuonu from being exposed
to unreasonable risk to his health and future damage.

Prison Official Steward II Varner was aware, possessed
knowledge of unavailability of protective safety gears Inmate
Egbuonu complained of but totally and recklessly disregarded and
acted with deliberate indifference  despite Inmate Egbuonus'
numerous  complaints and compelled Inmate Egbuonu to perform
kitchen pots and pans hand wash under the over heated hot-water
mixed with detergent chemical substance which exposed Inmate
Egbuonu to hot-water torture, burns, sharp severe pains and
suffering, skin irritation itching tenure hardening, injury and
permanent discoloration.   As a result of Prison Official Steward
II Varner and others failure to respond to Inmates Egbuonus'
numerous complaints for his safety nor provide or make available
protective safety gears, Inmate Egbuonu filed a complaint to the
Occupational Safety and Health Administration ("OSHA").   Exhibits
25, 26, 30.

Moreso, everytime Inmate Egbuonu complained about his hand
and finger discoloration, skin irritation itchy hardening tenure,
pains and suffering, burns and request for protective safety gears;
hand wash gloves and hot-water resistant shoes, Prison Official
Steward II Varner told Inmate Egbuonu that: 1) the kitchen has
no funds to buy and provide kitchen pots and pans hand wash inmate

6

workers with protective safety gears, and advised Inmate Egbuonu
to complain to the Prison Official Warden's office;  2) the reason
why the  kitchen is not providing inmate workers with hand washing
gloves was that the gloves are very expensive and the pots and
pans always cut through the elbow length gloves within a week and
damage the elbow length gloves, based on that a decision was made
prior to Inmate Egbuonu arrival to Kilby Correctional Facility
not to buy the elbow length gloves nor provide the same to inmate
workers;  3) another reason was that inmate workers always stole
the elbow length gloves and used or sold the same to another
inmates for gym working out purposes; and 4) the Alabama Depart-
ment of Corrections are on budget cut now.   Prison Official
Steward II Varner further promised Inmate Egbuonu that if the
Warden and or Assistant Warden provided him with additional funds,
he will be happy to buy the elbow length gloves for pots and pans
hand wash inmate workers.

     At no time were sanctions, citations, disciplinary actions
issued to Inmate Egbuonu by Prison Official Steward II Varner and
others for:  1) failure to follow direct Prison Official order;
2) failure to follow safety or sanitation regulation orders;
3) filing any false allegations against Prison Official; 4) fail-
ure to follow direct safety order procedure; 5) violating of any
Alabama Department of Corrections Administrative Regulation.
Exhibits 7, 8, 13, 14, 15, 19, 20, 24.            I n m a t e
E g b u o n u submits that his evidences is not only believable
prior to discovery, but compelling that Prison Official Steward
II Varner and others were aware, had actual knowledge of danger

7

Varner

in the kitchen pots and pans hand wash tasks but Prison Official
Steward II Varner totally recklessly disregarded to provide Inmate
Egbuonu with protective safety gears or protect Inmate Egbuonu
from unreasonale risk and Prison Official Steward II varner acted
with deliberate indifference by exposing Inmate Egbuonu to unrea-
sonable risk damage to his health and that as a result of Prison
Official Steward Varner actions and inactions, Inmate Egbuonu has
suffered hot-water torture, sharp severe pains, emotional distress,
skin irritation hardening itchy tenure, suffering, permanent
finger discoloration.    Prison Official Steward Varner totally
disregarded his duties under Alabama Department of Corrections
Administrative Regulation, State and Federal laws and regulations,
and the constitution of the United States as with respect to this
claim.

Inmate Egbuonu now re-alleges and incorporates by references
to the above mentioned and its attached exhibits and filed civil
complaint and states that Prison Official Steward II Varner has
violated Inmate Egbuonus' Eighth and Fourteenth Amendments const-
itutional rights, federal laws  and State laws and regulations
respectively.    Prison Official Steward II Varner has worked to-
gether agreed with others to violate inmate Egbuonus' Eighth and
Fourteenth Amendment Constitutional rights, State and Federal laws
and regulations respectively in all manners.

*Egbuonu Zephyr*

Zephyr Linus Egbuonu

Authorized by the Act of
July 7, 1955, as amended, to
administer oaths (18 USC 4004).

_____, Case Manager
(Name)

8

Varner

**State of Louisiana**

**Oakdale, Louisiana**

Sworn to and subscribed before me and under my hand official seal this the _____ day of January, 2008.


_____

**Notary Public**

My Commission expires: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ZEPHYRINUS EGBUONU,          *
#27041-265
     Plaintiff,                *

     v.                           *          2:07-CV-685-ID

KITCHEN STEWARD WILLIAM,     *
et al.,
     Defendants.               *

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said parish and State of Louisiana at large, personally Zephyrinus Egbuonu, who being know to me and being by me first duly sworn, deposes any says on oath as follows:

My name is Zephyrinus Egbuonu, I am presently an immigration civil detainee at the Federal Detention Center in Oakdale, Louisiana and a former inmate of the Kilby Correctional Facility, Mount Meigs, Alabama. I am over ninteen (19) years of age.

Kilby Correctional Facility is a Alabama Department of Corrections System, and prisoner in Kilby Correctional Facility and every prisoner in the Alabama Department of Corrections are required to work as well as Inmate Egbuonu.

The Prison Officials supervising Inmate Egbuonu have a constitutional obligation to take reasonable measures to guarantee inmates' safety as well as Inmate Egbuonus' safety and Inmate Egbuonus' concern of unreasonable risk damage to his health.

**EXHIBIT 5**

Prison Official **Deputy Warden W. G. Rowell** knew about:
1) the new custom policy used by Kilby Correctional Facility Kit-
chen Stewards to compel kitchen inmate workers to perform hot
greasy pots and pans hand wash under over heated hot water mixed
with detergent chemical subsatnces in absence of protective safety
gears;  2) the Kitchen Stewards perpetually impose hot water tor-
ture, cruel and unusual punishment, inhuman or degrading treatment,
infliction of sharp severe pains and suffering and harm against
inmate worker like Inmate Egbuonu and did nothing to correct the
unsafe exposure in absence of protective safety gears;  3) the
Prison Official Kitchen Steward and others' conducts of exposing
inmate workers including Inmate Egbuonu to unsafe work hostile
environment in absence of safety gears and facilitate their con-
ducts, approve it, condone it and turn blind eye for fear of what
he might see in other words act either knowingly or with deliberate
reckless indifference.  Exhibits 13, 14, 15, 19, 20, 24.

Inmate Egbuonu has repeatedly filed numerous complaints about
the existing kitchen safety and health hazards which Inmate Egbuonu
was compelled to perform in absence of protective safety gears,
however  Prison Official Deputy Warden Rowell did not respond to
Inmate Egbuonus' complaints nor provide Inmate Egbuonu a reason-
able reason for not responding or intervening to serious safety
and health risk complaints that Inmate Egbuonu sent to him for
protection.   Prison Official Deputy Warden Rowell also refused
to accept his United States Postal Service certified mails sent to
him by Inmate Egbuonu which contains additional safety safety
complaints.  Exhibits 17, 18, 19, 21, 23, 27, 28.

2

Prison Official Deputy Warden Rowell and his subordinates'
actions and inactions caused the delays of over thirteen days
to inform Inmate Egbuonu to "talk to the steward" which in turn
deny Inmate Egbuonu request for protective safety gears despite
Inmate Egbuonus' numerous complaints for safety.  Exhibits 13, 14,
15, 17, 18, 19, 20, 21, 22, 24, 27, 28.   Inmate Egbuonu has suf-
fered under the Prison Official Deputy Warden Rowell supervision
as with respect to this claim.

At no time: 1) elbow length Neoprene glove nor hot water
resistant shoe was provided or made available to Inmate Egbuonu
at the time this event took places; 2) Inmate Egbuonu was train or
explain by the Prison Official Stewards  and others on how much
yellow and white powder detergent chemical subsatnces to use and
mix with water;  3) Prison Official Chief Steward Warren provided
Inmate Egbuonu or made available hand washing gloves and hot water
resistant shoes to Inmate Egbuonu to wear to perform the kitchen
hot greasy pots and pans handing washing under the over heated hot
water mixed with detergent chemical substances;  and 4) Prison
Official Chief Steward Warren personally monitored the use of the
detergent in the First Shift, when in fact Prison Official Chief
Steward Warren was absent from work for several months and upon
his return to work still did not monitor the use of the detergent
chemical subsatnce by inmate workers nor provide or made available
hand washing gloves and hot water resistant shoe for Inmate Egbuonu.
Moreso, at no time  has Inmate Egbuonu refused to follow any
staffs' instruction on how to mix the detergent chemical
substances with water nor ignore any instructions in attempt to

3

be removed from working on pots and pans tasks and from working in

in the kitchen.    Exhibits 7, 8, 9, 10, 11, 12, 13, 14, 15, 19, 20,

24.

Inmate Egbuonu was trained by the extra duty inmate workers

who was hand washing the kitchen hot greasy pots and pans in

absence of protective safety gears at the time Inmate Egbuonu was

assigned to the kitchen pots and pans hand washing.    Moreso, Inmate

Egbuonu has perform his assigned duty satisfactory that the Prison

Official Kitchen Stewards Varner and Williams still owe Inmate

Egbuonu extra days off from work.

Prison Official Stewards provide Inmate Egbuonu with brown

bags which contains the highly concentrated commercial industrial

detergent chemical substances to use in performing the assigned

pots and pans hand wash in absence of protective safety gears.    The

brown bags has no label and Inmate Egbuonu had no way of knowing

what type of detergent chemical substances he was being exposed.

Inmate Egbuonu had made request for Prision Official Stewards pro-

vide him with content of the detergent chemical substances that

caused harm to him, however Inmate Egbuonu did not receive a

respond.    Prison Official        Rowell has no policy and inform-

ation inplace for Inmate Egbuonu to know what types of detergent

chemical substances he was being exposed to and the safety precaut-

ions to follow to protect his health.    Prison Official Chief Ste-

ward Warren in his filed affidavit has declared that one of the

chemical substance given the pots and pans hand wash inmate workers

contained bleach; see Prison Official Defendants Exhibit 5 page 2,

however bleach will not be considered as "all purpose manual deter-

gent;" see Prison Official Defendants Exhibit 6, so as may other

4

detergent chemical substance given to inmate workers including
Inmate Egbuonu.

Prison Official Deputy Warden Rowell submitted of "all pur-
pose manual detergent" with his filed affidavit is incorrect and
inaccurate and Inmate Egbuonu object to it on basis as such that:
1) the Court have no way of knowing what chemical subsatnces have
the label of "all purpose manual detergent."; 2) the bleach is not
"all purpose manual detergent."; and 3) document submitted before
the Court lacks completeness, and moreso Prison Official Deputy
Warden Rowell has failed to be truthful in his affidavit with res-
ponse answer and reports. see Prison Official Defendants Exhibit
6.

Prison Official Deputy Rowell was aware and possessed know-
ledge: 1) that no elbow gloves nor hot-water resistant shoe was
provided or made available to Inmate Egbuonu to wear to perform
the pots and pans hand wash; 2) of the kitchen stewards and others
new custom policy of hot-water torture; compel inmates and inmate
workers to hand wash wash hot greasy pots and pans under over
heated hot water mixed with highly concentrated commercial indust-
rial yellow and white powder detergent chemical substances in
absence of hand wash gloves and other protective safety gears;
3) that the kitchen stewards and others have compelled Inmate
Egbuonu to hand wash hot greasy pots and pans under the required
over heated hot water mixed with yellow and white powder detergent
in absence of safety gears, but Prison Official Deputy Rowell tot-
ally and recklessly disregarded and acted with deliberate indiffer-
ence and did nothing to correct deficit and failed to: a) fashion

5

a policy addressing Plaintiff exposure to unsafe work environment
in absence of safety gears;  b) failed to make a good faith effort
to implement or enforce the safety policy or safety regulation
rules: c) failed to protect Inmate Egbuonu from being exposed to
unreasonable risk to his health and future damage; d) failed to
respond to Inmate Egbuonu numerous complaints requesting for
protective safety gears.  Exhibits 8, 13, 14, 15, 19, 20, 24.

    Inmate Egbuonu was not free from cruel and unusual punish-
ment, safety and health hazards were detected, Prison Official De-
puty Warden Rowell was notified and proper informed but Prison Off-
icial Deputy Warden Rowell did nothing to correct and protect In-
mate Egbuonu.  At no time was protective safety gears were provided
or made available to Inmate Egbuonu to wear to perform the unsafe
tasks in the unsafe kitchen work environment.

    Prison Official Deputy Warden Rowell did not have interest
of inmate workers' safety and or protecting Inmate Egbuonu from the
Kitchen safety and health hazard risks.   Prison Official Deputy
Warden Rowell recklessly disregard that safety and safety precau-
tion is to prevent the first accident from occurring and: 1)perpe-
tually failed to apply and enforce safety rules and safety precau-
tions and due process pursuant to Alabama Department of Corrections
("ALDOC ") Administrative Regulation ("AR") as respect to safety;
2) perpetually failed to respond to Inmate Egbuonus' complaint for
safety and protection;  3) failed to train his subordinates to and
protect Inmate Egbuonu from performing unsafe kitchen pots and pans
hand wash in the absence of protective safety gears; 4) failed to
supervise his subordinates and train his supervisors in respect of
safety and due process, and as a result Inmate Egbuonu has suffered

6

under Prison Official Deputy Warden Rowell supervision for several months despite Inmate Egbuonus' repeated complaint concerning his safety and request for protective safety gears to wear in performing unsafe hot greasy pots and pans hand wash, which Prison Official Deputy Warden Rowell did nothing to protect Inmate Egbuonu from being exposed to unreasonable risk to his health and future damage.

Prison Official Deputy Warden Rowell and others in filed affidavits ignore and recklessly disregard submitting Inmate Egbuonus' potential medical nor incident reports or documents for the truth of the matter at stake, has failed to submit: 1) Inmate Egbuonus' finger cut injury incident of 05/11/06 which Prison Official Steward Williams admitted on his filed affidavit that he instructed Inmate Egbuonu to report to the medical unit; Exhibit 1 page 2;  2) Inmate Egbuonus' numerous complaints of his hands, fingers, arms cuts and scratches in absence of protective safety gears;  3) Inmate Egbuonus' foot callous and its complaints; 4) other inmate workers injuries as with respect to pots and pans hand wash in absence of protective safety gears, which would have states otherwise.

Prison Official Deputy Warden Rowell submitted document of "law library schedule" with his filed affidavit is unauthenicate on basis the law library schedule was neither dated nor signed by the author, at such failed to establish when it was made.  See Prison Official Defendants' Exhibit 6.   Moreso, Inmate Egbuonu has filed complaints requesting for: 1) current law library schedule opening hours;  2) adequate access to ingress and egress to laws library, however Prison Official Deputy Rowell did not

7

response to Inmate Egbuonus' complaints.    Prison Official Deputy
Warden Rowell uses the Kilby Correctional Facility law library
for showcase and meeting and visiting, and is not for inmate to
spend adequate time to research and commence their pleading to
the Courts.    Exhibits 17, 18, 21, 22.

The Existing law library rule at the time of event required
every inmates to sign-in to ingress the law library once a day,
the rule did not required inmates to sign-out to egress the law
library, therefore if an inmates ingress to law library  for two
(2) minutes prior to "Gate 3 Prison Officials" close the law lib-
rary, that 2 minutes spend would be count as one (1) day.    There-
fore, Prison Official Deputy Warden Rowell statement in his filed
affidavit that Inmate Egbuonu visited the law library 172 days
from October 2005 to July 31, 2006 has failed to address the issue
Inmate Egbuonu complained of and has failed to establish what he
meant by 172 days on the basis whether the actually time Inmate
Egbuonu spend in the law library was 172 minutes or 172 hours from
October 2005 to July 31, 2006.    Prison Official Deputy Warden
Rowell on his filed affidavit stated that 2nd Shift kitchen work
hour is 10 AM to 6 PM; see Prison Official Defendants Exhibit 6.
Prison Official Chief Steward Warren required 2nd Shift Kitchen
inmate workers to report to the kitchen an hour (1) or an hour and
half (1.5) early to get ready to serve the inmate general popula-
tion.    Exhibits 10, 11, 12.    The inmate law library open Monday
to Friday from 8 AM to 4 PM and on Saturday 3 PM to 6 PM; Prison
Official Defendants' Exhibit 6.    Prison Officials at "Gate 3" de-
nied inmates access  to ingress and egress to the law library

8

during the morning hours in part prior to launch.  Exhibits 17,
18, 21, 22.    The 2nd Shift kitchen inmate workers:  1) have no
ample access to the law library; and  2) are being denied their
constitutionally protected rights of access to the court.

Prison Official Deputy Rowell was aware, possessed knowledge
that 2nd Shift kitchen inmate workers are being denied access to
law library, but again totally and recklessly disregarded and
acted with deliberate indifference when he failed to respond to
Inmate Egbuonu filed complaints or take actions to correct the
inadequate access deficit.

Inmate Egbuonu has never failed to follow the training in-
structions, institutional rules and regulations and safety guide-
lines given to him by the Prison Official Stewards and others,
otherwise Inmate Egbuonu would have receive a sanctions, citations,
and disciplinary actions pursuant to Alabama Department of Correct-
ions Administrative Regulation Number 403 major rule violations
but Inmate Egbuonu has never violated any of ALDOC rules and reg-
ulations and Prison Official Deputy Warden Rowell and others have
not stated otherwise or prove the same.    Exhibits 7, 8, and see
Prison Official Defendants' Exhibit 2.

At no time were sanctions, citations, disciplinary actions
issued to Inmate Egbuonu by Prison Official Deputy Warden Rowell
and others for:  1) filing any false statement or complaint for
protective safety gears;  2) intentionally creating an unsafety
or health hazard in the kitchen;  3) failure to follow direct
Prison Official Order;  4) failure to follow direct safety order
instruction and procedure;  5) filing any false allegations against

9

Prison Official;  6) failure to follow safety or sanitation reg-
ulation in the kitchen;  7) violating of any ALDOC Administrative
regulation Number 403 major rule violations No. 38, 41-49, 50, 54,
56-57, 59-60, 62-63, 68-69, 72, 78, 86, 91-94, E8-E9.  Exhibits
7, 8, 13, 14, 15, 19, 20, 24.

Inmate Egbuonu states his evidences is not only believable
prior to discovery, but compelling that Prison Official Deputy War-
den Rowell and others were aware, had actual knowledge of danger
in the kitchen pots and pans hand wash tasks but Prison Official
Deputy Warden totally and recklessly disregarded to respond to
Inmate Egbuonu safety complaints request, failed to enforce and
provide Inmate Egbuonu with protective safety gears or protect
Inmate Egbuonu from unreasonable risks and acted with deliberate
indifference by allowing and exposing Inmate Egbuonu to unreason-
able risk damage to his health and that as a result of Prison Off-
icial Deputy Warden Rowell actions and inactions, Inmate Egbuonu
has suffered hot water torture, sharp severe pains, emotional dis-
tress, skin irritation hardening itchy tenure, suffering, permanent
finger discoloration.   Prison Official Deputy Warden Rowell tot-
ally disregarded his duties under ALDOC AR, State and Federal laws
and regulations and the Constitution of the United States as with
respect of this Inmate Egbuonus' complaints.

Inmate Egbuonu now re-alleges and incorporates by references
to the above mentioned and its attached exhibits and filed civil
complaint and states that Prison Official Deputy Warden Rowell has
violated ALDOC regulation, Inmate Egbuonu's Eighth and Fourteenth
Amendment Constitutional rights, Federal laws and State laws and

and regulations respectively.  Prison Official Deputy Warden
Rowell has worked together agreed with other to form a new custom
policy and violate Inmate Egbuonus' Eighth and Fourteenth Amendment
Constitutional rights, State and Federal laws and regulations res-
pectively in all manners.

*Egbuonu Zephyr*

**Zephyrinus Egbuonu**

**State of Louisiana**

**Oakdale, Louisiana**

        Sworn to and subscribed before me and under my hand official
seal this the _____ day of January, 2008.

_____

**Notary Public**

My Commission expires: _____

Authorized by the Act of
July 7, 1955, as amended, to
administer oaths (18 USC 4004).

_____, Case Manager
(Name)

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ZEPHYRINUS EGBUONU,          *
#27041-265
     Plaintiff,                  *

      v.                     *         2:07-CV-685-ID

KITCHEN STEWARD WILLIAM,    *
et al.,
     Defendants.           *

**AFFIDAVIT**

Before me, the undersigned authority, a Notary Public in and for said parish and State of Louisiana at large, personally Zephyrinus Egbuonu, who being know to me and being by me first duly sworn, deposes any says on oath as follows:

My name is Zephyrinus Egbuonu, I am presently an immigration civil detainee at the Federal Detention Center in Oakdale, Louisiana and a former inmate of the Kilby Correctional Facility, Mount Meigs, Alabama. I am over nineteen (19) years of age.

Kilby Correctional Facility is a Alabama Department of Corrections System, and prisoner in Kilby Correctional Facility and every prisoner in the Alabama Department of Corrections are required to work as well as Inmate Egbuonu.

The Prison Officials supervising Inmate Egbuonu have a constitutional obligation to take reasonable measures to guarantee inmates' safety as well as Inmate Egbuonus' safety and Inmate Egbuonus' concern of unreasonable risk damage to his health.

**EXHIBIT 6**

Prison Official **Chief Steward Michael Warren** did change Inmate Egbuonus' 2nd Shift line server to 1st Shift line server task which was later changed to kitchen pots and pans hand wash tasks.

Upon Inmate Egbuonu request for train and protective safety gears; elbow hand wash wash gloves and hot-water resistant shoes, Prison Official Steward Warren promised Inmate Egbuonu that he would train and provide him with the protective safety gears. However, the Prison Official Chief Steward Warren: 1) did not not train Inmate Egbuonu nor provided him with the protective safety gears prior to his several months off from work; 2) did not arrange for Inmate Egbuonu to be train or to be provide with protective safety gears when he was absent from work; 3) did not instruct nor train Inmate Egbuonu in his assigned pots and pans hand wash responsibilities and duties as necessary to insure that public health requirements are met regarding safety, sanitation and the preparation of food. Inmate Egbuonu was trained by the extra duty inmate workers who was hand washing the kitchen hot greasy pots and pans in absence of protective safety gears at the time Inmate Egbuonu was assigned to the Kitchen pots and pans hand washing.

Inmate had repeatedly filed several complaints complaining about the dangerous, unsafe and health hazard problem that existed in the kitchen pots and pans hand wash area which Prison Official Chief Steward Warren and others compelled him to perform an unsafe tasks; hot-greasy pots and pans hand wash under over heated hot-water mixed with highly concentrated commercial industrial

2

yellow and white powder detergent chemical substances for over six (6) months in absence of safety gears.    Inmate Egbuonu did not receive a response of his complaints requesting for protective safety gears from Prison Official Chief Steward Warren nor his numerous complaints about the unsafe and health hazard problems that needed to be corrected or protective safety gears provided to him.    Prison Official Chief Steward Warren did nothing to correct the existing situations Inmate Egbuonu complained of after receiving Inmate Egbuonus' numerous complaints.    Exhibits 13, 14, 15, 19, 20, 24.

The KIlby Correctional Facility States' shoe provided to Inmate Egbuonu was not a hot-water resistant shoe and at no time was Inmate Egbuonu provided with hot-water resistant shoes nor workable boot by Prison Official Chief Steward Warren.    The remaining 12 inch heat resistant boots in the kitchen pots  and pans area at the time of this event: 1) did not fit Inmate Egbuonus' foot;   2) had been worn beyond the point of usage.  Upon Inmate Egbuonu boot complaints to Prison Official Chief Steward Warren, Chief Steward Warren promised Inmate Egbuonu that he will provide him with a 12 inch heat resistant boots.    However, Prison Official Chief Steward Warren and others did not provide Inmate Egbuonu with the same despite Inmate Egbuonu's numerous request and his injury incident of 06/01/06 which the laundry States' shoe given to Inmate Egbuonu failed to prevent the hot-water leaks into Inmate Egbuonu States' shoe.    Again, Prison Official Chief Steward Warren and others have failed to mark nor label the bucket with hole  to protect inmate worker from over heated hot water

3

leaks.   See Prison Official Defendants' Exhibit 6 and its Emergen-
cy Medical Chart report.

Inmate Egbuonu was not free from hot-water torture, cruel
and unusual punishment, safety and health hazards were detected,
Prison Official Chief Steward Warren was notified and proper in-
formed but Prison Official Chief Steward Warren did nothing to
correct it and protect Inmate Egbuonu.

Prison Official Chief Steward Warren did not have interest
of inmate workers' safety and or protecting Inmate Egbuonu from
the kitchen safety and health hazard risks.   Prison Official
Chief Steward Warren totally and recklessly disregard that safety
and safety precaution is to prevent the first accident for occurr-
ing and : 1) perpetually failed to apply and enforce safety rules
and precautions, and due process pursuant to ALDOC AR as respect
to safety;  2) perpetually failed to respond to Inmate Egbuonus'
complaints for safety and protection;  3) failed to train his sub-
ordinates to, and protect Inmate Egbuonu fromperforming unsafe
kitchen pots and pans hand wash in the absence of protective safe-
ty gears;  4) failed to supervise his subordinates  and his super-
visors in respects of safety and due process, and as a result of
Inmate Egbuonu has suffered under the Prison Official Chief Ste-
ward Warren supervision for several months  despite Inmate
Egbuonus' repeated complaints concerning his safety and request
for protective safety gears to wear in performing unsafe hot
greasy pots and pans hand wash, which Prison Official Chief Ste-
ward Warren did nothing to protect Inmate Egbuonu from being exp-
osed to unreasonable risk to his health and future damage.

4

Moreso, Prison Official Chief Steward Warren in filed affidavit has not shown that he has an interest in the kitchen safety, sanitation and protection of inmate workers from unreasonable risk when he failed to support his filed affidavit nor submit evidence to establish that protective safety gears wre provided to Inmate Egbuonu or proof that his actions and or inactions with respect to Inmate Egbuonu complaints were consistent with the ALDOC AR. Prison Official Chief Steward Warren filed affidavit is in contrary to the ALDOC ARN 403, in fact Prison Official Chief Steward Warren has failed to abide by the ALDOC ARN 403 and as a result of Prison Official Chief Steward Warrens' failure, Inmate Egbuonu suffered.

At no time did Prison Official Chief Steward Warren and others: 1) provided nor made available elbow length gloves to Inmate Egbuonu and other inmate workers to wear to perform the kitchen pots and pans hand wash at the time this event took place; 2) provided nor make availabale hot-water resistant shoes for Inmate Egbuonu to wear to perform the kitchen pots and pans hand wash tasks at the time this event took place; 3) instructed Inmate Egbuonu and other pots and pans 1st Shift inmate workers to wear elbow length gloves that Prison Official Chief Steward Warren has never provide nor made available or respond to Inmate Egbuonu numerous complaints requesting for protective safety gears. Prison Official Chief Steward Warren has refused to respond and recklessly disregard Inmate Egbuonus' numerous complaints for protective safety gears and precaution requests.    Exhibits 8, 13, 14, 15, 19, 20, 24.    As a result of Prison Official Chief Steward Warren

5

and others' actions/inactions, Inmate Egbuonu notified Occupat-
ional Safety and Health Administration ("OSHA"). Exhibits 25, 26,
29.

At no time: 1) was a red milk crate sitting next to the pot
sink nor red milk crate contain elbow length Neoprene gloves  sit-
ting next to the pot sink in the kitchen;  2) did Prison Official
Chief Steward Warren took Inmate Egbuonu over the pots and pans
area and asked Inmate Egbuonu why was he not waring the safety
gloves which were laying in a red milk crate sitting next to the
pot sink;  3) did Prison Official Chief Steward Warren respond to
Inmate Egbuonus' numerous complaints requesting for safety or pro-
vide a reasonable reason for not not responding to serious safety
and health risk complaints sent to him.  Prison Official Chief
Steward has failed to provide Inmate Egbuonu with protective safe-
ty gloves or protect him from unreasonable risks and damage to his
health.

At no time Inmate Egbuonu was "intentionally doing this" as
alleged by Prison Official Chief Steward Warren on his filed affi-
davit; Prison Official Defendant Exhibit 5 page 2.  Inmate Egbuonu
has never receive any citations sanctions, disciplinary actions
for violation of ALDOC ARN 403 major rule violation which includ-
es:  1) failure to obey a direct order of ALDOC Official;  2) in-
tentionally creating a security, safety, or health hazard.  Prison
Official Chief Steward Warren not only violated ALDOC AR, he com-
pelled Inmate Egbuonu to perform unsafe tasks; hot greasy pots
and pans hand washing under over heated hot-water mixed with de-
tergent chemical substance in absence of safety gears in an unsafe
hostile work environment for over six (6) months which Inmate

6

Egbuonu experienced hot-water torture, burns, sharp severe pains, suffering, skin irritation itching tenure hardening, injuries and permanent fingers discoloration.

Inmate Egbuonu has never told Prison Official Chief Steward Warren that he did not want to be in the kitchen and did not see any four (4) or five pairs of Neoprene gloves ordered by the kitchen, moreso it was never given nor place at the pots and pans hand washing area for Inmate Egbuonu and other inmate workers to wear to perform the pots and pans hand washing at time this event took place, despite the numerous complaints filed by Inmate Egbuonu.  Exhibits 9, 10, 11, 12.

Prison Official Chief Steward Warren was aware and possessed knowledge:  1) that no elbow gloves nor hot water available to Inmate Egbuonu to wear to perform the pots and pans hand wash; 2)of the kitchen custom policy of hot water torture, then compel Inmate Egbuonu to hand wash hot greasy pots and pans under over heated greasy pots and pans under over over heated hot water mixed with highly concentrated commercial industrial yellow and white powder detergent chemical substances in absence of protective safety gears;  3) other Kitchen Stewards have compelled Inmate Egbuonu to hand wash wash hot greasy pots and pans under the required over heated hot water mixed with yellow and white powder detergent chemical substances in absence of safety gears, but Prison Official Chief Steward Warren totally and recklessly disregarded and acted with deliberate indifference and did nothing to correct the deficit, instead Prison Official Chief Steward Warren facilitated it, approved it, condoned it and turned a blind eye for fear

7

of what it might see, in other words acted knowingly with de-
liberate reckless indifference.    Exhibits 7, 8, 13, 14, 15, 19,
20, 24.

     Prison Official Stewards including Chief Steward Warren in-
terst was to provide pots and pans hand wash inmate workers with
brown bags which contains the highly concentrated commercial ind-
ustrial detergent chemical substances to use in performing the
assigned pots and pans hand wash in absence of protective gears.
The brown bags has no label and Inmate Egbuonu had no way of know-
ing what type of detergent chemical subsatnces he was being expo-
sed.    Inmate Egbuonu had made requests for Prison Official Ste-
wards for the content of the detergent chemical substances that
caused harm to him, Inmate Egbuonu did not receive a respond.

     Inmate Egbuonu by law was entitled to information upon req-
uest on any toxic substances with which he work or with which he
is likely to come in contact, as such the Prison Official Chief
Steward Warren did not provide Inmate Egbuonu and others such info-
rmations upon request.    Prison Official Deputy Warden Rowell on his
filed affidavit provides a "all purpose manual detergent" document
exhibit however, Prison Official Chief Steward Warren affidavit
states otherwise that inmate workers were given soap and bleach to
perform the pots and pans hand wash.    It is clearly establish both
of their statements  so are inconsistent and misleading on grounds
that bleach could not be consider as all purpose manual detergent
in the 21st Century.    See Prison Official Defendants Exhibits 5
and 6.    Prison Official Chief Steward Warren has never before:
1) asked Inmate Egbuonu  how much soap and or bleach was he suppose
to place in the over heated hot water;  2) explained to Inmate

8

Egbuonu how much soap and bleach he was suppose to use; 3) ment-
ioned 50-100 ppm to Inmate Egbuonu; 4) train Inmate on percentage
of detergent chemical substances to add to the over heated hot water
Inmate Egbuonu uses to perform the assigned tasks; 5) personally
monitored the use of the detergent in the 1st Shift and in fact
the Prison Official Chief Steward Warren was absent from work
for several months and upon his return to work still did not
monitor the use of the detergent chemical substances mixing ratio.
At present Inmate Egbuonu still lacks knowledge of the content of
detergent chemical substances which Prison Official Chief Steward
Warren and others compelled him to use to perform pots and pans
hand wash in absence of protective safety gears that caused his
fingers discoloration.   Prison Official Chief Steward Warren told
Inmate Egbuonu that his skin finger color will return back to
normal within couple of months after remove from perform the Kit-
chen pots and pans hand wash which did not happen, Inmate Egbuonu
still suffered from his permanent finger discoloration.

        Prison Official Chief Steward Warren ignore and recklessly
disregard submitting Inmate Egbuonus' potential incident reports
and complaint documents to the Court for the truth of the matter
at stake, has failed to submit: 1) Inmate Egbuonus' finger cut in-
juries;  2) Inmate Egbuonus' hands, fingers, arms burns, cuts and
scratches in absence of protective safety gears; 3) other inmate
workers' injuries as with respect of pots and pans hand wash in
absence of protective safety gears.   Moreso, Prison Official
Chief Steward Warren has failed to order or instruct Inmate Egbuonu
to go to Medical Unit as with respect to this complaint.

At no time did Prison Official Chief Steward Warren nor
Steward II Varner or Steward William contact the Shift Commander's
Office for permission to send Inmate Egbuonu to Medical Unit
despite Inmate Egbuonus' numerous complaints for his safety and
health hazards that existed in the kitchen which affected his hands
and fingers.   Inmate Egbuonu was compelled and exposed to hand
wash pots and pans in hot water mixed with highly concentrated det-
ergents in absence of protective safety gears for over six (6)
months,  Prison Official Chief Steward Warren: 1) did nothing to
provide Inmate protective safety  gears;  2) failed to fashion a
policy  addressing pots and pans hand wash inmate workers exposure
to over heated hot water mixed with detergent chemical substances
in absence of protective safety gears;  3) failed to make a good
faith effort to implement or enforce the safety regulation rules;
4) failed to protect to Inmate Egbuonu from being to unreasonable
risk to his health and future damage;  5) failed to respond to
Inmate Egbuonu's numerous complaints requesting for protective
safety gears.   Exhibits 8, 13, 14, 15, 19, 20, 24.   Moreso,
Prison Official Chief Steward Warren has failed to supervise and
train his Kitchen Stewards on due process safety precaution and
hazardous warning labels and as a result of his failure to train
and supervise  and correct his Kitchen  Stewards of the same and
use of abusive words against inmate workers that he was aware and
possessed knowledge but recklessly disregarded resulted in Prison
Official Stewards compelled Inmate Egbuonu to unsafe work hostile
environment in absence of protective safety gears and made state-
ments calling Inmate Egbuonu a "knucklehead" and was made with act-
ual malice, that is, hatred, ill will or enmity or a wanton desire

10

to injure and their statements were false has caused Inmate Egbuonu
to suffer tangible injury and defamation.

Inmate Egbuonu has never failed to follow the any training
instructions when offer, institutional rules and regulations and
safety guidelines given to him by the Kitchen Stewards otherwise
Inmate Egbuonu would have receive a sanctions, citations and disci-
plinary actions pursuant to ALDOC ARN 403 major rule violation but
Inmate Egbuonu has never violated any ALDOC rules and regulations.
Exhibits 7, 8 and See Prison Official Defendants' Exhibit 2.

At no time were sanctions, citations and disciplinary actions
issued to Inmate Egbuonu by Prison Official Chief Steward Warren
and others for:  1) filing any false statement or complaint for
protective safety gears;  2) intentionally creating an unsafety
or health hazard in the  kitchen;  3) failure to follow direct
Prison  Official order;  4) failure to follow direct safety order
instruction and procedure;  5) filing any false allegations against
Prison Official;  6) failure to follow safety or sanitation regul-
ation in the Kitchen;  violating of any ALDOC ARN 403 major major
rules violation No. 38, 41-49, 50, 54, 56-57, 59-60, 62-63, 68-69,
72, 78, 86, 91-94, E8-E9, and others ALDOC AR rules.   Exhibits 7,
8, 13, 14, 15, 19, 20, 24.

Inmate Egbuonu states his evidence before this Court is not
only believable prior to discovery, but compelling that Prison
Official Chief Steward Warren and others were aware, had actual
knowledge of danger in the kitchen pots and pans hand wash tasks
in absence of protective safety gears for six (6) months but Prison
Official Chief Steward Warren totally and recklessly disregarded

11

to respond to Inmate Egbuonu safety complaints request, failed to enforce providing Inmate Egbuonu with protective safety gears or protect Inmate Egbuonu from unreasonable risks, free from a hostile work environment, and acted with deliberate indifference by allowing and exposed Inmate Egbuonu to unreasonable risk damage to his health and that as a result of Prison Official Chief Steward Warren actions and inactions, Inmate Egbuonu has suffered hot-water torture, sharp severe pains, emotional distress, skin irritation hardening itchy tenure, suffering, permanent finger discoloration. Prison Official Chief Steward Warren totally disregarded his duties under ALDOC AR; State and Federal laws and regulations and the constitution of the United States as with respect to this Inmate Egbuonu complaints.    Exhibits 8, 13, 14, 15, 19, 20, 24, 25, 26, 29.

Inmate Egbuonu now re-alleges and incorporates by references to the above mentioned and its attached exhibits and filed civil complaint and states that Prison Official Chief Steward Warren has violated ALDOC regulation, Inmate Egbuonu's Eighth and Fourteenth Amendment Constitutional rights, Federal laws and State laws and regulations respectively.    Prison Official Chief Steward Warren has worked together agreed with other to form a custom policy and violate Inmate Egbuonus' Eighth and Fourteenth Amendment Constitutional rights, State and Federal laws and regulations respectively in all manners.

*Egbuonu Zephyr*

**Zephyrinus Egbuonu**

Authorized by the Act of
July 7, 1955, as amended, to
administer oaths (18 USC 4004).

12

Case Manager
(Name)

**State of Louisiana**

**Oakdale, Louisiana**

Sworn to and subscribed before me and under my hand official seal this the _____ day of January, 2008.

_____
**Notary Public**

My Commission expires: _____

13

```
                    ALABAMA DEPARTMENT OF CORRECTIONS              INST:   0
                    INMATE SUMMARY AS OF 07/31/2006             CODE: ERSUM
```

※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※

```
AIS: 00242109    INMATE: EGBUONU, ZEPHYRIUNS C           RACE: B  SEX: M

INST: 008 - KILBY CORRECTIONAL FACILITY       DORM:   00   JAIL CR: 001Y 10M 05D

DOB:  ███████    SSN:  ███████

ADM DT: 08/02/2005 DEAD TIME: 000Y 00M 00D

ADM TYP: NEW COMIT FROM CRT W/O REV OF        STAT: NEW COMIT FROM CRT W/O REV OF

CURRENT CUST: MED-2   CURRENT CUST DT: 09/14/2005  PAROLE REVIEW DATE: SEP 2006

SECURITY LEVEL: (4) FOUR

SERVING UNDER ACT446 LAW IN CLASS I          CURRENT CLASS DATE:   08/02/2005
INMATE IS EARNING : EARNS 75 DAYS FOR EACH 30 SERVED
COUNTY       SENT DT  CASE NO  CRIME                    JL-CR      TERM
JEFFERSON   08/02/05 V041422.1 THEFT OF IDENTITY I      06700 010Y 00M 00D C
            COURT COSTS   : $0000302    FINES  : $0000000   RESTITUTION : $000906
JEFFERSON   08/02/05 V041422.2 THEFT OF IDENTITY I      06700 010Y 00M 00D C

 TOTAL TERM       MIN REL DT    GOOD TIME BAL    GOOD TIME REV    LONG DATE
010Y 00M 00D    11/30/2007    002Y 05M 28D    000Y 00M 00D    09/26/2013

INMATE LITERAL:
```
※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※

```
DETAINER WARRANTS SUMMARY
```
※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※

```
ESCAPEE-PAROLE SUMMARY

    INMATE CURRENTLY HAS NO PAROLE RECORDS

    INMATE CURRENTLY HAS NO PROBATION 754 RECORDS

    INMATE HAS NO ESCAPES FROM ADOC SINCE OBSCIS RECORDING B
```
※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※☆※

```
DISCIPLINARY/CITATION SUMMARY

    INMATE CURRENTLY HAS NO DISCIPLINARY/CITATION RECORDS
```

# EXHIBIT 7

```
                           ALABAMA DEPARTMENT OF CORRECTIONS              INST:    00
CBR716-3                    INMATE SUMMARY AS OF 07/31/2006              CODE: IRSUM

************************************************************************************

AIS: 00242109     INMATE: EGBUONU, ZEPHYRIUNS C              RACE: B   SEX: M

INST: 008 - KILBY CORRECTIONAL FACILITY       DORM:   00   JAIL CR: 001Y 10M 050

DOB: 03/04/1965  SSN: 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

ADM DT: 08/02/2005 DEAD TIME: 000Y 00M 000

ADM TYP: NEW COMIT FROM CRT W/O REV OF       STAT: NEW COMIT FROM CRT W/O REV OF

CURRENT CUST: MED-2   CURRENT CUST DT: 09/14/2005  PAROLE REVIEW DATE: SEP 2006

SECURITY LEVEL: (4) FOUR

SERVING UNDER ACT446 LAW IN CLASS I          CURRENT CLASS DATE:   08/02/2005
INMATE IS EARNING : EARNS 75 DAYS FOR EACH 30 SERVED

COUNTY       SENT DT  CASE NO  CRIME                       JL-CR      TERM
JEFFERSON    08/02/05 V041422.1 THEFT OF IDENTITY I         06700 010Y 00M 000 CS
             COURT COSTS   : $0000802    FINES : $0000000   RESTITUTION : $0009064
JEFFERSON    08/02/05 V041422.2 THEFT OF IDENTITY I         06700 010Y 00M 000 CC

 TOTAL TERM        MIN REL DT    GOOD TIME BAL    GOOD TIME REV    LONG DATE
 010Y 00M 000      11/30/2007    002Y 05M 280     000Y 00M 000     09/26/2013

INMATE LITERAL:
************************************************************************************

DETAINER WARRANTS SUMMARY
************************************************************************************

ESCAPEE-PAROLE SUMMARY

     INMATE CURRENTLY HAS NO PAROLE RECORDS

     INMATE CURRENTLY HAS NO PROBATION 754 RECORDS

     INMATE HAS NO ESCAPES FROM ADOC SINCE OBSCIS RECORDING B
************************************************************************************

DISCIPLINARY/CITATION SUMMARY

     INMATE CURRENTLY HAS NO DISCIPLINARY/CITATION RECORDS
```

```
                          ALABAMA DEPARTMENT OF CORRECTIONS              INST:    008
 CBR716-3                  INMATE SUMMARY AS OF 01/17/2006              CODE: CRSUM


********************************************************************************

AIS: 00242109    INMATE: EGBUONU, ZEPHYRIUNS C              RACE: B  SEX: M

INST: 008 - KILBY CORRECTIONAL FACILITY      DORM:  00  JAIL CR: 001Y 10M 05D

DOB: 03/04/1965  SSN: 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

ADM DT: 08/02/2005 DEAD TIME: 000Y 00M 00D

ADM TYP: NEW COMIT FROM CRT W/O REV OF      STAT: NEW COMIT FROM CRT W/O REV OF

CURRENT CUST: MED-2   CURRENT CUST DT: 09/14/2005  PAROLE REVIEW DATE: MAR 2006

SECURITY LEVEL: (4) FOUR

SERVING UNDER ACT446 LAW IN CLASS I         CURRENT CLASS DATE:   08/02/2005
INMATE IS EARNING : EARNS 75 DAYS FOR EACH 30 SERVED

COUNTY      SENT DT  CASE NO   CRIME                    JL-CR     TERM
JEFFERSON  08/02/05 NO41422.1 THEFT OF IDENTITY I      0670D 010Y 00M 00D CS
           COURT COSTS   : $0000802   FINES : $0000000  RESTITUTION : $0009064
JEFFERSON  08/02/05 NO41422.2 THEFT OF IDENTITY I      0670D 010Y 00M 00D CC

 TOTAL TERM      MIN REL DT     GOOD TIME BAL    GOOD TIME REV      LONG DATE
 010Y 00M 00D    11/30/2007     001Y 01M 23D     000Y 00M 00D      09/26/2013

INMATE LITERAL:
********************************************************************************

DETAINER WARRANTS SUMMARY
    INMATE CURRENTLY HAS NO DETAINER WARRANT RECORDS
********************************************************************************

ESCAPEE-PAROLE SUMMARY

    INMATE CURRENTLY HAS NO PAROLE RECORDS

    INMATE CURRENTLY HAS NO PROBATION 754 RECORDS

    INMATE HAS NO ESCAPES FROM ADOC SINCE OBSCIS RECORDING B
********************************************************************************

DISCIPLINARY/CITATION SUMMARY

    INMATE CURRENTLY HAS NO DISCIPLINARY/CITATION RECORDS
```



### State of Alabama
### Alabama Department of Corrections



**Bob Riley**
GOVERNOR

Research and Planning
P. O. Box 301501
Montgomery, AL 36130-1501

**Donal Campbell**
COMMISSIONER

January 30, 2003

ADMINISTRATIVE REGULATION
NUMBER                403

OPR: INSTITUTIONS

## DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS

**I     GENERAL**

A.    This regulation establishes policies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the Alabama Department of Corrections (ALDOC). The Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation. All procedures require final action by the Institutional Head or his/her designee. The Institutional Head will identify said designee in writing.

B.    A Hearing Officer will hear evidence in cases of major violations of departmental administrative regulations, and institutional rules and regulations, for which punishments or sanctions may be imposed.

C.    Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges.

D.    When an inmate with a serious mental illness receives a disciplinary report, the inmate's mental status will be considered in determining the inmate's competency to participate in the hearing process. When an inmate is found incompetent, the disciplinary hearing process will be delayed until the inmate's competence has been restored. The inmate's mental status will be considered in the disposition when as inmate with a mental illness is found guilty of a rule violation. The institutional psychologist will assess the inmate's competency and culpability, and provide relevant information to the disciplinary hearing officer.

E.    Inmates will not be punished for symptoms of a serious mental illness. This is not to say that a mental health inmate should never receive a disciplinary. The intent of the mental status evaluation is to determine if the misconduct is symptomatic of the presence of a

**EXHIBIT 8**

AR 403 January 30, 2003



*State of Alabama*
*Alabama Department of Corrections*



**Bob Riley**
GOVERNOR

Research and Planning
P. O. Box 301501
Montgomery, AL 36130-1501

**Donal Campbell**
COMMISSIONER

January 30, 2003

ADMINISTRATIVE REGULATION
NUMBER                    403

OPR: INSTITUTIONS

## DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS

**I      GENERAL**

    A.    This regulation establishes policies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the Alabama Department of Corrections (ALDOC). The Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation. All procedures require final action by the Institutional Head or his/her designee. The Institutional Head will identify said designee in writing.

    B.    A Hearing Officer will hear evidence in cases of major violations of departmental administrative regulations, and institutional rules and regulations, for which punishments or sanctions may be imposed.

    C.    Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges.

    D.    When an inmate with a serious mental illness receives a disciplinary report, the inmate's mental status will be considered in determining the inmate's competency to participate in the hearing process. When an inmate is found incompetent, the disciplinary hearing process will be delayed until the inmate's competence has been restored. The inmate's mental status will be considered in the disposition when as inmate with a mental illness is found guilty of a rule violation. The institutional psychologist will assess the inmate's competency and culpability, and provide relevant information to the disciplinary hearing officer.

    E.    Inmates will not be punished for symptoms of a serious mental illness. This is not to say that a mental health inmate should never receive a disciplinary. The intent of the mental status evaluation is to determine if the misconduct is symptomatic of the presence of a

serious mental illness. If such is the case, disciplinary action is deemed counterproductive and should not be completed.

## II     DUE PROCESS REQUIREMENTS

Any inmate charged with a violation of departmental administrative regulations, institutional rules and regulations must be given a due process hearing if the violation can result in the loss of earned good time and/or confinement to segregation. An inmate can be placed in disciplinary segregation for up to 45 days and upon reclassification from work release for up to 30 days.

Due Process requirements are:

A.     The inmate must be given written notice of the charges at least 24 hours prior to the Hearing.

B.     The inmate must be permitted to attend the hearing and testify or present documentary evidence, unless he refuses to attend or is disruptive.

C.     The inmate must be permitted to call a reasonable number of reasonably available witnesses to the hearing, normally no more than three (3) witnesses.

D.     The inmate must be permitted to prepare and submit to the Hearing Officer, prior to the hearing, pertinent written questions to be asked of witnesses at the hearing, or to ask another inmate to assist him in preparing these questions if he is incapable of doing so.

E.     The inmate must be informed of the decision of the Hearing Officer, and must be given a copy of the signed and approved Disciplinary Report which lists the findings of fact, the basis for the findings of fact, the decision of the Hearing Officer, and the punishment or sanction imposed.

F.     If the inmate has been identified as a mental health inmate, an evaluation of the inmate's competency to understand the disciplinary process must be conducted by the institutional psychologist.

## III     PROCEDURE BEFORE HEARING

A.     Arrest or Charge of Inmate

The arrest or charge of an inmate for a rule violation may be made by any employee or contract medical employee of the ALDOC. The person making the arrest or charge is designated as the Arresting Officer. The Arresting Officer will appear as a witness at the Disciplinary Hearing. For the purpose of this regulation, an arrest is defined as the taking of an inmate into custody or making a charge by the authority of this regulation, federal law, Alabama law, or municipal law for the purpose of charging him/her with an offense or violation of a departmental administrative regulation or institutional rules and regulations or

charges. The arrest should be made within ten (10) calendar days after the violation is reported, discovered, or within ten (10) calendar days after an investigation has been completed, or within ten (10) calendar days after an escapee (in an escape charge) is back in custody of the ALDOC.

B.    Appointment of Hearing Officer

Wardens will appoint a ALDOC employee to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403. Wardens, personnel who have formed an opinion of the innocence or guilt of the charged inmate, Arresting Officer, and witnesses may not serve as Hearing Officer.

C.    Investigation of Charges

The Wardens may, if he/she deems it necessary or advisable, order an investigation of the charges at the institutional level and a report to him/her or request an investigation by the Investigations and Intelligence (I & I) Division.

D.    Preparation of Charges

ALDOC Form 225B, Disciplinary Report (Annex C) items 1-4 must be completed when the inmate is charged. If the inmate's actions in one incident violates various major or minor rules, then the Arresting Officer may use his/her discretion in which charges to bring. All offenses growing out of the same incident may be charged at the same time, using separate 225B forms for each charge. The charge(s) should be filed and served within ten (10) calendar days after the inmate is arrested or charged. If the charge is escape, the writer of the incident report will complete an incident report which will be notarized (See AR 302). It will include therein additional information such as contacts for evidence and testimony including law enforcement officers, free world witnesses, and ALDOC personnel.

E.    Serving the Inmate with the Charge

The Form 225B completed through item five must be served by the Serving Officer on the inmate at least 24 hours before the schedule hearing. The Serving Officer will read the charges to the inmate. If the inmate refuses to sign for receipt of charges, then the Serving Officer will so indicate by "Refused to Sign" and sign Serving Officer's signature. The Serving Officer at this time will inform the accused inmate that he/she should prepare his/her testimony, in the form of a written statement, to be read by the inmate to the Hearing Officer during the hearing. After the inmate has been served a copy of 225B, a suspense copy will be placed in the inmate's institutional file.

F.    Obtain Name of Witnesses Inmate wants at Hearing

At the time of service of charges on an inmate, the Serving Officer will advise the inmate of his/her right to call witnesses whose testimony will be relevant and whose presence will not present a security threat. The Serving Officer will obtain those names at this time and will not refuse to list any witnesses desired by the inmate. The Hearing Officer will determine if the

witnesses' testimony could possibly be relevant and/or if bringing certain witness (es) would present a security threat. Normally no more than three (3) witnesses with relevant testimony are called. The Hearing Officer will be responsible for having the inmates and employees called as witnesses present at the hearing. Any free world witness the inmate wishes to testify, and whose testimony would be relevant, must be written or called by the inmate, and permission must be given to the inmate to write or call. Form 225B, Items 6 and 7, are to be completed by the Serving Officer when serving the inmate. If an inmate requests more than three witnesses, including free world witnesses, the Hearing Officer, prior to the hearing, may require the inmate to submit a summary of the witnesses' expected testimony. The Hearing Officer may refuse to allow any witness whose testimony is not relevant to testify.

G.    Provide Data on Inmate to Hearing Officer

At institutions where computer input, printer capability, and personnel are available, on the working day prior to the Disciplinary Hearing, a copy of the inmate's record display, CDINC may be produced and provided to the Hearing Officer along with the inmate's good time earning status and good time earned.

## IV    PROCEDURES DURING HEARING

The Hearing should be held within ten (10) working days after the inmate has been served with the charge(s), but cannot be held in less than 24 hours. If there is a need to postpone or reschedule the hearing, Form 225D, Notice of Postponement of Disciplinary Hearing (Annex D) should be completed advising the inmate of the rescheduled date and reason for delay. The Hearing Officer at the time the hearing is to begin will follow these procedures:

A.    Have the inmate present in the hearing room and identify him/her as the inmate charged. The inmate must be present in the hearing room unless he/she refuses to attend the hearing or is disruptive. You may proceed without him/her only for these two (2) reasons. If he/she is not present, explain in detail on an additional page and attach to the disciplinary report.

B.    Read the charges to the inmate and determine if he/she understands the charges.

C.    Determine if the inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days if requested. Neither inmates nor free world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on Form 225B.

D.     Ask the inmate how he/she pleads and record on Form 225B. If inmate pleads guilty, then go forward to procedural Step L.

E.     Swear the inmate and all witnesses under oath to testify truthfully.

F.     Hear the evidence brought by the Arresting Officer and all witnesses present at the hearing. Affidavits and written statements should not be used in lieu of testimony, except in extreme circumstances, which must be documented on additional page(s) and attached to the disciplinary report.

G.     Allow the inmate to read his/her prepared written statement to the Hearing Officer and allow the inmate to add his/her oral testimony if the inmate desires.

H.     Ask the questions, if relevant, prepared by the inmate, to the respective witness (es) and write the answers.

I.      Explain to the inmate why any witness (es) he/she has requested were not called and complete item 16 on Form 225B.

J.     Dismiss everyone from the hearing room, consider the evidence and make a finding of fact and finding of not guilty or guilty and determine the punishment or sanctions imposed. The Hearing Officer may determine that the violation charged has not been proven but that a lesser included similar offense has been proven. A lesser included violation is defined as being a violation in which some but not all of the elements of proof of the originally charged violations are present. With good justification the Hearing Officer has authority to find the inmate guilty of a lesser included offense, in which case, provisions of AR 414 may apply in order to complete disposition of appropriate disciplinary action.

K.     Call the inmate into the hearing room and inform him/her of the decisions reached.

L.     If the inmate has pled guilty, then omit procedures E through K, swear in the inmate only, require the inmate to explain the details of his/her violation to you, have the inmate sign the guilty plea, and then, make a finding of fact, and a finding of guilt or innocence. If the inmate's plea of guilty is accepted then inform him/her of the punishment or sanctions imposed. If the inmate refuses to sign the guilty plea this will be considered a "Not Guilty" plea and proceed with the hearing.

## V    PROCEDURES AFTER HEARING

The Hearing Officer, after the hearing will follow these procedures:

A.     Have a condensed version of all pertinent testimony typed on Form 225B using additional pages if necessary.

B.     Complete all spaces on Form 225B or put [N/A] (Not Applicable) in those appropriate spaces.

C.    Complete, in the appropriate space, specifically the findings of fact made by the Hearing Officer.

D.    Complete, in the appropriate space, specifically the basis for the findings of fact.

E.    Obtain all necessary signatures on the Disciplinary Report Form 225B.

F.    The Warden or his/her designee will approve or disapprove the findings and/or recommendations within ten (10) working days after hearing. The Warden may not disapprove a finding of "not guilty". If the Warden disapproves of the recommended punishment, he/she may order the punishment to be reduced.

G.    A completed signed copy of the disciplinary report will be served on the inmate as soon as possible without undue delay after the Warden's determination, and all approved punishments will begin at this time or at the time the inmate is placed in the segregation cell to begin serving disciplinary segregation. If the Warden determines that a security threat will exist by a delay in the imposition of punishment, he/she may order such punishment to begin at any time after the hearing is conducted.

H.    If the Warden approves the recommendation of the Hearing Officer, or a lesser punishment, he/she will:

    1.    At units with computer terminal input capability: Coordinate with and forward or issue his/her comments and supporting documents to the institutional Social Service Coordinator. The Coordinator will insure the terminal operator takes the required action to effect the loss of good time in accordance with the Computer Terminal Operator's Manual, and implement classification procedures or other considerations. Institutional Social Services will forward/issue the completed and signed disciplinary report to the following:

        a.    One copy to the Board of Pardons and Parole.

        b.    One copy to the Director of Investigations and Intelligence in all cases where there has been a violation of Federal or State law.

        c.    Original to the Director of Central Records, stamped as "Entered" at the terminal, initialed by the operator, and dated on the date of entry.

        d.    One copy retained in the inmate's institutional file.

    2.    At units without computer terminal capability: Submit his/her comments and supporting documents to the Director of Central Records for any further action needed to effect the loss of good time or other consideration. The Director of Central Records will accept the action of the Warden for less severe punishment as final. Additionally, units without computer terminal capability, will furnish one copy to the Board of Pardons and Paroles, and one copy to the Director of Investigations and Intelligence in all cases where there has been a violation of federal or state law. The

original will be retained in the inmate's Central Record file. The Warden will notify the inmate in writing of his/her approval or recommended disapproval, and one copy of the Warden's action will be forwarded to Social Services for classification purposes and the same copy retained in the inmate's institutional file.

## VI    MISCELLANEOUS PROVISIONS

A.    Arrest and Hearing Based on Information From Confidential Sources

If the arrest of an inmate is made upon information received from confidential source(s), the following procedures should be followed:

1.    The identity of a confidential source(s) of information will remain confidential. Precautions must be taken to insure the reliability of any information received from a confidential source(s).

2.    The facts obtained from confidential source(s) will be presented verbally at the hearing by the person receiving the information from the confidential source.

3.    No decision in a disciplinary proceeding may be based upon information from an undisclosed informant unless there is corroborating information or evidence or unless the reliability of the source satisfies the Hearing Officer that the information is true. The basis for accepting the source as reliable should be indicated in item 18 on Form 225B.

B.    Excusing Witnesses Called by Inmate

As the names of witnesses desired by the accused have been obtained during the notification and serving process, they (witnesses) are required to appear, unless excluded for specific reasons by the Hearing Officer. Reasons for not calling a witness may include, but are not limited to: inmate witness declining to appear voluntarily; the witness being repetitive in that such witness is expected to provide the same information as other witnesses; the witness not having personal knowledge of the circumstances of the incident; endangering the security of the institution; or an existing possibility of retribution which could harm an individual. The reason (s) for not calling any witness requested by an inmate will be explained to the inmate and item 16 on the Form 225B must be completed.

C.    Determine if the Inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days, if requested. Neither other inmate's nor free-world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on the Form 225B. In any case where a disciplinary or rule violation has

been voided or otherwise overturned as a result of a technicality or due process violation, but where the behavior indicates the need for a more restrictive placement or custody, classification and/or the Central Review Board may classify the offender as deemed appropriate based upon the specific act or behavior itself.

D.    Adjudication - A major violation may be adjudicated with a behavioral citation in accordance with AR 414 provided the following conditions are met:

    1.    There is no injury to staff during the incident or as a result of the violation.

    2.    No consequences arise which result in the loss or destruction of property and security of the institution.

    3.    There is no serious injury to inmates as a result of the violation or incident.

    4.    The violator is not likely to receive disciplinary segregation.

    5.    With written justification any combination of the Citing Officer, Receiving Supervisor, or the Warden or his/her designee, determines that a behavioral citation is appropriate due to circumstances of the incident or violation.

E.    For mental health inmates deemed competent to participate in the disciplinary process, the disciplinary hearing officer will consider the mental health evaluation and any pertinent recommendations prior to determining the inmate's guilt or innocence in making a disposition of the case. The institutional psychologist will be contacted for clarification, if the hearing officer has questions about recommendations. If the inmate is found guilty, the hearing officer may impose punishment and/or refer the inmate for treatment.

F.    The disciplinary process will not proceed for an inmate deemed incompetent. The process will be suspended until the inmate has been restored to competency. The institutional psychologist will advise the disciplinary hearing officer when the inmate has been restored to competency, and the disciplinary hearing process can proceed. If the inmate has not been restored to competency within six months, information regarding the rule violation and the inmate's inability to proceed with the disciplinary hearing will be documented in an incident report. The incident report will be filed in the inmate's institutional file. The disciplinary report will be removed from the file and no further action will be taken.

G.    Referral for a mental health consultation to the disciplinary process may be made: 1) at the time of the rule violation, 2) when review of the disciplinary report identifies the inmate as having a serious mental illness, or 3) whenever an inmate not previously identified as having a serious mental illness demonstrates signs of compromised functioning during the hearing process.

VII    SANCTIONS

A.    Annex A, Violations Table and Authorized Sanctions, contains a table listing by violation number and the violation type and sanctions. Annex B, Definitions and Examples of Rule Violations, contains definitions and examples of the violations listed in Annex A.

B.    Inmates removed from programs for conviction of a new crime will be permanently removed from eligibility for correctional incentive time by placement in Class IV CIT status permanently (See Administrative Regulation 427 and 432).

C.    Approved actions by the Warden or his/her designee is final and the sanctions will begin on the effective date shown on the charges.

**VIII   STANDARD OPERATING PROCEDURES**

Institutions may prepare a Standard Operating Procedure (SOP) to ensure compliance with provisions of this regulation.

**IX    APPEAL OF THE INMATE**

The inmate may not appeal the final action by the Warden or his/her designee.

**X     REFERENCE**

Administrative Regulation 414,  "Behavior Citation Procedures for Informal Disciplinary Actions"

**XI    SUPERSESSION**

This regulation supersedes Administrative Regulation 403, dated October 3, 1996.


Donal Campbell, Commissioner

**ANNEXES**

Annex A - Violations Table and Authorized Sanctions

Annex B - Definitions and Examples of Rule Violations

Annex C - ALDOC Disciplinary Report (ALDOC Form 225B)

Annex D - Notice of Postponement of Disciplinary Hearing (ALDOC Form 225D)

AR 403 January 30, 2003

## ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
## ANNEX A

### VIOLATION AGAINST PERSONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 28 | HOMICIDE |
| 29 | ASSAULT ON PERSON(S) ASSOCIATED WITH THE ALDOC |
| 30 | ASSAULT ON PERSON(S) NOT ASSOCIATED WITH ALDOC |
| 31 | ASSAULT ON ANOTHER INMATE |
| 32 | SEIZING OR HOLDING HOSTAGES |
| 33 | UNLAWFULLY DETAINING ANY PERSONS |
| 34 | FIGHTING WITH A WEAPON |
| 35 | FIGHTING WITHOUT A WEAPON |
| 36 | SEXUAL ASSAULT (FORCIBLE) |
| 37 | SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING |
| 38 | INDECENT EXPOSURE/EXHIBITION |
| 39 | EXTORTION OR BLACKMAIL |
| 40 | ROBBERY |
| 41 | MAKING FALSE STATEMENT OR CHARGE TO A ALDOC EMPLOYEE WITH INTENT TO DECEIVE THE EMPLOYEE OR TO PREJUDICE ANOTHER PERSON |
| 42 | GATHERING AROUND AN EMPLOYEE IN A THREATENING OR INTIMIDATING MANNER |
| 44 | THREATS |

### SECURITY VIOLATION

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 45 | ESCAPE BY FORCE |

Annex A to AR 403 (page 1 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

| | |
|---|---|
| 46 | ATTEMPT TO ESCAPE BY FORCE |
| 47 | ESCAPE WITHOUT FORCE |
| 48 | ATTEMPT TO ESCAPE WITHOUT FORCE |
| 49 | ABSENT WITHOUT LEAVE |
| 50 | BEING IN AN UNAUTHORIZED AREA |
| 51 | UNAUTHORIZED POSSESSION OF ESCAPE DEVICE |
| 52 | UNAUTHORIZED POSSESSION OF WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON |
| 53 | INCITING TO RIOT OR RIOTING |
| 54 | REFUSING TO WORK/FAILING TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK |
| 56 | FAILURE TO OBEY A DIRECT ORDER OF ALDOC OFFICIAL |
| 57 | INSUBORDINATION |
| 59 | DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS/HER DUTY |
| 60 | BRIBERY OR ATTEMPTED BRIBERY |
| 61 | DISRUPTING THE COUNT |
| 62 | INTENTIONALLY CREATING A SECURITY, SAFETY, OR HEALTH HAZARD |
| 63 | DISORDERLY CONDUCT |
| 64 | POSSESSION OF CONTRABAND. INCLUDES POSSESSION OF CURRENCY UNLESS APPROVED BY THE WARDEN |
| 65 | POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR |

Annex A to AR 403 (page 2 of 4)

AR 403 January 30, 2003

## ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
### ANNEX A (Continued)

PARAPHERNALIA. ALSO, CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS, OR OTHER INTOXICANTS.

### PROPERTY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 68 | THEFT, DAMAGE, OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY |
| 69 | DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY |
| 70 | UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY |
| 71 | ARSON |
| 72 | FORGERY |
| 73 | COUNTERFEITING |

### POLICY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 78 | FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE AND PASS |
| 86 | BEING FIRED FROM JOB |

### PERSONAL VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 90 | CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS |

### MISCELLANEOUS VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 91 | CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |

Annex A to AR 403 (page 3 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

| | |
|---|---|
| 92 | AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |
| 93 | VIOLATION OF STATE OR FEDERAL LAW |
| 94 | SOLICITING SEXUAL ACT |
| PV | VIOLATION OF PAROLE (RECOMMENDED BY P&P) |

**WORK RELEASE AND SIR VIOLATIONS**

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| E8 | VIOLATION OF SIR CONTRACT |
| E9 | ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION |

NOTE:     Inmates are subject to all Rule Violations (28 thru E9). Rules E1 through E3 (see AR 414) and E8 and E9 (this regulation) are designed primarily to manage/govern behavior of inmates. In addition to punishments authorized for major violations outlined in this Annex, inmates who violate, and are convicted of, any of these rules (28 thru E9) may also be removed from the Work Release or SIR Program.

## AUTHORIZED SANCTIONS

1.     Loss of a portion or all good time the inmate has earned.

2.     Confinement to Segregation.

3.     Recommend custody review.

4.     Loss of any and all privileges up to 90 days.

Annex A to AR 403 (Page 4 of 4)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B

### VIOLATION AGAINST PERSONS

28   HOMICIDE - The death of a human being caused by another person's actions.

29   ASSAULT ON A PERSON (S) ASSOCIATED WITH THE ALDOC- Any willful attempt or threat to inflict injury upon an officer of ALDOC, employee, or other person associated with the ALDOC giving the victim reason to fear or expect immediate bodily harm.

30   ASSAULT ON A PERSON (S) NOT ASSOCIATED WITH ALDOC - See #29 above.

31   ASSAULT ON ANOTHER INMATE - See #28 or #29 above.

32   SEIZING OR HOLDING HOSTAGES IN ANY MANNER - Abducting any individual with the intent to hold him/her for ransom or reward, to use him/her as a shield, or to use him/her as an aid in the commission of a felony or escape.

33   UNLAWFULLY DETAINING ANY PERSON - Holding any person against his/her will, even though the intent to create a hostage situation was not present.

34   FIGHTING WITH A WEAPON - Two or more individuals engaging in a mutual combat with a weapon(s) or a device(s) used as a weapon(s) during which combat the principal aggressor cannot be determined.

35   FIGHTING WITHOUT A WEAPON - Similar to #34 above except that a weapon or device used as a weapon are not present.

36   SEXUAL ASSAULT (FORCIBLE) - See #29 above; assault with the intention to commit the crime of rape or other sexual offense.

37   SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING - Commission of any sexual act during which both participants act willingly. To include hugging, fondling, caressing, kissing, etc.

38   INDECENT EXPOSURE/EXHIBITIONISM - Exposure to sight of the private parts of the body in a lewd or indecent manner.

39   EXTORTION OR BLACKMAIL - Demanding or attempting to demand, or receiving money or anything of value in return for protection from others in order to avoid bodily harm, or under threat of any kind.

40   ROBBERY - The taking of property from another by the use of force, or the threat of the use of force with the intent to deprive that individual of the property.

41   MAKING FALSE STATEMENTS OR CHARGES –The speaking of slanderous, defamatory, or untrue words tending to prejudice another.

42   GATHERING IN A THREATENING OR INTIMIDATING MANNER - Self-explanatory.

Annex B to AR 403 (Page 1 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

44   THREATS - A communicated intent to do bodily harm to another individual or group by verbal or written expression.

**SECURITY VIOLATIONS**

45   ESCAPE BY FORCE - The departure out of the custody of the ALDOC or other legal agency by a lawfully detained inmate with the intent to avoid confinement by use of constraining power, compulsion, or force.

46   ATTEMPT TO ESCAPE BY FORCE - An endeavor to escape or conspire to escape by force (see #45 above) resulting in recapture prior to leaving state custody or other controlling agency.

47   ESCAPE WITHOUT FORCE - See #45 above, except hat there is no use of constraining power, compulsion, or force involved.

48   ATTEMPT TO ESCAPE (WITHOUT FORCE) - See #46 above, except that there is no use of constraining power, compulsion, or force involved.

49   ABSENT WITHOUT LEAVE - Not returning from leave or pass within two hours of the designated time.

50   BEING IN AN UNAUTHORIZED AREA - Also includes being ardent from assigned work area or place of employment and/or being absent from assigned quarters without permission.

51   UNAUTHORIZED POSSESSION OF ESCAPE DEVICE - Having in one's possession any device which could be used to attempt or effect an escape, such as, but not limited to, an instrument to pick a lock, a homemade key, a disguise, or a replica of a human being.

52   UNAUTHORIZED POSSESSION OF A WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON - Any instrument which could be used in a violent manner, such as a device with a pointed and/or sharpened end, or a homemade club, or any item which appears to be a weapon.

53   INCITING TO RIOT OR RIOTING - To incite a riot is to solicit or urge other persons by speech or actions to engage in a conduct which would create a substantial risk to institutional security or public safety, whereas rioting is the action of five or more people engaging in such behavior.

54   REFUSING TO WORK/FAILURE TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK - Self-explanatory.

56   FAILURE TO OBEY A DIRECT ORDER OF A ALDOC OFFICIAL - Not complying with an order issued by an ALDOC employee in the performance of duty.

57   INSUBORDINATION - Any act, gesture, remark or statement which obviously reflects disrespect to lawful authority.

Annex B to AR 403 (Page 2 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

59   DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS DUTY - Self-explanatory.

60   BRIBERY OR ATTEMPTED BRIBERY - Offering or conferring upon a public servant anything of value with the intent to affect or influence official action, or receiving anything of value for such a purpose.

61   DISRUPTING THE COUNT - Any action intended to which otherwise effects a miscount of inmates within the institution.

62   INTENTIONALLY CREATING A SECURITY, SAFETY OR HEALTH HAZARD – Creating a situation which could cause serious impairment to the operation of        the institution, harm to individuals, or result in destruction of property.

63   DISORDERLY CONDUCT – Conduct or actions that would create risk, inconvenience, or alarm to normal institutional/facility security or routine operation.

64   POSSESSION OF CONTRABAND - The possession of any item not issued to the inmate by an ALDOC employee, sold in the Canteen Store or approved by the Warden, to include possession of U.S. currency in any amount, or items in excessive amounts.

65   POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR PARAPHERNALIA – To include anything used in the administration of drugs or for the manufacture of drugs: for example, a paper bag with traces of glue inside, or the ingredients to make home brew or an intoxicating substance, or storage by the inmate or possession by the inmate of any psychotropic medication unless a specific exception is made by the prescribing physician (the inmate must keep a copy of the physician's authorization with medication at all times).

**PROPERTY VIOLATIONS**

68   THEFT, DAMAGE OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY – The taking of the property of another person without threat, force, or coercion, with the intent to permanently deprive the owner of the property.

69   DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY - Self-explanatory.

70   UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY - Self-explanatory.

71   ARSON - The malicious burning, either by fire or explosion, of state property or items belonging to the inmate or another person.

72   FORGERY - The altering, possession, or transfer of a written instrument or document with the intent to defraud or deceive.

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

73    COUNTERFEITING - To copy or imitate, without authority, in order to deceive or defraud by passing the copy as the original; for example, altering postage stamps, money orders or other documents.

## POLICY VIOLATIONS

78    FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE OR PASS - To include travel arrangements of the leave or pass plan.

86    BEING FIRED FROM A JOB - Being released from employment, or assigned job, because of sloppy work, insolent language, or other culpable behavior on the part of the inmate.

## PERSONAL VIOLATIONS

90    CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS - The use of unauthorized narcotic substance or other intoxicant by sniffing, injection, or orally ingesting.

## MISCELLANEOUS VIOLATIONS

91    CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - A combination or confederacy between two or more inmates **or** one or more inmates and one or more free world persons for the purpose of violating same departmental or institutional rule, even though the act is not consummated or carried out.

92    AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - To help, assist or facilitate the violation of a departmental or institutional rule by encouragement of counsel as to its commission with words, acts, support, presence, or assistance rendered.

93    VIOLATION OF STATE OR FEDERAL STATUTE - Self-explanatory.

94    SOLICITING SEXUAL ACT - Self-explanatory.

PV    VIOLATION OF PAROLE - Violation to be determined by Pardons and Paroles Officer/Board.

## WORK RELEASE AND SIR VIOLATIONS

E8    VIOLATION OF SIR CONTRACT – Self-explanatory

E9    ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION – Self-explanatory

Annex B to AR 403 (Page 4 of 4)

AR 403 January 30, 2003

ALDOC Form 225B

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DISCIPLINARY REPORT**

1.    Inmate: _____    Custody: _____    AIS _____

2.    Facility: _____

3.    The above inmate is being charged by _____ with a violation of Rule
Number _____ specifically _____ from regulation #_____ which
occurred on or about _____, 20 _____ at (time) _____(am/pm), Location:
_____. A hearing on this charge will be held after 24 hours from
service.

4.    Circumstances of the violation(s) are as follows: _____
_____
_____

        Date              Arresting Officer/Signature/Rank

5.    I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I
informed inmate of his/her right to present a written or oral statement at the hearing and to present
written questions for the witnesses on this the _____ day of _____ 20 _____, at (time)_____
(am/pm).

    Serving Officer/Signature/Rank        Inmate's Signature/AIS Number

6.    Witnesses desired? NO_____    YES_____
               Inmate's Signature       Inmate's Signature

7.    If yes, list
_____
_____

8.    Hearing Date_____ Time _____Place _____

9.    Inmate must be present in Hearing Room. If he/she is not present explain in detail on a additional page and
attach.

10.    A finding is made that inmate (is/is not) capable of representing him/herself.

        Signature/Hearing Officer
11.    Plea: _____ Not Guilty _____ Guilty

12.    The Arresting Officer, inmate, and all witnesses were sworn to tell the truth.

        Signature/Hearing Officer

                          Annex C to AR 403 (Page 1 of 5)

                          AR 403 January 30, 2003

Arresting Officers testimony (at the hearing): _____

_____

_____

_____

13.    Inmate's Testimony:_____

_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony: _____

_____

_____

14.    The inmate was allowed to submit written questions to all witnesses. Copy of questions and answers are attached.

_____
Signature/Hearing Officer

15.    The following witnesses were not called - Reason not called

1. _____    _____

2. _____    _____

3. _____    _____

Annex C to AR 403 (Page 2 of 5)

AR 403 January 30, 2003

16. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific) the Hearing Officer finds that:

_____

_____

_____

_____

17. Basis for Findings of Fact:

_____

_____

_____

_____

18. Hearing Officer's Decision: _____ Guilty _____ Not Guilty

19. Recommendation of Hearing Officer:

_____

_____
_____

_____
_____

_____    _____
Signature/Hearing Officer                    Type Name and Title

20. Warden's Action – Date

_____

   Approved

_____

   Disapproved

_____

   Other (Specify)

_____

21. Reason if more than 30 calendar days delay in
    action._____

_____

22.   I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above named inmate on this _____ day of _____20____ , at time)_____(am/pm).

_____        _____
Signature/Serving Officer/Title                 Inmate's Signature/AIS Number

Annex C to AR 403 (Page 3 of 5)

AR 403 January 30, 2003

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT (OPTIONAL)

Inmate Name/AIS Number _____    Incident Report No._____

Facility: _____

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTIONS BY HEARING
OFFICER (QBHO) TO ARRESTING OFFICER: _____

_____

_____

_____

_____

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO)
TO INMATE: _____

_____

_____

_____

_____

CONTINUED WITNESS TESTIMONY (QBHO): _____

_____

_____

_____

_____

CONTINUED FINDINGS OF FACT: _____

_____

_____

_____

_____

Annex C to AR 403 (Page 4 of 5)

AR 403 January 30, 2003

CONTINUED BASIS FOR FINDINGS OF FACT: _____

_____

_____

_____

_____

CONTINUED HEARING OFFICER'S RECOMMENDATIONS: _____

_____

_____

_____

_____

OTHER: _____

_____

_____

_____

_____

Annex C to AR 403 (Page 5 of 5)

ALDOC Form 225D

AR 403 January 30, 2003

## ALABAMA DEPARTMENT OF CORRECTIONS
## NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING

Inmate's Name: _____ AIS #: _____

Violation(s): _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____has

been rescheduled for _____

Reason for rescheduling: _____

_____

_____                    _____
Inmate's Signature                                      Serving Officer's Signature

---

## ALABAMA DEPARTMENT OF CORRECTIONS
## NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING

Inmate's Name: _____ AIS: _____

Violation (s):_____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has been

rescheduled for _____

Reason for rescheduling: _____

_____

_____                    _____
Inmate's Signature                                      Serving Officer's Signature

Annex D to AR 403

AR 403 January 30, 2003

## INMATE REQUEST SLIP

Name Zephyrinus Egbuonu   Quarters KCB 125   Date 10/6/05

AIS # 242109

( ) Telephone Call     ( ) Custody Change     ( ) Personal Problem

( ) Special Visit         ( ) Time Sheet        (X) Other Job assignment
                                                   Kitchen

Briefly Outline Your Request - <u>Then Drop In Mail Box</u>

Sir, I will be glad if you can review reconsider my job assignment you gave me on 10/6/05. I have over 17 years of Schooling, 2 Engineering degrees from Texas A&M University, 12 years of Engineering Project Management with City of Los Angeles, CA, 2 year Experience in Computer Hardware and Software Programming, 1 year in Self Study of Alabama law. I keenly believe that DOC can utilize my experiences in areas of Clerical

<u>Do Not Write Below This Line</u> - **For Reply Only**

work, data entry, Flyer Design html, GED classes and or law library. I look forward for your respond.

---

   Approved         **Denied**         **Pay Phone**         **Collect Call**

**Request Directed To:** (Check One)

( ) Warden                 ( ) Deputy Warden         (X) Captain Barron

(X) Classification Supervisor    ( ) Legal Officer - Notary    ( ) Record Office
    Ms. Atchinson                    Public

# EXHIBIT 9

**INMATE REQUEST SLIP**

Name _Zephyrinus Egbuonu_ Quarters _KCB 125_ Date _10/9/05_

AIS # _242709_

( ) Telephone Call        ( ) Custody Change        ( ) Personal Problem

( ) Special Visit         ( ) Time Sheet            (X) Other _Time Conflict_
_First Shift Crew Request_

Briefly Outline Your Request - **Then Drop In Mail Box**

Sir, my current job assignment are from 8:30am-5:30pm M. to Sunday
I am writing proxy pleading to you to place me in your First Shift
Crew starting 2am to enable me after work, to have an access
to law library which normally opening hours are from 8:00am to
4:00pm Monday to Fri, Sat 3:00pm-6:00pm, Close Sun; to enable
me work, research, write, appeal my conviction to State and Federal
Court of Criminal Appeals within allowable time; 60 days from final
Judgement; to enable me go to Roman Catholic Religion Service on Saturday
9:00am-10:00am. In addition, I would be glad to assist you in any of your
computer needs, I have over 12 years
experience in Engineering Computer Softwares.

Do Not Write Below This Line - **For Reply Only**

| Approved | Denied | Pay Phone | Collect Call |
|----------|--------|-----------|--------------|

Request Directed To: (Check One)

( ) Warden                    ( ) Deputy Warden              ( ) Captain

( ) Classification Supervisor  ( ) Legal Officer - Notary     ( ) Record Office
                                   Public

→(X) Kitchen
    Chief Warren

# EXHIBIT 10

**INMATE REQUEST SLIP**

Name _Zephyrinus Egbuonu_ Quarters _KCB 125_ Date _10/17/05_

AIS # _242109_

( ) Telephone Call        ( ) Custody Change        ( ) Personal Problem

( ) Special Visit         ( ) Time Sheet            (X) Other _Kitchen Job Time Conflict with Law Library & Religion._

Briefly Outline Your Request - <u>Then Drop In Mail Box</u>

Sir, my current job assignment from 8:30am-5:30pm Mon to Sun I am writing pray pleading to you to place me in your First Shift Crew Starting time of 2am Mon to Fri to enable me after work to have an access to Law Library which opening hours are from 8:00am to 4:00pm Mon to Fri, Sat 3:00pm -6:00pm, Close on Holyday Sunday, to enable me work, research, write, appeal my conviction to State and Federal Court of Criminal Appeals within allowable time; 60 days from final judgement, to enable me go to Roman Catholic Religion Service on Saturday 9:00am-10:00am, Stay off on Holyday Sunday. In addition I would be glad to make up working hours as needed but now I

<u>Do Not Write Below This Line - For Reply Only</u>   need daytime to go to law library research appeal my conviction of a crime I did not committed. Your's response is highly needed.

| Approved | Denied | Pay Phone | Collect Call |

Request Directed To: (<u>Check One</u>)

( ) Warden                    ( ) Deputy Warden         (X) Captain _Bamon_

( ) Classification Supervisor ( ) Legal Officer - Notary ( ) Record Office
                                  Public

N176

# EXHIBIT 11

**INMATE REQUEST SLIP**

Name Zephyrinus Egbuonu    Quarters KCB 125    Date 10/13/05

AIS # 242109

( ) Telephone Call        ( ) Custody Change        (X) Personal Problem

( ) Special Visit         ( ) Time Sheet            (X) Other Job Time Conflict
                                                         With Appeal & Religion

Briefly Outline Your Request - **Then Drop In Mail Box**

Sir, my current job assignment are from 8:30am-5:30pm Sun to Fri, I am writing pray pleading to you to place me in your First Shift Crew starting time of 2am Mon to Fri to enable me after work, to have an acess to Law Library which opening hours are from 8:00am to 4:00pm Mon to Fri, Sat 3:00pm-6:00pm, close on Holyday Sunday, to enable me work for you, research, write, appeal my conviction to State and Federal Court of Criminal Appeals within allowable time; 60 days from final judgement, to enable me practise my Roman Catholic Religion; observe Holyday Sunday, attend Servies on Saturday 9:00am-10:00am. I would be glad to make up my working hours as needed

<u>Do Not Write Below This Line</u> - **For Reply Only**

_____

_____

_____

_____

_____

| Approved | Denied | Pay Phone | Collect Call |
|----------|--------|-----------|--------------|

Request Directed To: (<u>Check One</u>)

( ) Warden                    ( ) Deputy Warden         ( ) Captain

( ) Classification Supervisor ( ) Legal Officer - Notary ( ) Record Office
(X) Kitchen Chief                 Public

N176

# EXHIBIT 12

## INMATE REQUEST SLIP

Name _Zephyrinus Egbuonu_  Quarters _RCB 212_  Date _12/20/05_

AIS # _242109_

( ) Telephone Call     ( ) Custody Change     ( ) Personal Problem

( ) Special Visit     ( ) Time Sheet     (x) Other _Medical_
_Work Boot_

**Briefly Outline Your Request - Then Drop In Mail Box**

I would be glad if you provide me with another
different work boot, Size 12, the work
black boot furnished to me in October 2005
has harm created foot callous which imposes
excruciate pain on me. Thank you in
advance for your assistance

**Do Not Write Below This Line - For Reply Only**

| Approved | Denied | Pay Phone | Collect Call |

**Request Directed To: (Check One)**

( ) Warden     ( ) Deputy Warden     ( ) Captain

( ) Classification Supervisor     ( ) Legal Officer - Notary     ( ) Record Office
Public

(x) Kitchen (chief)

N176

# EXHIBIT 13

## INMATE REQUEST SLIP

Name ___Zephyrinus Cabuony___ Quarters __KCB212__ Date __12/22/05__

AIS # __242109__

( ) Telephone Call        ( ) Custody Change        ( ) Personal Problem

( ) Special Visit         ( ) Time Sheet           ( ) Other __Work-Boot )__
                                                              __Medical Problem )__

**Briefly Outline Your Request - _Then Drop In Mail Box_**

I would be glad if you can assist, provide
me with different work-boot, size 12.
The black work boot furnished to me in
October 2005 has harmed, created foot
callous, impaired my walking and has
imposes excruciate pain on me. Note, I has
notified Chief Warren about my situation
and medical staff has trim the callous once.
Your reply solution is needed

Do Not Write Below This Line - **For Reply Only**

_____

_____

_____

_____

_____

_____

| Approved | Denied | Pay Phone | Collect Call |
|---|---|---|---|

Request Directed To: (Check One)

( ) Warden                        ( ) Deputy Warden          (X) Captain

( ) Classification Supervisor     ( ) Legal Officer - Notary  ( ) Record Office
                                      Public

N176

# EXHIBIT 14

**INMATE REQUEST SLIP**

Name _Zephyrinus Egbucra_   Quarters _KCB212_   Date _4/6/06_

AIS # _242109_

( ) Telephone Call          ( ) Custody Change          ( ) Personal Problem

( ) Special Visit           ( ) Time Sheet              (X) Other _Washing Gloves_

**Briefly Outline Your Request - Then Drop In Mail Box**

I will be glad if your office can assist
provide me with a washing gloves
to decrease hot water extricate
tenure on my hand during washing
pot and pans and a dairy helper to
reduces the work load.

Thank for your assistance.

<u>Do Not Write Below This Line</u> - **For Reply Only**

| Approved | Denied | Pay Phone | Collect Call |
|----------|--------|-----------|--------------|

Request Directed To:  (<u>Check One</u>)

( ) Warden                     ( ) Deputy Warden          ( ) Captain

( ) Classification Supervisor  ( ) Legal Officer - Notary ( ) Record Office
                                   Public

(X) Kitchen Supervisor

N176

**EXHIBIT 15**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

**Notification of Rejected Mail**

From: Ms. Leak _____ Date: __04/14/06_____
                  Institutional Mail Room
To: Inmate _Zephyrinus Eghuonu_____ AIS#: 242109_____
Cell/Dorm: KCB_____ Bed #: _212_____
Correspondence From: Kimberly Armstrong_____
Date received at this Institution: 4/13/06____._____
Is being returned to sender due to the following reason(s): _You received some
unauthorized Internet material in the mail it was refused and returned to sender Per Capt.
Barrett. Guidelines were sent to sender on what is allowed._

The inmate has the option to return mail to sender at his/her own expense within thirty
(30) days or the property will be destroyed.

The inmate has seventy-two (72) hours from the above date to appeal this return. State
your reason(s) for appealing in writing below and return this form to the
Warden/designee:
_____Was it an error to discriminate against an_____
____internet publication material" print out text____
____from internet. Your earliest ~written response____
____is highly needed._____
_____
_____

_____Eghuonu Zephyr(242109) / 4/16/06_____
Inmate Signature AIS#

Date 4-25-06_____
**Appeal/Denied**          **Appeal/Upheld**

_Bobby Barrett_____
Printed Name  Printed Name

_____

Authorized Signature  Authorized Signature

_____

Date returned to sender  Date returned to inmate
**ADOC Form 448 – December 19, 2005**

*Internet material is
prohibited!*

*Capt. Barrett*

**EXHIBIT 16**

**INMATE REQUEST SLIP**

Name _Zephyrinus Egbuonu_  Quarters _KCB212_  Date _4/15/06_

AIS # _242109_

( ) Telephone Call     ( ) Custody Change     ( ) Personal Problem

( ) Special Visit     ( ) Time Sheet     (X) Other _Law Library Access_

**Briefly Outline Your Request - Then Drop In Mail Box**

Pursuant to ADOC Administrative Regulation No. 207, Was it error for your "Gate 3" duty officers to deny inmates who chooses not to eat lunch nor dinner, an access to law library prior to during and immediate after feeding time. Your earliest review and response is are highly needed. Thanks.

**Do Not Write Below This Line - For Reply Only**

Approved     Denied     Pay Phone     Collect Call

**Request Directed To: (Check One)**

( ) Warden     (X) Deputy Warden     ( ) Captain

( ) Classification Supervisor     ( ) Legal Officer - Notary Public     ( ) Record Office

N176

# EXHIBIT 17

## INMATE REQUEST SLIP

Name *Zephyrinus Egbuonu* Quarters KCB 212 Date 4/21/06

AIS # 242109

( ) Telephone Call    ( ) Custody Change    ( ) Personal Problem

( ) Special Visit    ( ) Time Sheet    (X) Other Official
                                        law library hours

**Briefly Outline Your Request - <u>Then Drop In Mail Box</u>**

Pursuant to ADOC "Notice to All Inmates" handout dated January 2003 signed by ADOC Commissioner, I will be glad if your office can provide me with your official opening closing hours of your KCF law library on daily basis. Thank, I look forward for your earliest written response.

<u>Do Not Write Below This Line</u> - **For Reply Only**

| Approved | Denied | Pay Phone | Collect Call |
|---|---|---|---|

**Request Directed To: <u>(Check One)</u>**

( ) Warden    (X) Deputy Warden    ( ) Captain

( ) Classification Supervisor    ( ) Legal Officer - Notary Public    ( ) Record Office

# EXHIBIT 18

**INMATE REQUEST SLIP**

Name _Zephyrinus Egbuonu_ Quarters _KCB 212_ Date _5/2/06_

AIS # _242109_

( ) Telephone Call ( ) Custody Change ( ) Personal Problem
( ) Special Visit ( ) Time Sheet (X) Other _Washing Gloves_

Briefly Outline Your Request - <u>Then Drop In Mail Box</u>

Goodday, I will be glad if your office.
Can assist provide me with a washing
gloves to decrease hot water excruciate
tenure on my hand during washing
pot and pan in the kitchen.

Thank for your assistance.

<u>Do Not Write Below This Line</u> - **For Reply Only**

Talk to the steward.

Cept. Barnett

| Approved | Denied | Pay Phone | Collect Call |

Request Directed To: (<u>Check One</u>)

( ) Warden (X) Deputy Warden ( ) Captain
( ) Classification Supervisor ( ) Legal Officer - Notary Public ( ) Record Office

N176

# EXHIBIT 19

**INMATE REQUEST SLIP**

Name _Zephyrinus Egbuonu_ Quarters _KCB 212_ Date _5/2/06_

AIS # _242109_

( ) Telephone Call          ( ) Custody Change          ( ) Personal Problem

( ) Special Visit          ( ) Time Sheet          (X) Other _Washing Gloves_

**Briefly Outline Your Request - Then Drop In Mail Box**

Follow up, I will be glad if your office
can assist provide me with a washing
gloves to decrease hot water excruciate
tenure on my hand during washing
pot and pan in the kitchen ~~here~~

Thank for your assistance.

**Do Not Write Below This Line - For Reply Only**

_____

_____

_____

_____

_____

_____

| Approved | Denied | Pay Phone | Collect Call |
|----------|--------|-----------|--------------|

Request Directed To:  (Check One)

( ) Warden                    ( ) Deputy Warden          ( ) Captain

( ) Classification Supervisor          ( ) Legal Officer - Notary          ( ) Record Office
                                        Public

(X) Kitchen Supervisor

N176

# EXHIBIT 20

**INMATE REQUEST SLIP**

Name Zephrynius Egberiemi   Quarters _____   Date 5/23/06

AIS # 242109

( ) Telephone Call    ( ) Custody Change    ( ) Personal Problem
( ) Special Visit     ( ) Time Sheet        (X) Other Law Library Access

Briefly Outline Your Request - Then Drop In Mail Box

TO: MR. Rowell, Deputy Warden

Greeting Sir, this is a follow up of previous inmate request:
1) Was it an error for your officers at Gate 3 to deny inmate access to ingress, egress of law library between hours of 9:30AM to 11:30AM on daily basis or their conducts or rules contrary to depicted law library hours. Your review response is highly needed.

Do Not Write Below This Line - For Reply Only

Approved    Denied    Pay Phone    Collect Call

Request Directed To: (Check One)
( ) Warden    (X) Deputy Warden    ( ) Captain
( ) Classification Supervisor    ( ) Legal Officer - Notary Public    ( ) Record Office

N176

# EXHIBIT 21

**INMATE REQUEST SLIP**

Name *Zephyrinis Egbuoru* Quarters KCB 212 Date 5/24/06

AIS # 242109

( ) Telephone Call     ( ) Custody Change     ( ) Personal Problem

( ) Special Visit     ( ) Time Sheet     (X) Other *Law Library*

Briefly Outline Your Request - Then Drop In Mail Box

*Greeting. Sir, was it an error to deny inmate ingress egress access to law library every Wednesday early morning hours prior to lunch hours. Your review response is highly needed.*

Do Not Write Below This Line - **For Reply Only**

| Approved | Denied | Pay Phone | Collect Call |

Request Directed To: (Check One)

( ) Warden     (X) Deputy Warden     ( ) Captain

( ) Classification Supervisor     ( ) Legal Officer - Notary Public     ( ) Record Office

N176

# EXHIBIT 22

*Capt or Mail Person*

## INMATE REQUEST SLIP

Name _Zephynimus Egbuom_ Quarters _KCB 212_ Date _5/28/06_

AIS # _242109_

( ) Telephone Call      ( ) Custody Change       ( ) Personal Problem

( ) Special Visit       ( ) Time Sheet        ☒ Other _Reading Material_

Briefly Outline Your Request - Then Drop In Mail Box

Greeting, Pursuant to DOC and or ADOC Standard
Procedure VII-b; Inmate Mail Privileges II(B)(I),
I will be glad if your office can delete
• Las Vegas Newspaper
from my previously approved newspaper and
magazine, then add and allow me to receive
• Architectural Record Magazine
Thanks.

Do Not Write Below This Line - **For Reply Only**

_Capt. Bull_

Approved        (Denied)         Pay Phone _6/17/06_         Collect Call

Request Directed To: (Check One)

( ) Warden            ☒ Deputy Warden         ( ) Captain

( ) Classification Supervisor    ( ) Legal Officer - Notary    ( ) Record Office
                                     Public

N176

# EXHIBIT 23

## INMATE REQUEST SLIP

Name _Zephyrinus Egbuonu_ Quarters _KCB 212_ Date _6/1/06_

AIS # _242109_

( ) Telephone Call          ( ) Custody Change          ( ) Personal Problem

( ) Special Visit           ( ) Time Sheet              (X) Other _Washing Gloves_

**Briefly Outline Your Request - Then Drop In Mail Box**

Greeting. I will be glad if your office and or Steward can provide me with a washing gloves pursuant to OSHA standard to protect risk of being burned again on daily basis by hot water, hand and skin hardening, irritation and severe itching caused by highly concentrated industrial soap use. Your review response is highly needed.

**Do Not Write Below This Line - For Reply Only**

_____

_____

_____

_____

_____

_____

| Approved | Denied | Pay Phone | Collect Call |
|----------|--------|-----------|--------------|

**Request Directed To: (Check One)**

( ) Warden                    ( ) Deputy Warden          ( ) Captain

( ) Classification Supervisor ( ) Legal Officer - Notary Public  ( ) Record Office

(X) Kitchen.

N176

# EXHIBIT 24



UNITED STATES OF AMERICA
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION
1120 20TH STREET, NW, 9TH FLOOR
WASHINGTON, DC 20036-3457

FOIA Requester Service Center

Phone: (202) 606 - 541ı
Fax: (202) 606 - 541

June 7, 2006

Zephyrirus Egbuonu
AIS #242109
P.O. Box 150
Mount Meigs, Alabama 36057

Re:    Occupational Safety and Health Administration Complaint Form

Dear Mr. Egbuonu:

In your letter dated May 28, 2006, you requested two copies of an Occupational Safety and
Health Administration (OSHA) complaint form.

Please note that the Occupational Safety and Health Review Commission (Review Commission)
is not affiliated with OSHA. The Review Commission is a federal agency created to decide
contests of citations or penalties resulting from OSHA inspections of American work places.
We, therefore, function as an administrative court, independent of OSHA, with established
procedures for conducting hearings, receiving evidence and rendering decisions by its
Administrative Law Judges.

Nonetheless, please find enclosed two copies of the OSHA complaint form that we obtained
from the following OSHA website:

http://www.osha.gov/as/opa/worker/complain.html

The completed form should be mailed to your local OSHA Regional Office. The address of the
OSHA Regional Office for Alabama is 61 Forsyth Street, SW, Atlanta, Georgia 30303.

If you have any questions, please direct them to the OSHA Regional Office above.

Sincerely,

John Cerveny
Acting Freedom of Information Act Officer

**EXHIBIT 25**

UNITED STATES OF AMERICA
**OCCUPATIONAL SAFETY AND HEALTH
REVIEW COMMISSION**
ONE LAFAYETTE CENTRE
1120 20TH STREET, N.W. - 9TH FLOOR
WASHINGTON, DC 20036-3457

OFFICIAL BUSINESS

WASHINGTON

08 JUN 2006

$ 00.63
02 1A
0004369093     JUN 08 2006
MAILED FROM ZIP CODE 20036



KCB-212

Zephyrirus Egbuonu
AIS #242109
P.O. Box 150
Mount Meigs, Alabama 36057

2006 JUN
RECEIVED
KEBBY CLARK, ESQ.
BUSINESS OFFICE

36057+0150 B001

U. S. Department of Labor
Occupational Safety and Health Administration

# Notice of Alleged Safety or Health Hazards

| | Complaint Number | |
|---|---|---|

| Establishment Name | Kilby Correctional Facility | | |
|---|---|---|---|
| Site Address | 12201 Wares Ferry Road, Montgomery Alabama 36117 | | |
| | Site Phone | | Site FAX |
| Mailing Address | 12201 Wares Ferry Roads, Montgomery Alabama 36117 | | |
| | Mail Phone | | Mail FAX |
| Management Official | Chief Warren and/or Mr. Rowell | Telephone | |
| Type of Business | Department of Correction; Alabama - Kitchen | | |

HAZARD DESCRIPTION/LOCATION. Describe briefly the hazard(s) which you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

Subjected to wash Kitchen hot grease pots and pans with hot water, highly industrial concentrated soap at an inadequate ventilation. Kitchen without dish washing gloves and or durable water proof resistant boot for protection, couple officers-in-charge has been constantly informed however nothing were done. The Kilby Correctional Facility Kitchen displaced "Alabama Department of Public Health Environmental Administration E.H. Insp. 10-11, 2176 hand Dishwashing sinks, recommended to wash at 120°F and sanitize at 170°F. The location of the alleged violation exists at Kilby Correctional Facility Population Kitchen, 12201 Wares Ferry Road, Montgomery, Alabama 36117. Due to above subjection I has experienced hot water burned, hand and skin hardening irritation, severe hand arm itching and over 3 persons has been exposed threatened by the above. Eg Enonu Zephyr.

| Has this condition been brought to the attention of: | [X] Employer    ☐ Other Government Agency(specify) |
|---|---|
| Please Indicate Your Desire: | ☐ Do NOT reveal my name to my Employer<br>[X] My name may be revealed to the Employer |
| The Undersigned believes that a violation of an Occupational Safety or Health standard exists which is a job safety or health hazard at the establishment named on this form. | (Mark "X" in ONE box)<br>☐ Employee    ☐ Federal Safety and Health Committee<br>☐ Representative of Employees  [X] Other (specify) Inmate Worker |
| Complainant Name | Zephrinus Egbuonzi (AIS 242109)    Telephone |
| Address(Street,City,State,Zip) | P. O. Box 56 Elmore, Alabama 36025 |
| Signature | Egbuonu Zephyr.    Date    8/1/06 |

If you are an authorized representative of employees affected by this complaint, please state the name of the organization that you represent and your title:

Organization Name:        Your Title:

**EXHIBIT 26**

2

OSHA-7(Rev. 3/96)

EXHIBIT 27



Zephyrinus Eg
AIS 242189

STATON CORRECTIONAL FAC.
P.O. BOX 56
ELMORE, AL 36025-0056

CERTIFIED MAIL

5 1160 0000 5642 7112

UNITED STATES POSTAL SERVICE

36117

U.S. POSTAGE PAID
GRAND PRAIRIE, TX
78052
AUG 07 '06
AMOUNT
$4.77
00069766-04

RETURN RECEIPT REQUESTED

Mr. Powell, Deputy Warden
Kilby Correctional Facility
12201 Wares Ferry Rd
Montgomery AL 36117



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Rowell, Deputy Warden
Kilby Correctional Facility
12201 Wares Ferry Rd
Montgomery, AL 36117

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X                                             ☐ Agent
                                              ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*          ☐ Yes

2. Article Number
   *(Transfer from service label)*
   7005 1160 0000 5642 7112

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

 **UNITED STATES POSTAL SERVICE®**

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7005 1160 0000 5642 7112**
Status: **Delivered**

Your item was delivered at 9:25 am on August 14, 2006 in
MONTGOMERY, AL 36117. A proof of delivery record may be available
through your local Post Office for a fee.

Additional information for this item is stored in files offline.

( Restore Offline Details > ) (?)   ( Return to USPS.com Home > )

**Track & Confirm**

Enter Label/Receipt Number.

( Go > )

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

August 01, 2006

Mr. Rowell, Deputy Warden
Kilby Correctional Facility
12201 Wares Ferry Road
Montgomery, Alabama 36117

Dear Sir:

I am writing to inform you that so far I have served over three years and six months in
remote State of Alabama for an alleged crime that occurred in State of California.

My incarceration journey and time already served began when I was arrested at Los
Angeles County, California and remanded to custody on March 20, 2003. I was unable to
make bail, and upon demand of Alabama State I was brought into State of Alabama on
about October 04, 2003. (See Attachment 11 of June 23, letter I sent you)
 The State of Alabama then declared that I fled from Jefferson County, Alabama at about
2003; I have never been before nor have any contact with the State of Alabama. (See
Attached A of June 24, 2006 letter I sent you).

Under the equal protection clause of fourteenth Amendment of the United States
Constitution as relate to convicted indigent defendant jail time served, I hereby request
for your office credit me with all my time served from March 2003 to present and grant
me immediate applicable relief.

Sincerely,

Zephyrinus Egbuonu
AIS 242109
P O BOX 150
Mount Meigs, Alabama 36057


CC: Attorney Sidney Hughes
      Attorney G.R. Mahmood
      Attorney Scholar Egbuonu

EXHIBIT 28



CERTIFIED MAIL™

7005 1160 0000 5654 8497

UNITED STATES POSTAL SERVICE

AUG 12 '06

$4.64

0000    36117    00060202-8

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee |
| | B. Received by ( Printed Name)  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Mr. Rowell, Deputy Warden<br>Kilby Correctional<br>12201 Wares Ferry Rd<br>Montgomery, AL 36117 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☐ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7005 1160 0000 5654 8497 |

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540


**UNITED STATES**
**POSTAL SERVICE**®

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7005 1160 0000 5654 8497**
**Status: Delivered**

Your item was delivered at 8:37 am on August 17, 2006 in ELMORE, AL
36025. A proof of delivery record may be available through your local
Post Office for a fee.

Additional information for this item is stored in files offline.

( Restore Offline Details > ) (?)    ( Return to USPS.com Home > )

---

**Track & Confirm**

Enter Label/Receipt Number.

( Go > )

---

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

August 02, 2006                          **Certified No.: 7005 1160 0000 5654 8497**

Mr. Rowell, Deputy Warden
**Kilby Correctional Facility**
12201 Wares Ferry Road
Montgomery, Alabama 36117


Dear Sir:

Greetings. I would appreciate your office looking into the environmental conditions with
particular attention to the tobacco smoke level that the inmates are exposed to at the
Kilby Correctional Facility. Also if you can explain to me the possibility of future health
problems resulting from such exposure.

Your Kilby Correctional Facility provides tobacco benefits to inmates but does not
provide a designated smoking area for smoking inmates during lock down. This leaves
non-smoking inmates like myself no choice but to inhale tobacco smoke, which
according to research can create future slight deficiency of Alpha-I Antitrypsin (AAT) a
blood protein that protect Liver and Lungs. This can lead to Emphysema and Cirrhosis of
the Liver and other health problems.

I was at the Kilby Correctional Facility from September 2005 to August 2006 and was
daily exposed to an inconsiderable amount of tobacco smoke due to this practice.

I look forward for your review and response as relates above mentioned.

Sincerely,

Zephyrinus Egbuonu
AIS 242109
P O BOX 150
Mount Meigs, Alabama 36057


CC:  Department of Health, Washington, D.C.
       Department of Labor, Washington, D.C.

**U.S. Department of Labor**     **Occupational Safety and Health Administration**
**Atlanta Federal Center**
**61 Forsyth St., SW, Room 6T50**
**Atlanta, Georgia 30303**
**Phone:  404/562-2300**



AUG 25 2006

Zephyrinus Egbuonu
P.O. Box 56
Elmore, Alabama 36025

Dear Mr. Egbuonu:

The Atlanta Regional Office of the Occupational Safety and Health Administration
(OSHA) is in receipt of your Notice of Alleged Safety or Health Hazards received in our
office on August 21, 2006.  In your complaint letter pertaining to the Kilby Correctional
Facility located in Montgomery, Alabama, you request that OSHA investigate the
hazards of washing pots and pans with hot water and highly concentrated soap without
dish washing gloves.  You also state there is inadequate ventilation.

As background, in the state of Alabama, OSHA does not have jurisdiction over state,
county, or local municipalities including correctional facilities.  Therefore, OSHA has no
authority to investigate hazards or enforce regulations in a county or state operated
correctional facility because of restrictions included in the Occupational Safety and
Health Act of 1970.  Please understand your concerns are very important to us.  So, in
an attempt to resolve the alleged safety and health hazards, we suggest that you
address this matter further with the State of Alabama Department of Corrections.  The
state office address and telephone number are provided below for your convenience.

> Alabama Department of Corrections
> 301 S. Ripley Street
> P.O. Box 301501
> Montgomery, AL. 36130-1501
> (334) 353-3883

We regret that we could not be more responsive to your concerns.

Sincerely,

CINDY COE LASETER
Regional Administrator

# EXHIBIT 29

**U.S. Department of Labor**

61 Forsyth Street SW
Atlanta, Georgia 30303

Official Business
Penalty for Private Use, $300



242109

36025+0056

## BIOGRAPHY

**NAME:**

Zephyrinus Egbuonu

**BORN:**

March 4, 1965, Onitsha, Anambra State, Nigeria.

**USA ADMISSION:**

Admitted into U.S.A. in 1984 with a Student Visas
Became a United States Lawful Permanent Resident in 1988.

**EDUCATION:**

Bachelor of Science in Civil Engineering, 1991
Bachelor of Sicence in Electrical Engineering, 1991.
From Prairie A & M University, Prairie View, Texas.

**CAREER:**

Began Engineering Career at former Compaq Computer;
Houston, Texas. Internship at Texas State Department of
Transportation, San Augustine, Texas, before moving to
San Luis Obispo in California State in 1991 for work.
Work for California State Department of Transportation
(Caltran's) as a Civil Engineer in 1991. Later moved to
Los Angeles to work as Project Engineer for Bureau of
Engineering, City of Los Angeles for over eleven (11)
years; from August 1991 till his fugitive falsely arrest
in March 2003.

**OUTSIDE CAREER:**

International Business, Architecture, Engineering
Drafting, Designer and Management.

**FAMILY:**

Married, No Children.

# EXHIBIT 30