IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FEB 2 5 2008

ZEPHYRINUS EGBUONU,                    *

#27041-265                                          CLERK
        Plaintiff,                     *         U.S. DISTRICT COURT
                                                 MIDDLE DIST. OF ALA.

        v.                             *         2:07-CV-685-ID

KITCHEN STEWARD WILLIAM,               *
et al.,
        Defendants.                    *

_____

## AFFIDAVIT

I, Zephyrinus Egbuonu, hereby certify and affirm that I
currently an immigration civil detainee at the Federal Detention
Center in Oakdale, Louisiana; that the attached Exhibits 32, 33
and 34 documents are true, exact, and verbatim copy of the
documents received from Alabama Department of Corrections'
Prison Official and or downloaded from Alabama State Department
of Corrections website (www.doc.state.al.us/adminregs.asp);
and that I am over the age of nineteen (19) years and competent
to testify to the aforesaid documents and matters stated
therein.

I further certify and affirm that said documents received,
obtained, maintainted and kept in accordance with provision
of records of regularly conducted activity.

This, I do hereby certify and affirm to the __21st__ day
of February, 2008.

_Egbuonu Zephyr_

**Zephyrinus Egbuonu**

**State of Louisiana**

**Oakdale, Louisiana**

Sworn to and subscribed before and under my hand official seal this the 21ST day of February, 2008.

_Larry 053496_
Notary Public

My Commission expires: _at death_

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2008 FEB 25 P 2: 10

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ZEPHYRINUS EGBUONU,      *
#27041-265
    Plaintiff,      *

v.      *      2:07-CV-685-ID

KITCHEN STEWARD WILLIAM,      *
*et al.,*
    Defendants.      *

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said parish and State of Louisiana at large, personally Zephyrinus Egbuonu, who being know to me and being by me first duly sworn, deposes any says on oath as follows:

My name is Zephyrinus Egbuonu, I am presently an immigration civil detainee at the Federal Detention Center in Oakdale, Louisiana and a former inmate of the Kilby Correctional Facility, Mount Meigs, Alabama. I am over ninteen (19) years of age.

Kilby Correctional Facility is a Alabama Department of Corrections System, and prisoner in Kilby Correctional Facility and every prisoner in the Alabama Department of Corrections are required to work as well as Inmate Egbuonu.

The Prison Officials supervising Inmate Egbuonu have a constitutional obligation to take reasonable measures to guarantee inmates' safety as well as Inmate Egbuonus' safety and Inmate Egbuonus' concern of unreasonable risk damage to his health.

**EXHIBIT 31**

Prison Official **Warden Terrence McDonnell** was the Warden at Kilby Correction Facility until March 2006 and Inmate Egbuonu was assigned to the Kilby Correctional Facility general population Kitchen in October, 2005.

Prison Official Warden McDonnell knew about: 1) the new custom policy used by Kilby Correctional Facility Kitchen Stewards to compel kitchen inmate workers to perform hot greasy pots and pons han d wash under over heated hot water mixed with highly concentrated commercial and industrial yellow and white detergent chemical substances in absence of protective safety gears; 2) the kitchen Stewards perpetually impose hot water torture, cruel and unusual punishment, inhuman or degrading treatment, infliction of sharp severe pains and suffering and harm against inmate workers like Inmate Egbuonu and did nothing to correct the unsafe exposure in absence of protective safety gears; 3) the Prison Official Kitechen Stewards and others' conducts of exposing inmate workers including Inmate Egbuonu to unsafe work hostile environment in absence of safety gears and facilitate their conducts, approve it, condone it and blind eye for fear of what he might see in other words act either knowingly or with deliberate reckless indiffer- ence. Exhibits 13, 14, 15, 19, 20, 24.

Inmate Egbuonu has repeatedly filed numerous complaints about the existing kitchen safety and health hazards which Inmate Egbuonu was compelled to perform in absence of protective safety gears, however, Prison Officials did not respond to Inmate Egbuonus' complaints nor provide Inmate Egbuonu a reason for not responding.   Prison Official Warden Terrence McDonnell was aware of the described Prison Officials conducts and failed to intervene,

2

and as a result of his actions and inaction Inmate Egbuonu suffered.

Prison Official Warden McDonnell was aware and possessed Knowledge that Prison Official Stewards provide kitchen inmate workers with brown bags which contains the highly concentrated commercial industrial detergent chemical substance to use in performing the assigned pots and pans hand wash in absence of protective safety gears. The brown bags has no label and Inmate Egbuonu had way of knowing what type of detergent chemical substances he was being exposed. Inmate Egbuonu had made request for Prison Official Stewards provide him with content of the detergent chemical substances that caused harm to him, however Inmate Egbuonu did not receive a respond. Prison Official Warden McDonnell has no policy and information in place for inmate worker like Inmate Egbuonu to know what types of detergent chemical substances he was being exposed to and the safety precautions to follow to protect his health. Inmate Egbuonu states as result of Prison Official actions and inactions as with respect to the above describe the Court shall grant and issue permanent statewide injunction against the Alabama Prison Official to provide inmate access to right to know the content in which the Prison Official subject and expose inmates to.

Prison Official Warden McDonnell was aware and possessed knowledge: 1) that no elbow gloves nor hot-water resistant shoe was provides or made available to inmate worker to wear to perform the pots and pans hand wash; 2) of the kitchen stewards and others new custom policy or hot-water torture; compel inmates and inmate

3

workers to hand wash hot greasy pots and pans under over heated
hot water mixed with highly concentrated commercial industrial
yellow and white powder detergent chemical substances in absence
of hand wash gloves and other protective safety gears;  3) that
the kitchen stewards and others have compelled Inmate Egbuonu to
hand wash hot greasy pots and pans under the required over heated
hot water mixed with yellow and white powder detergent in absence
of safety gears, but Prison Official Warden McDonnell totally and
recklessly disregarded and acted with deliberate indifference and
did not nothing to correct deficit and: a) failed to supervise
and fashion a policy addressing inmate worker exposure to unsafe
work environment in absence of safety gears;  b) failed to make a
good faith effort to implement or enforce the safety policy or
safety regulation rules;  c) failed to protect Inmate Egbuonu from
being exposed to unreasonable risk to his health and future damage,
and as a result of his actions and inactions which was part of
moving force  behind this above described Constitutional violation.
Inmate Egbuonu has suffered under Prison Official Warden McDonnell
leadership and supervision.

     Inmate Egbuonu states that he was assigned to work at the
Kilby Correctional Facility ("KCF") inmates general Kitchen from
October 2005 to August 1, 2006 and Prison Official Warden **Terrence
McDonnell** was the Correctional Warden III at KCF until March 2006.
In March 2006 Prison Official Warden was promoted to ALDOC Associ-
ate Commissioner over programs and assigned to the Central Office
in  Montgomery, Alabama thereof Prison Official was aware  and
possessed knowledge of Inmate Egbuonu complaints and events that
took place until March 2006 and or Prison Official Warden McDonnell

                              4

has failed in his duties as a Head, to supervise his officials, subordinates and or lower supervisors which includes Prison Officials Warden Rowell, Chief Steward Warren, Captain Barrett and others.

Prison Official Warden McDonnell's affidavit dated December 3, 2007 under the Civil Action: 2:07-CV-999-WKW which provides as follows: "I responded to a complaint filed by Inmate Egbuonu in September, 2007, Civil Action: 2:07 CV-685-ID, regarding him allegedly being denied access to the Inmate library." Exhibit 32. However, Prison Official Warden McDonnell's affidavit dated December 10, 2007 under Civil Action 2:07-CV-685-ID was not filed to court nor provided to Inmate Egbuonu until February 13, 2008. (Doc. # 46, 47, 50). Prison Official Warden McDonnell was aware and knew in fact as of December 2007 that he has not responded to the complaint filed by Inmate Egbuonu in September, 2007, Civil Action: 2:07-CV-685 ID, but totally disregarded and told court under the Civil Action: 2:07-CV-998-WKW that he has responded to the complaint, such Prison Official Warden McDonnell statement before the court may be incorrect or inaccurate.

Prison Official Warden McDonnell was responded for the administrative operation of the KCF and he holds supervisory position at the KCF. Prison Official McDonnell knew of the ongoing safety violation at the KCF inmate kitchen under custom policy and perpetually failed to act to prevent the ongoing safety violations afor months and allowed his Officials, subordinates and others to compelled inmate workers like Inmate Egbuonu to perform unsafe tasks in an unsafe kitchen environment in absence of protective safety

5

gears and as a result Inmate Egbuonu suffered and continue to suffer.

Prison Official Warden McDonnell failed to train his Prison Officials as with respect to above, failed to implement and enforce ALDOC policy and regulation as relate to safety and safety precautions, failed to implement a policy and or implemented a policy so deficient that the policy itsef is a repudiation of Constitutional rights' and was the moving force of the Inmate Egbuonu's Constitutional right violations.

Prison Official Warden McDonnell has a pattern of implementing a custom policy that may violates inmates' Constitutional rights and has done nothing to correct such custom policy that is/was inconsistent with the ALDOC policy and regulations, and Constitution of the United States.    It is well settled that Prison Official Warden McDonnell was the author of the January 27, 2003 Kilby Correctional Facility Standard OPerating Procedure Number: VII-6 "Inmate Mail Privileges" which provides:

"3. All incoming letters will be inspected for contraband money and/or abuse of mail privileges before delivery to the inmate

a. Any type of internet material is prohibited"

in the 21st Century irrespective of the First and Fourteenth Amendment of the Constitution of the United States.    Exhibit 33

Moreso, Prison Official Steward II Varner has admitted that he was acting as Chief Steward in absence of Chief Steward Warren and was responsible for ordering kitchen supplies, supervising other Prison Official kitchen stewards and insure inmates are trained in compliance with public health requirements.    Prison

6

Official Steward II Varner and other Kitchen Stewards have never trained Inmate Egbuonu.   Prison Official Kitchen Steward II Varner allegations that he was not Inmate Egbuonu's supervisor in absence of Prison Official Kitchen Chief Steward Warren conflict with the Chief Steward work schedule and Prison Official Warden McDonnell's affidavit.   See Prison Official Defendants' Exhibit 5.

Moreso, Prison Official Steward II Varner told Inmate Egbuonu that:  1) the kitchen has no funds to buy and provide kitchen pots and pans hand wash inmate workers with protective safety gears and and advised Inmate Egbuonu to complain to the Prison Official Warden's Office;  2) the reason why the kitchen is not providing inmate workers with elbow hand washing gloves was that the gloves are very expensive and the pots and pans always cut through the elbow length gloves within a week and damage the elbow length gloves within a week and as a result a decision was reach prior to Inmate Egbuonu arrival to KCF not to provide elbow length gloves to kitchen inmate workers;  3) another reason was that inmate workers always stole the elbow length gloves and used or sold the same to another inmates for gym work-out purposes; and 4) the Alabama Department of Corrections are on budget cut now. Prison Official Steward II Varner further promised Inmate Egbuonu that if the Warden and or Assistant Warden provided him with add-itional funds, he will be happy to buy the elbow length gloves for pots and pans hand wash inmates workers.   Exhibits 13, 14, 15, 19, 20. 24.   Prison Official Warden McDonnell was the Head at the KCF, Inmate Egbuonu was not provided with elbow length gloves and hot-water resistant shoe that he requested and needed to protect him-

7

self from unsafe tasks that the Prison Officials compelled him to
perform in absence of the above mentioned and as a result of Prison
Official Warden McDonnell actions and inactions, Inmate Egbuonu
suffered and continue to suffer.

Prison Official Warden McDonnell was aware and has knowledge
of Inmate Egbuonu's complaints concerning the Food Service Division
as early as of December 2005 and also has knowledges of the unsafe
work environment existed at the inmate kitchen but recklessly
disregarded and acted with deliberate indifference and did nothing
to correct the same, and as a result Inmate Egbuonu suffered and
continue to suffer.

At no time the Kitchen Steward Is and IIs trained Inmate
Egbuonu on the proper kitchen sanitation and safety precaution.
see Defendants Exhibit 1.    At no time  Chief Steward Warren train-
ed Inmate Egbuonu on the Kitchen Sanitation and Safety precaution.
see Defendants Exhibit 7.    Inmate Egbuonu was trained by the
extra duty inmate workers who was hand washing the hot greasy pots
and pans in absence of protective safety gears at the time Inmate
Egbuonu was assigned to the kitchen pots and pans washing.   Prison
Oficial Warden McDonnell has failed in his duties to train his
Official, Subordinates to abide by the policy and regulation and
or abide by his filed affidavit when the Prison Officials that he
supervise failed to train inmate worker like Inmate Egbuonu.

At no time: 1) elbow length Neoprene gloves nor hot water
resistant shoe was provided or made available to Inmate Egbuonu
at the time this event took place;  2) Inmate Egbuonu was train
or explain by the Prison Official Stewards and others on how much

8

yellow and white powder detergent chemical substances to use and mix with water;  3) Prison Official Chief Steward Warren provided Inmate Egbuonu or made available hand washing gloves and hot water resistant shoes to Inmate Egbuonu to wear to perform the kitchen hot greasy pots and pans handing washing under the over heated hot water mixed with detergent chemical substances; and 4) Prison Official Stewards personally monitored the use of the detergent chemical substances by inmate workers in the First Shift which Inmate Egbuonu was assigned to nor provide or made available hand washing gloves and hot water resistant shoe for Inmate Egbuonu.  At no time has Inmate Egbuonu refused to follow any officials' instruction on how to mix the detergent chemical substances with water nor ignore any instructions.

Prison Officials at the KIlby Correctional Facility were only interested in providing Inmate Egbuonu with brown bags which contains the highly concentrated commercial industrial detergent chemical substances to use inperforming the assigned pots and pans hand wash in absence of protective safety gears.  The brown bags has no label and Inmate Egbuonu had no way of knowing what type of detergent chemical substances he was being exposed. Inmate Egbuonu had made requests for Prison Official Stewards provide him with content of the detergent chemical substance that caused harm to him, however Inmate Egbuonu did not receive a respond.   Prison Official Warden McDonnell has no policy and information in place for inmate worker to know what types of detergent chemical substances he was being exposed to and the safety precautions to follow to protect his health.   Prison Official

9

Chief Steward Warren in his filed affidavit has declared that one of the chemical substances given to the pots and pans hand wash inmate workers contained; see Prison Official Defendant Exhibit 5 page 2, however bleach will not be considered as "all purpose manual detergent"; see Prison Official Defendants Exhibit 6, so as may other detergent chemical substances which contain bleaching substances.    The 2005 Edition Webster's College Dictionary and Thesaurus defined Bleach as "to make or become white or colorless. - n  a substance from bleaching."    Inmate Egbuonu was compelled to use bleach and others chemical substances in absence of protective safety gears at the Kilby Correctional Facility. Prison Official Deputy Warden Rowell submitted of "all purpose manual detergent" with his filed affidavit despite that bleach was issued to Inmate Egbounu is incorrect and inaccurate.    Therefore, Prison Official Warden has failed to train and supervise his subordinates, when the Prison Official DEputy Warden and Chief Steward indicated and agreed to label bleach as "all purpose manual detergent."    Prison Officials at the Kilby Correctional Facility have no knowledges of consequences of the chemical subtances issued to inmates worker for pots and pans hand wash in the absence of protective safety gears.

At no time, the Prison Officials at the Kilby Correctional Facility provided Inmate Egbuonu with a protective safety gears to wear to protect himself from unsafe task the Prison Official compelled him to perform as part of his prisoner job.

Prison Official Steward Williams told inmate workers including Inmate Egbuonu to use empty milk crates to climb up, plug-in

10

or unplug the ceiling fan.   For over six (6) months Inmate

Egbuonu was working in the kitchen, he has not seen a Maintenance

DEpartment inmate crew at the First Shift plugging and unplugging

the ceiling fan at the pots and pans kitchen area.    Prison Off-

icials including the Maintenance Department were aware and poss-

essed knowledge that:  1) no ladder was provided or made available

for inmate workers to use to climb up, plug-in or unplug the ce-

iling fan;  2) the kitchen pots and pans area ceiling fan had

mechanical and electrical problems, but recklessly disregarded

and acted with deliberate indifference and failed to attach safety

warning, safety precaution signs, hazard warning labs or inform

inmate workers like Inamte Egbuonu that:  a) the empty milk crate

is unsafe to use  and the ceiling fan had problems to protect

Inmate Egbuonu from unsafe hostile work environment but the

Prison Officials did nothing.    Prison Official Warden McDonnell

again has failed to supervise and train his Prison Official Plant

Maintenance Supervisor and kitchen Stewards and others on safety

due process, safety precaution and hazardous warning labels so as

to protect inmate workers from unsafe work environment and unrea-

sonable risk to inmate workers' health and future damage.  As a

result of Prison Official Warden McDonnell knew of the unsafe

kitchen work environment and failed to train and supervise his

officials and subordinates and correct the kitchen stewards and

others of the same as described above, Inmate Egbuonu suffered,

and also suffered more when Prison Official Kitchen Steward used

abusive words made with actual malice, that is, hatred, ill will

or enmity or a wanton desire to injure and their statements were

11

false caused Inmate Egbuonu to suffer tangible injury and defamation.

Prison Official Deputy Warden Rowell submitted document of "law library schedule" with his filed affidavit is unauthenicate on basis the law library schedule was neither dated nor signed by the author, at such failed to establish when it was made. See Prison Official Defendants' Exhibit 6. Moreso, Inmate Egbuonu has filed complainants requesting for: 1) current law library schedule opening hours; 2) adequate access to ingress and egress to laws library, however Prison Official Deputy Warden Rowell did not response to Inmate Egbuonus' complaints. The Kilby Correctional Facility Prison Officials uses the institution law library for showcase and meeting and visiting, and as such is not for inmate to spend adequate time to research and commence their pleading to the courts. Exhibit 17, 18, 21, 22.

The Existing law library rule at the time of event required every inmates to sign-in to ingress the law library once a day, the rule did not required inmates to sign-out to egress the law library, therefore if an inmates ingress to law library for two (2) minutes prior to "Gate 3 Prison Officials" close the law library, that 2 minutes spend would be count as one (1) day. Therefore, Prison Officials' statement in his filed affidavit that Inmate Egbuonu visited the law library 172 days from October 2005 to July 31, 2006 has failed to address the issue that Inmate Egbuonu complained of and has failed to establish what institution law library meant by 172 days on the basis whether the actually time Inmate Egbuonu spend in the law library was 172 minutes or 172

12

hours from October 2005 to July 31, 2006.    Prison Official Deputy
Rowell on his filed affidavit stated that 2nd Shift Kitchen work
hour is 10 AM to 6 PM;  see Prison Official Defendants Exhibit 6.
Moreso, Prison Official Chief Steward Warren required 2nd Shift
kitchen inmate workers to report to the kitchen an hour (1) or an
hour and half (1.5) early to get ready to serve the inmate general
population.   Exhibit 10, 11, 12.    The inmate law library open
Monday to Friday from 8 AM to 4 PM and on Saturday 3 PM to 6 PM;
Prison Official Defendants' Exhibit 6.    Prison Officials at
"Gate 3" denied inmates access to ingress and egress to the law
library during the morning hours in part prior to launch.   Exhibits
17, 18, 21, 22.    The 2nd Shift kitchen inmate workers: 1) have no
ample access to the law library; and  2) are being denied their
constitutionally protected rights of access to the court.   Prison
Official Warden McDonnell was the Head Official at the Kilby Corre-:
ctional Facility and was aware, possessed knowledge that 2nd Shift
kitchen inmate workers are being denied access to law library pur-
suant to Alabama Department of Correction Administrative REgulation
and constitution of the United States, but again totally and reck-
lessly disregarded and acted deliberate indifference when he
failed take actions to correct the inadequate access deficit of
inmate workers right of access to the courts.   Exhibit 34.

Prison Officials in their filed affidavits ignore and reck-
lessly disregard submitting Inmate Egbuonus' potential medical nor
incident reports or documents for the truth of the matter at stake,
has failed to submit: 1) Inmate Egbuonus' finger cut injury inci-
dent of 05/11/06 which Prison Official Steward Williams admitted
on his filed affidavit that he instructed Inmate Egbuonu to report

13

to the medical unit; Exhibit 1 page 2;  2) Inmate Egbuonus' num-
erous complaints of his hands, fingers, arms cuts and scratches in
absence of protective safety gears;  3) Inmate Egbuonus' foot
callous and callous and its complaints;  4) other inmate workers
injuries as with respect to pots and pans hand wash in absence of
protective safety gears, which would have sates otherwise.  see
Brian Dodd v. Howard Robinson - United States District Court for
the Middle District of Alabama Civil Action No.: 03-F-571-N.

Prison Official Warden McDonnell did not have interest of
inmate workers welfare, safety and or protecting Inmate Egbuonu
from Kitchen safety and health hazard risks.   Prison Official War-
den McDonnell recklessly disregarded that safety and safety pre-
caution is to prevent the first accident from occurring and:  1)
perpetually failed to apply and enforce safety rules and safety
precautions and due process pursuant to Alabama Department of
Corrections Administrative Regulation as respect to safety;  2)
perpetually failed to train and supervise his Prison Officials to
respond to Inmate Egbuonus' complaint for safety and protection;
3) failed to train his subordinates to protect inmate workers like
Inmate Egbuonu from performing unsafe kitchen pots and pans hand
wash in the absence of protective safety gears;  4)failed to train
Prison Officials to train inmate workers in the kitchen as with
respect to sanitation and safety;  5) failed to train Prison Off-
icials to follow training instructions, institutional rules and
regulations and safety guidelines given to them at time of train-
ing  to train and protect inmate worker;  6)failed to supervise
his subordinates and train his supervisors in respect of safety

14

and due process, and as a result Inmate Egbuonu has suffered
under Prison Official Warden McDonnell supervision for several
months in the 21st Century.

Inmate Egbuonu has never failed to follow the training ins-
tructions, institutional rules and regulations and safety guide-
lines given to him by the Prison Official Stewards and others,
otherwise Inmate Egbuonu would have receive a sanctions, citations,
and disciplinary actions pursuant to Alabama Department of Correct-
ions Administrative Regulation Number 403 major rule violations
but Inmate Egbuonu has never violated any of Alabama Department of
Correction rules and regulations and Prison Official Official War-
den McDonnell and others havenot sated otherwise or prove the same.
Exhibits 7, 8 and seePrison Official Defendants' Exhibit 2.

At no time were sanctions, citations, disciplinary actions
issued to Inmate Egbuonu by Prison Officials and others for: 1)
failure to training instructions, institutional rules and regula-
tions, institutional policy, and safety guidelines;  2) filing any
false statement or complaint for protective safety gears; 3) int-
entionally creating an unsafety or health hazard in the kitchen;
4) failure to follow direct Prison Official order;  5) failure to
follow direct safety order, instructions and procedures; 6) filing
any false allegations against Prison Officials; 7) failure to
follow safety or sanitation regulation in the kitchen or in the
institution;  8) violating of any Alabama Department of Corrections
Administrative Regulation Number 403 major rule violations No. 38,
41-49, 50, 54, 56-57, 59-60, 62-63, 68-69, 72, 78, 86, 91-94, E8-
E9.  Therefore, Prison Official Warden McDonnell affidavit's state-
ment as with respect to the above described was totally incorrect

15

inaccurate.    see Exhibits 7, 8, 13, 14, 15, 19, 20, 24.

Inmate Egbuonu was not free from cruel and unusual punish-
ment, safety and health hazards were detected, Prison Official
Warden McDonnell of the same through the unsafe kitchen custom
policy  and perpetually plan to cut cost due to budget crsis as
Prison Official Steward II Varner told Inmate Egbuonu, but Prison
Official Warden McDonnell did nothing to correct and protect inmate
workers like Inmate Egbuonu.  At no time was protective safety
gears were provided or made available to Inmate Egbuonu to wear to
perform the unsafe tasks in the unsafe kitchen work environment.

Inmate Egbuonu states his evidences is not only believable
prior to discovery, but compelling that Prison Official Warden
Terrence McDonnell and others were aware, had actual knowledge of
danger in the kitchen pots and pans hand wash tasks but Prison
Official Warden McDonnell totally and recklessly disregarded and
acted with deliberate indifference and failed to enforce and pro-
vide inmate workers like Inmate Egbuonu with protective safety
gears or protect Inmate Egbuonu from unreasonable risks and again
acted with deliberate indifference by allowing his Prison Official
to expose inmate workers like Inmate Egbuonu to unreasonable risk
damage to his health and that as a result of Prison Official
Warden McDonnell leadership, supervision and other actions and
inactions, Inmate Egbuonu suffered hot water torture, sharp severe
pains, emotional distress, skin irritation hardening itchy tenure,
suffering, permanent finger discoloration.  Prison Official Warden
McDonnell totally disregarded his duties under the Alabama Depart-
ment of Correction Adminstrative Regulation, State and Federal laws
and regulations and Constitution of the United States. as with

16

respect of this Inmate Egbuonus' complaints.

Inmate Egbuonu now re-alleges and incorporates by references to the above mentioned and its attached exhibits and filed civil complaint and states that Prison Official Warden McDonnell has violated Alabama Department of Correction Administration Regulations, Inmate Egbuonu's Eighth and Fourteenth Amendments Constitutional rights, Federal laws and State laws and regulations respectively.    Prison Official Warden McDonnell has worked together agreed with others to form a custom policy not to provide inmate workers with protective safety gears and violate Inmate Egbuonus' Eighth and Fourteenth Amendments Constitutional rights, State and Federal laws and regulations respectively in all manners.


*Egbuonu Zephyr*

Zephyrinus Egbuonu


**State of Louisiana**

**Oakdale, Louisiana**

Sworn to and subscribed before and under my hand official seal this the 21ˢᵀ day of February, 2008.

Notary Public

My Commission expires: _____

17

## CERTIFICATE OF SERVICE

I hereby certify that on the _21st_ day of February, 2008, that I have a true and correct copy of Plaintiff's Affidavit in Response to Prison Official Warden Terrence McDonnell Affidavit via United Stated Postal Service, postage prepaid, properly affixed and addressed to:

Benjamin H. Albritton, Assistant Attorney General

Office of the Attorney General

United States District Court for the

    Middle District of Alabama

11 South Union Street

Montgomery, Alabama 31630-0152

*Egbucmu Zephyr*

Zephyrinus Egbuonu

18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ZEPHYRINUS EGBUONU,
AL AIS # 242109,
(LA Fed, Det, Center
#27041-265-
Oakdale, Louisiana 71463)
        Plaintiff,

v.                              CIVIL ACTION: 2:07-CV-998-WKW

CAPTAIN BARRETT, *et al.,*
        Defendants.

A F F I D A V I T

    Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Terrance McDonnell, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

    My name is Terrance McDonnell, and I am presently employed as Associate Commissioner of Programs with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama. I am over nineteen (19) years of age.

    I, Terrance McDonnell, was the Correctional Warden III at Kilby Correctional Facility until March 2006. In March, 2006 I was promoted to ADOC Associate Commissioner over Programs and assigned to the Central Office in Montgomery, AL.

    I responded to a complaint filed by Inmate Egbuonu in September, 2007, CIVIL ACTION: 2:07 CV 685 ID, regarding him allegedly being denied access to the Inmate Law Library. He addressed this issue again in this complaint. I responded previously that "All inmates have ample access to the Kilby Inmate Law Library Monday through Friday from 8:00 AM to 4:00 PM and on Saturdays from 3:00 PM to 6:00 PM regardless of job assignments and working hours. Inmate Egbuonu visited the Law Library 172 days from October, 2005 to July 31, 2006, according to the law library sign in roster."

PLAINTIFF'S
EXHIBIT NO. 32



DEFENDANT'S
EXHIBIT
2

The above response is the extent of my knowledge involving Inmate Egbuonu's Allegations in this complaint.

_____ 12-3-07
Terrance G. McDonnell,          Date
ADOC Associate Commissioner of Programs


State of Alabama
Montgomery, Alabama


　　　Sworn to and subscribed before me and under my hand and official seal this the _3_ day of December, 2007.


_____
Notary Public
My Commission expires: _4/27/2010_ .

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
KILBY CORRECTIONAL FACILITY


January 27, 2003


STANDARD OPERATING PROCEDURE          OPR:  Assistant Warden
NUMBER:  VII-6


INMATE MAIL PRIVILEGES

## I. GENERAL

A.  PURPOSE:  To establish and define procedures and responsibilities
    governing inmate mail privileges at Kilby Correctional Facility.

B.  DEFINITIONS:  For purposes of this SOP, the following
    definitions apply:

    1.  EMPLOYEE:  A person assigned to work at Kilby for
        the Department of Corrections.

    2.  CONTRABAND:  Any item NOT issued to the inmate by
        the Department of Corrections, sold in the
        Canteen/Store, or authorized by the Warden in its
        present form, location, or use.

    3.  PUBLICATION:  Unless otherwise specified, any
        book, magazine, pamphlet, brochure, etc.

    4.  LETTER:  Unless otherwise specified, any form or
        correspondence which as a whole can be contained
        within one (1) standard letter or legal size
        mailing envelop.

    5.  PACKAGE:  Unless otherwise specified, any form or
        correspondence which as a whole CANNOT be contained
        within one (1) standard letter or legal size mailing envelope.

VII-6     Page

PLAINTIFF'S
EXHIBIT NO. 33

1


DEFENDANT'S
EXHIBIT
10

6. MAIL (OR CORRESPONDENCE): Unless otherwise specified, any one or combination of letter, package, and/or publication incoming or outgoing via the U.S. and/or DOC postal system.

7. MONEY: Unless otherwise specified, any one or combination of cash, check, and/or money order.

8. INSPECTION: Unless otherwise specified, a process by which mail is thoroughly checked, internally and externally, with or without the inmate being present as specified, not for general reading or censorship purposes but only upon reasonable belief that the mail contains money, contraband, and/or information which (a) constitutes a threat to the public safety or institutional order and security, or (b) constitutes abuse of the mail privileges to include but not be limited to specifications outlined in this SOP.

C. POLICY: It is the policy of the Department of Corrections (and/or Kilby Correctional Facility) that:

1. Within the parameters of security, control, and procedures established by this SOP and applicable related SOPs, governmental/postal regulations, and Federal/State law:

   a. Each inmate has the right to refuse to participate in authorized mail privileges; however, all inmates at Kilby are encouraged to participate as authorized, in order to maintain constructive family and community ties.

   b. All incoming and outgoing private and legal mail may be sealed, but is subject to inspection as described herein.

   c. No inmate will be utilized to carry, process, distribute, or otherwise directly handle official mail.

   d. Contraband found during mail inspections will be handled,

secured and disposed of in accordance with Department of Corrections Administrative Regulation 306.

    e.   Violation of prescribed procedures and/or law   governing mail and/or mail privileges will subject the violator to detention, arrest, disciplinary action, and/or other measures (to include prosecution), as applicable and appropriate.

2. Each employee and inmate is responsible for insuring that the provisions of this SOP are strictly adhered to.

## II. RESPONSIBILITIES

### A. LETTERS

1. An inmate may correspond with any person, provided (as applicable):

    a.   The inmate's private mail privilege has not been withdrawn as a result of approved disciplinary action or abuse of mail privileges.

    b.   The person has not requested termination of correspondence from the inmate.

    c.   The Warden has granted prior approval for an inmate to correspond with another inmate confined in a Federal, out-of-state, state, county, or city institution based on proven close personal relationship between the inmates.

2. All incoming and outgoing letters must have the sender's name and address (plus AIS#, if an  inmate) on the outside of the envelope, to insure proper processing and delivery/dispatch.

3. All incoming letters will be inspected for contraband, money and/or abuse of mail privileges before delivery to the inmate.

    a. Any type of internet material is prohibited.

4. All outgoing letters are subject to inspection if  is reasonably believed that the letter contains  contraband, money, or

VII-6    Page

3

information which constitutes a threat to public safety or institutional order and security, or which constitutes abuse of mail privileges.

5.  All acceptable letters will be processed and delivered/dispatched promptly. Inspection or other holding of authorized letters will be limited to 24 hours (excluding weekends and holidays). Unauthorized letters and the contents thereof will be held pending the outcome of subsequent related investigation, charge, prosecution, disciplinary action, etc., and disposed of as prescribed in Administrative Regulation 303 Visitation and Correspondence Procedures and Administrative Regulation 306 Disposal of Contraband.

B.  PUBLICATIONS

1.  Inmates may receive a limited number of publications, books, magazines, newspapers, book catalogues, etc. (publications) so long as the publications are received directly from the publisher. Inmates may receive free and gift publications so long as they are mailed directly from the publisher and meet all other security and space limitation requirements. If an inmate purchases a publication, it must be pre-paid from the inmate's prisoners Money on deposit Account (PMOD). Only a current and two back issues may be retained at any one time.

2.  Inmates may not receive publications that could reasonably be expected to threaten, undermine, or damage prison security, prison order, or prison rehabilitation goals, i.e., explosives, ammunition, drugs, sale, distribution, manufacture, handling, or use of weapons, explicit or deviant sexual literature, or racially inflammatory literature.

3.  The Warden or his/her designee will personally inspect EACH ISSUE of a publication when they have a reasonable expectation that that particular issue violates the standards established by paragraph 2 above. If they determine that that issue of the publication violates these standards the Warden, or his designee, may temporarily exclude the publication in accordance with Administrative Regulation 303. Administrative Regulation 303 should be consulted and adhered to prior to any exclusion of publications.

4.  All incoming publications must have the sender's name and address  and the inmate's name, address and AIS #, on the outside of the wrapper, to insure proper processing and delivery.

5.  All incoming publications will be inspected for contraband, money, and/or abuse of mail privileges before delivery to the inmate.

6.  All acceptable publications will be processed ·and delivered promptly.  Inspection or other holding of authorized publications will be limited  to 48 hours (excluding weekends and holidays).  Unauthorized  publications and the contents thereof will be held pending the outcome of subsequent related exclusion, investigation, charge, disciplinary action, prosecution, etc., then disposed of as prescribed.

C.  PACKAGES

1.  An inmate will be allowed to receive packages only as specified below:

a.  Packages containing legal publications and documents from courts or reputable suppliers will be opened and inspected in the presence of the inmate.

b.  Packages containing religious publications (to include Bible study courses) will be sent to the inmate IN CARE OF THE CHAPLAIN, and inspected and distributed by the Chaplain.

c.  Packages containing arts/crafts items must be received directly from a reputable supplier approved by the Warden, inspected by the Mail Clerk, or the Recreation Director in the presence of the inmate before being issued to the inmate.

d.  Christmas and Incentive packages will be authorized in accordance with the Christmas/Incentive packages SOP.

e.  Any other package must be approved in advance in writing by a Captain or higher authority.

2.  An inmate may mail outgoing packages, but is responsible

for providing necessary postage and wrapping materials. These packages will be inspected before wrapping, and wrapped in the presence of an officer. Once wrapped in the present of an Officer, the officer will deliver the package to the mailroom to be mailed.

3.  All incoming and outgoing packages must have the sender's name and address (plus AIS #, if an inmate) and addressee's name and address (plus AIS # if an inmate) on the outside of the wrapping, to insure proper processing and delivery/dispatch.

4.  All acceptable packages will be processed and diverted/dispatched promptly. Inspection or other holding of authorized packages will be limited to 48 hours (excluding weekends and holidays). Unauthorized packages and the contents thereof will be held pending the outcome of subsequent related investigation, charge, disciplinary action, prosecution, etc., then disposed of as prescribed.

D.  MONEY

1.  An inmate may receive money through the mail from individuals on the inmate's approved visitor list (also known as the authorized funds list), with the Warden having discretion concerning additions or deletions on the list.

    a.  Each permanent party inmate is to submit to the Visiting Officer a Correspondence List (a Visitation List with "Visitation" marked out and "Correspondence" written in). The completed list should be placed in the "Completed Visitation List" box on the Main Hallway.

    b.  The Correspondence List;

        1.  Can show up to eight (8) individuals from whom the inmate expects to receive money orders.

        2.  Must include the individual's complete name, address, social security number, and relationship.

        3.  May include individuals NOT on the inmate's

Visiting List, but cannot include other inmates or family members of other inmates.

4.  Does NOT have to include government agencies, banks, etc, from which the inmate might receive authorized payments.

c.  The inmate may be subject to disciplinary action only if an unauthorized person repeatedly sends money to the institution.

2.  Funds received from those on the inmate's authorized list must be in the form of United States Postal money order, cashier's check, or money order issued by a company licensed to sell money orders by the Securities Commission of the State of Alabama.  (A list of such licensed companies is maintained by/in the institution's Business Office).

3.  The cashier's check or money order must include the inmate's name and AIS # to be acceptable.

4.  Acceptable checks or money orders will be removed from the incoming mail and turned in to the Business Office for posting to the inmate's account.

5.  Any cash or unacceptable check or money order will be returned to the sender, along with the mail in which it was received.

6.  Any inmate wishing to send money home or to another party must submit  written request fully explaining the need for the distribution of the money, along with a self-addressed envelope addressed to the person the money is to be sent to.  This is to be forwarded to the Assistant Warden's Office no later than the 15th of the month.

7.  Request for large sums of money, $100.00 or more,  to pay bills, and etc., must be accompanied by copies of the bill or other evidence of indebtedness.  The Assistant  Warden will approve or disapprove the distribution of the money.

8.  The Warden will then return to request slip with is approval

or disapproval to the Business Office.

9.  If the money is approved for distribution, the original
    request slip will be maintained by the Business Office.  A
    copy will be sent to the inmate indicating the date of the
    check and the check number.

10. If the request is denied, a copy of the denial will be
    maintained in the Business Office, the original being
    returned to the inmate.

E.  ABUSE OF MAIL PRIVILEGES

1.  Abuse of mail privileges include, but are not
    limited to, the following:

    a.  Writing of letters containing obscene,
        profane, or indecent language.

    b.  Writing of letters which contain threats against an
        individual, or escape plots.

    c.  Writing of letters which use or attempt to use mail
        privileges for any purpose which constitutes a threat
        to institutional order and security, or violation of
        postal regulations.

    d.  Writing of letters which contain derogatory or personal
        attacks by any person addressed under the privileged
        mail authorization.

    e.  Receipt of sealed mail in authentic or purported
        authentic envelopes, but from an unauthentic source.

    f.  Receipt of mail or attempted mailing of letters or
        packages not in the manner established by the Warden.

F.  LIMITATIONS

1.  When abuses of mail privileges as specified above are found,
    the Warden may prohibit further correspondence by the
    inmate with the person to whom the offending material was

directed.

2.  When the Warden receives a complaint from a person with whom the inmate has been corresponding, and when termination of the correspondence is requested by the person, the Warden will notify the inmate of the person's request and inform the inmate that further correspondence with the person will cease.

3.  The Warden will maintain a list of persons with whom the inmate may no longer correspond as a result of action taken under the mail limitations.

4.  An inmate prohibited from corresponding with a person (due to prescribed mail limitations may, every sixty (60) days, submit to the Warden a written request for reinstatement of the privilege to correspond with the person. In cases involving complaints and limiting correspondence, the Warden must communicate with the complainant to determine if resumption or correspondence is desired by the person, and notify the inmate in writing to advise him of the approval or denial for resumed correspondence.

5.  When any mail is rejected or not forwarded to the addressee, the inmate will be notified via a form letter that includes the date received, sender's name and addressee's name, and the reasons for rejection or non-forwarding.

6.  If an inmate has been transferred or released, first Class mail will be forwarded if a forwarding address is known, or returned to sender if no forwarding address is known.

G.  This SOP supersedes all SOPs, etc., previously issued on the subject.

_Terrance McDonnell_  2-19-03
TERRANCE McDONNELL, Warden

VII-6    Page

9



## State of Alabama
# Alabama Department of Corrections

**BOB RILEY**
GOVERNOR

Research and Planning
P. O. Box 301501
Montgomery, AL 36130-1501

**Donal Campbell**
COMMISSIONER

June 29, 2004

ADMINISTRATIVE REGULATION                    OPR: OPERATIONS
NUMBER                    214

### LAW LIBRARY SUPERVISORS

**I.     GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for those officers assigned to supervise the institutional law library.

**II.     POLICY**

The ADOC shall provide legal resource libraries and allow all inmates access to the materials available.

**III.     DEFINITION(S) AND ACRONYM(S)**

A.    Inmate Law Library Clerks:  Inmates that are assigned to assist the law library supervisor.

B.    Commissioners designee:   A person designated by the Commissioner to coordinate inmate legal matters that cannot be resolved at the institutional level.

C.    ICF (Institutional Contingency Fund):   A fund designed to provide certain materials and services for the benefit and welfare of the inmate population, not otherwise provided with appropriated funds.

**IV.     RESPONSIBILITIES**

Wardens/designees are responsible for the operation and maintenance of the library.

**V.     PROCEDURES**

A.    Each institution shall make legal materials available in a suitable location for access by inmates assigned to that institution.

1.    The Library Supervisor at the institution shall monitor the use of these materials.

**PLAINTIFF'S
EXHIBITS NO. 34**

2.    Institutionally owned legal resource/reference materials shall be maintained only within the library, except for those accessed to inmates confined in segregation units or who do not have direct access to a centralized law library because of their assignment.

B.    Law library access shall be open to all inmates housed in general population of the institution.

C.    Inmates in segregation or otherwise restricted will be:

1.    Allowed no physical access to the law library.

2.    Provided a complete listing of materials available in the law library.

3.    Allowed to request items from the law library and the request should be filled in a timely manner.

D.    The law library at all institutions shall be open a minimum of 20 hours per week.

1.    Days and times for library use will be provided as long as security needs are maintained.

2.    Law library services shall be provided during work hours to provide access to the greatest number of inmates that does not interfere with work assignments or other programs.

E.    The law library shall provide, as prescribed by legal, writing instruments, plain paper, and envelopes for inmate use in preparing legal correspondence and documents.

F.    Materials and equipment, as approved by the ADOC Legal Division, will be provided through the ICF of the respective institution.

G.    The Warden's designee will coordinate and supervise the law library services in the institution as follows:

1.    The law library collections are maintained orderly and current.

2.    Inmate law library clerks are supervised.

3.    All materials, such as but not limited to pocket parts, advance sheets, and volumes, are logged.

4.    Daily logs of the use of the law library, and those denied direct access, is maintained.

5.    Law library hours are posted in inmate living areas.

6.    All legal materials are inventoried and an inventory report is submitted to

AR214 – June 29, 2004

the Commissioner's designee on or before the 10th day of September.

7. Ensure the availability of forms listed in Annex A (Institutional Law Library and Court Forms), submitting order requests as necessary to the institutional business manager.

8. Coordinate requests for legal materials with the Commissioner's designee.

9. Instruct inmate law library clerks that they are not to pretend to be licensed attorneys or in any way appear to be engaged in the unauthorized practice of law. Inmate law clerks should also be instructed that they **SHALL NOT** charge for legal services.

## VI.    DISPOSITION

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.    FORMS

There are no forms prescribed in this regulation.

## VIII.    SUPERCEDES

This regulation supercedes AR 214, dated August 18, 1992.

## IX.    PERFORMANCE

ACA Standards: 3-4256 and 3-4264

**ANNEX(S):**

Annex A, Institutional Law Library and Court Forms

Donal Campbell, Commissioner

AR214 – June 29, 2004

# INSTITUTIONAL LAW LIBRARY AND COURT FORMS

## LAW LIBRARY FORMS

| FORM NUMBER | FORM NAME |
|---|---|
| N942L | Material Received Log |
| N943L | Access to Law Library |
| N944L | Access to Legal Material |
| N946L | Photocopy Log Law Library |
| N947L | Notary Log |
| N949L | Law Library Sign-In Sheet |
| N950L | Law Library Inventory Sheet |

## COURT FORMS

| FORM NUMBER | FORM NAME |
|---|---|
| N937 | (42 USC 1983) U.S. District Court Northern District |
| N938 | (42 USC 1983) Civil Rights (Complaint) Middle District |
| N939 | (42 USC 1983) U.S. District Court Southern District (Motion to Proceed Without Prepayment of Fees and Costs Included with this form) |
| N941 | Petition for Relief from Conviction or Sentence (Pursuant to Rule 32) |
| N954 | (28 USC 2254) U.S. District Court Northern District |
| N955 | (28 USC 2254) U.S. District Court Mobile District |
| N956 | (28 USC 2254) U.S. District Court Southern District |
| N957 | Affidavit of Substantial Hardship Order (Form C10, Revised 6/88) |

Annex A to AR 214

AR214 – June 29, 2004

ZEPHYRINUS I
27041 - 265 ___
FEDERAL DETENTION CENTER
P. O. BOX 5010
OAKDALE, LOUISIANA 71463

7006 2760 0001 0415 1952



U.S. POSTAGE
PAID
OAKDALE, LA
71463
FEB 22, '08
AMOUNT
$0.00
00059115-03

UNITED STATES
POSTAL SERVICE

0000    36104

LEGAL MAIL

OFFICE OF THE CLERK
CIVIL DIVISION
MIDDLE DISTRICT COURT
15 LEE STREET
MONTGOMERY, ALABAMA 36104